**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**THE VALSPAR CORPORATION, VALSPAR SOURCING, INC., and VALSPAR INDUSTRIES GMBH,**

Plaintiffs,

v.

**SPRAYLAT CORPORATION and SPRAYLAT GMBH,**

Defendants.

Civil No. 01-1605 (JEL/JGL)

**O R D E R**

---

APPEARANCES

J. Derek Vandenburgh, Esq., and Jeffrey P. Cook, Esq., for Plaintiffs

John E. Connelly, Esq., David M. Zensky, Esq., and Blossom Kan, Esq., for Defendants

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on September 10, 2002 on Plaintiffs' Motion to Compel Defendants to Return Inadvertently Produced Documents (Doc. No. 91), Defendants' Motion to Compel Amended Responses to Discovery Questions and to Amend Scheduling Order (Doc. No. 95), and Plaintiffs' Motion to Strike Defendants' Motion to Compel (Doc. No. 86). The

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO RETURN INADVERTENTLY PRODUCED DOCUMENTS

Plaintiffs Valspar Corporation, Valspar Sourcing, Inc., and Valspar Industries GmbH (collectively "Valspar") ask the Court to compel Defendants Spraylat Corporation and Spraylat GmbH (collectively "Spraylat") to return all copies of two emails which were inadvertently produced during discovery. Valspar contends that the documents are protected by attorney-client privilege. Spraylat acknowledges that the production was inadvertent and that the privilege was therefore not waived, but it submits that the documents simply are not privileged.

In the first email at issue, one of Valspar's business managers, Harry Bahls, relays factual information and presents a corresponding legal question to Valspar's in-house counsel, Andy Ubel, and other Valspar employees. The second email contains the above communication as well as a response from Valspar Vice President Michael Seidler. The Court finds that the entire first email is protected by attorney-client privilege, but the communication from Seidler in the second email is not privileged

The attorney-client privilege protects communications made between a lawyer and the client in confidence for the purpose of seeking, obtaining, or providing legal assistance. See Restatement (Third) of the Law

Governing Lawyers § 118 (Proposed Final Draft 1996); Fed. R. Evid. 503.

Minnesota defines attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Kobluk v. Univ. of Minn., 574 N.W.2d 436, 440 (Minn. 1998) (quoting 8 John Henry Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). In this case, the communication from Bahls in the first email clearly meets the Wigmore test. The email requests legal advice and communicates facts relating to the request. The factual portion of the email is protected just as the request for legal advice. See Simon v. G.D. Searle & Co., 816 F.2d 397, 404 (8th Cir. 1987) ("Client communications intended to keep the attorney apprised of business matters may be privileged if they embody 'an implied request for legal advice based thereon.'") (quoting Jack Winter, Inc. v. Koratron Co., 54 F.R.D. 44, 46 (N.D. Cal. 1971)). Here, the request was not implied, but was explicit, and the portion of the email apprising Ubel of the business matters underlying the request are privileged.

On the other hand, Seidler's response to Bahls' email does not implicitly or explicitly contain a request for legal advice. Rather, the communication relates solely to a business matter. This portion of the second

email is not protected by the attorney-client privilege. Therefore, Spraylat is ordered to return the documents, but Valspar must produce a redacted copy of the email containing Seidler's communication by September 23, 2002.

## II. DEFENDANTS' MOTION TO COMPEL AMENDED RESPONSES TO DISCOVERY QUESTIONS AND TO AMEND SCHEDULING ORDER and PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION TO COMPEL

### A. Defendants' Motion to Compel

Spraylat move this Court for an order compelling Valspar to respond to Interrogatories No. 13 and 14; Document Requests No. 14, 15, and 18, First Set; Document Requests No. 3, 6, 7, 8, and 9, Fifth Set; and to comply with Magistrate Judge Noel's Order requiring Valspar to produce email correspondence from September 4, 2001 to present for Michael Seidler and each employee identified in the order. Valspar moved to strike Spraylat's motion for failure to comply with D. Minn. LR 37.2, which requires a party moving to compel answers to document requests or interrogatories to include in "the moving party's memorandum . . . only the particular interrogatories, document requests or requests for admission which are the subject of the motion, the response thereto, and a concise recitation of why the response or objection is improper." D. Minn. LR 37.2. It is true that Spraylat's motion as originally filed does not comply with Rule 37.2. Moreover, Spraylat's attempt to cure its noncompliance likewise fails to satisfy the rule in that the amended motion does not include a memorandum which sets forth a concise recitation

of why each response or objection is improper. Nevertheless, at the motion hearing, Valspar withdrew its motion to strike and asked the Court to decide Spraylat's motion on the merits. The Court will address the motion on the merits. However, Spraylat is admonished that it must comply with Rule 37.2 in the future or the Court will look with favor on a motion to strike. The purpose of Rule 37.2 is to provide the non-moving party and the Court with a helpful framework in which to address the motion. The Court is appreciative of the organization provided by Valspar in its memorandum.

**1. <u>Interrogatory No. 13</u>**

Interrogatory No. 13 asked Valspar to identify all mirror products made, used, sold, or offered for sale by Valspar whose product formula Valspar contends is so similar to a product formula of a mirror product made, used, sold, or offered for sale by Spraylat that Spraylat's manufacture, use, or sale or that product constitutes a trade secret violation or unfair trade practice; to provide the precise product formula for each such Valspar mirror product; and for each such product, to identify the specific additives or other properties actually being used by Spraylat that Valspar contends is misappropriation of a trade secret. Thus, the interrogatory asks for three categories of information: (1) Valspar's mirror products that Valspar contends have been misappropriated by Spraylat, (2) the formula for each such product, and (3) for each product,

the additives or other properties used by Spraylat that Valspar believes constitutes misappropriation.

Interrogatory No. 13 is uncomplicated and asks for straightforward information. However, Valspar's response was not straightforward. For example, Valspar answered in part that it considers the formulas for all of its mirror solutions to be a trade secret. This portion of Valspar's response was contentious and superfluous. Valspar claims any deficiency in its response was rectified by a "claim comparison chart" submitted in conjunction with its answer. The chart may or may not provide the information requested in Interrogatory No. 13; there is no reference in the chart to the interrogatory. The chart itself refers to yet another document, the Bahls Declaration, which supposedly contains in part some information responsive to the interrogatory.

There is no reason why Valspar cannot provide a straightforward response to Interrogatory No. 13, and Valspar is ordered to provide a supplementary response to the interrogatory. Valspar must identify (1) Valspar's mirror products or formulas it contends have been misappropriated by Spraylat, (2) the formula for each such product, (3) the specific attributes of those formulas that Valspar contends constitute trade secrets, (4) which of the identified attributes of the identified formulas have been allegedly misappropriated by Spraylat, and (5) which specific Spraylat formulas supposedly misappropriate Valspar's trade secrets, by matching each

Valspar formula with a Spraylat formula. This information is what the interrogatory requests, and the information must be produced in a forthright manner. If Valspar is unable to identify the additives and other properties requested by the second subpart because of Spraylat's failure to provide discovery or an attorney's eyes' only designation, Valspar may refrain from providing the information until it receives the information or until its expert is able to provide an opinion, but Valspar must explicitly state for each additive or property precisely why it is unable to provide the information sought.

**2. Interrogatory No. 14**

Interrogatory No. 14 asks Valspar to identify all copper-free products made, used, developed, or in development by Valspar; for each such product, to provide its precise product formula and to describe the manufacturing and development process for the product; to describe the basis for Valspar's contention that copper-free products made, used, developed, or being developed by Spraylat constitute a violation of trade secret or unfair competition laws; and to identify each person with knowledge relating to Valspar's contention. Notably, Spraylat has not explained why it believes Valspar's response to this interrogatory is deficient. On the Court's own review of Valspar's response, it appears that Valspar has answered the first, third, and fourth subpart of the interrogatory. With respect to the second subpart, Valspar objected to providing its manufacturing and development process for

its copper-free products on the basis of relevance. Spraylat has made no specific showing as to how this information is relevant. Spraylat's motion to compel is denied as to Interrogatory No. 14.

### 3. <u>Document Requests No. 14 and 15, First Set</u>

These two document requests seek all documents referring or relating to any legal proceeding against or initiated by Lilly or Valspar concerning various employment matters, misappropriation of trade secrets, unfair competition, or tortious interference with contract. Spraylat asserts the information is relevant to determine whether Valspar takes consistent positions in litigation similar to the case at hand, specifically, whether Valspar always regards customers as trade secrets and whether Valspar has engaged in employment practices similar to ones of which it has accused Spraylat. Valspar produced a more narrow category of documents than requested, limiting production to the judgments, pleadings, motions, and supporting declarations from trade secret misappropriation cases relating to the mirror industry.

The Court finds that Valspar has acceptably limited its production with respect to trade secret misappropriation. However, Spraylat is entitled also to discovery of judgments, pleadings, motions, and supporting declarations from cases involving breaches of employment contracts, non-competition agreements, non-selection agreements, or severance agreements

that relate to the mirror industry. Spraylat's showing of relevance is tenuous at best, considering that Rule 26 limits discovery to "the claims and defenses asserted in the pleadings." Fed. R. Civ. P. 26(b)(1). The discovery may provide Spraylat with an arguable defense to an equitable claim. Furthermore, although the rule recognizes a court's discretion to permit broader discovery depending on the particular circumstances of a case, see id. advisory committee's note (2000), the Court finds that the broad discovery sought by Spraylat is not warranted in this case, which is why the Court has accepted Valspar's limitation of discovery to the mirror industry only. Finally, Spraylat has not adequately explained why the limited production by Valspar is insufficient.

**4. Document Request No. 18, First Set**

This request seeks documents owned or maintained by Valspar at the Wallenfels office it leased to Guenther Reipa prior to May 29, 2001. Valspar produced the documents for inspection and copying as required by Federal Rule of Civil Procedure 34. Thus, Spraylat's motion is denied as to this request.

**5. Document Request No. 3, Fifth Set**

This request seeks all transcripts of Lilly or Valspar Annual Shareholder meetings relating to or concerning customers. Valspar limited

production to the mirror industry. For the reasons expressed in Part II.A.3 above, Spraylat's motion is denied as to this request.

**6. Document Requests No. 6, 7, and 9, Fifth Set**

These requests relate to Valspar's hiring practices and policies. Valspar has provided or agreed to provide its written policies relating to hiring of employees, but the Court finds this response insufficient. Although the Court agrees that Spraylat's requests are overbroad as propounded, Spraylat has shown that documents revealing Valspar's own conduct in hiring employees of competitors is relevant to this case. Thus, Valspar is ordered to respond to the requests, limited to its hiring practices in the mirror industry.

**7. Document Request No. 8, Fifth Set**

Request No. 8 seeks documents concerning "change in control agreements" for Valspar and Lilly employees. The request is targeted toward discovering which Lilly or Valspar employees were paid when Valspar acquired Lilly and how much Valspar's current executives would receive under the agreements. Spraylat has not explained how this information is relevant to the claims and defenses in this case, and its motion is therefore denied as to this request. Moreover, Valspar has agreed to produce a sub-category of information responsive to this request, and Spraylat has not explained how this production would be deficient.

**8. Magistrate Judge Noel's Order Requiring Valspar to Produce Email Correspondence from September 4, 2001 to Present for Michael Seidler and Each Employee Identified in the Order**

The Court is satisfied by Valspar's representation that it has diligently searched for emails in compliance with Judge Noel's Order. The employees identified in the Order have submitted declarations to the Court attesting to their diligent searches. This aspect of Spraylat's motion is denied.

**B. Modification of the Scheduling Order**

As the Court ordered at the motion hearing, all dates in the pretrial schedule are extended by sixty days. All fact discovery shall be completed by December 1, 2002. All nondispositive motions shall be filed by May 1, 2003. Initial expert disclosures shall be made on or before January 11, 2003. Rebuttal experts shall be disclosed on or before March 1, 2003. The deadlines for disclosure of the substance of expert witness testimony shall be on or before January 11, 2003 for initial experts, and on or before March 1, 2003 for rebuttal experts. Each party may depose no more than four expert witnesses on or before May 1, 2003. All dispositive motions shall be filed and scheduled

for hearing prior to July 1, 2003. This case shall be ready for trial on August 1, 2003.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Plaintiffs' Motion to Compel Defendants to Return Inadvertently Produced Documents (Doc. No. 91) is **GRANTED**. Defendants are ordered to return the documents, but Plaintiffs must produce a redacted copy of the email containing Seidler's communication by September 23, 2002;

(2) Defendants' Motion to Compel Amended Responses to Discovery Questions (Doc. No. 95, Part I) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order. Plaintiffs must provide the ordered discovery by September 23, 2002;

(3) Defendants' Motion to Amend Scheduling Order (Doc. No. 95, Part II) is **GRANTED**. All fact discovery shall be completed by December 1, 2002. All nondispositive motions shall be filed by May 1, 2003. Initial expert disclosures shall be made on or before January 11, 2003. Rebuttal experts shall be disclosed on or before March 1, 2003. The deadlines for disclosure of the substance of expert witness testimony is January 11, 2003 for initial experts, and March 1, 2003 for rebuttal experts. Each party may depose no more than four expert witnesses on or before May 1, 2003. All dispositive

motions shall be filed and scheduled for hearing prior to July 1, 2003. This case shall be ready for trial on August 1, 2003.

(4) Plaintiffs' Motion to Strike Defendants' Motion to Compel (Doc. No. 86) was **WITHDRAWN** at the hearing;

(5) Defendants' Motion to Place Filed Material Under Seal (no Doc. No.) is **GRANTED**, and the Clerk's Office is directed to place under seal Defendants' Amended Notice of Motion and Motion to Compel Discovery and to Amend Scheduling Order and Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Return of Certain Produced Documents.

Dated: September 11, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge