**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**THE VALSPAR CORPORATION, VALSPAR SOURCING, INC., and VALSPAR INDUSTRIES GMBH,**

Plaintiffs,

v.

**SPRAYLAT CORPORATION and SPRAYLAT GMBH,**

Defendants.

Civil No. 01-1605 (JNE /JGL)

**O R D E R**

---

APPEARANCES

J. Derek Vandenburgh, Esq., and Jeffrey P. Cook, Esq., for Plaintiffs

John E. Connelly, Esq., David M. Zensky, Esq., and Blossom Kan, Esq., for Defendants

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on March 14, 2003, on Spraylat's Motion for Disclosure of Facts Concerning Access by Plaintiffs' Counsel to Defendants' Privileged Documents and for Related Relief (Doc. No. 143); Valspar's Motion to Compel Production of Documents (Doc. No. 150); Valspar's Motion for Leave to Amend the Complaint to Claim Punitive Damages (Doc. No. 155); Spraylat's Expedited Motion to Strike (1) the Declaration of Kenneth H. Brown, (2) the Declaration of Monika Pieters, (3) Plaintiffs' Second

FILED 4-10-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

Supplemental Initial Disclosures Under Fed.R.Civ.P. 26(A) and (4) Plaintiffs' Motion to Compel (Doc. No. 163). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. BACKGROUND

Plaintiffs Valspar Corporation, Valspar Sourcing, Inc., and Valspar Industries GmbH (collectively "Valspar") and Defendants Spraylat Corporation and Spraylat GmbH (collectively "Spraylat") are companies engaged in the business of, *inter alia*, manufacturing and selling coatings. Both entities manufacture and sell chemical solutions used in creating reflective surfaces, referred to as "Mirror Solutions" products.

### A. Formation of Spraylat's European Mirror Business

In January, 2001, Valspar Corporation acquired a coatings competitor, Lilly Industries, Inc. ("Lilly"), including all of Lilly's subsidiaries and related corporations. In anticipation of the takeover, the employment of Alain DeBlandre was terminated; DeBlandre was Lilly's Vice President and Managing Director of European Operations for Lilly and Lilly Canada. DeBlandre contacted Spraylat with a proposal to form a new Mirror Solutions business in Europe. DeBlandre was not bound by any non-compete agreement, but he had signed a confidentiality agreement with Lilly, obligating him to maintain the

confidentiality of Lilly's private information after his termination of employment. In February, 2001, DeBlandre met with Spraylat Corporation CEO, Michael Borner and President, Ray Chlodney, to discuss his proposal, bringing with him a business plan for his proposal. DeBlandre gave at least one copy of the document to Borner and Chlodney, and they went over the document "item by item" for a "couple of hours."

The business plan reviewed with Spraylat's executives made several references to the Valspar/Lilly competing business. The document mentioned sales figures for Lilly, potential patent issues for Valspar, the status of distribution relations for Valspar, and issues relating to Valspar's new management. It states that the Christmas ornament business is the "[m]ost profitable and vulnerable market for Valspar." The plan includes hiring as "Technical Resources" two "brilliant people" from Valspar. The plan states "Valspar will struggle without them - double hit." In describing the timing of implementing the plan, the document notes "Confidentiality before action. In Europe, Valspar lives on Lilly success, without fear of any competition for 2 to 3 years. They must be taken by surprise."

A few days after the meeting, DeBlandre e-mailed Chlodney that the "2 key guys would join our project" and that the "key manufacturing guy" would also follow. Chlodney forwarded the e-mail to Borner, who wrote to DeBlandre, thanking him for the business opportunity, stating that "we

recognize that we need to move rather quickly to take full advantage of the present opportunity."

In March, 2001, DeBlandre asked Willi Luettgens to draft a profit and loss analysis ("P&L") for Spraylat's anticipated business. At the time, Luettgens was Valspar's financial controller. Luettgens provided a sales forecast which mirrored data from confidential Valspar sales and financial documents, even utilizing internal Valspar customer numbers.

DeBlandre became a formal consultant to Spraylat in May, 2001. On June 8, 2001, DeBlandre sent an e-mail to Luettgens, who was still employed at Lilly/Valspar, warning him to "not use your Lilly e-mail address for anything that has to do with Spraylat - insure this message is deleted from your equipment." DeBlandre copied the e-mail to Spraylat's General Counsel William Borner and Vice President of Finance, John Ragazzini, and further asked Luettgens to "finalize the cash flow statement" and "have it forwarded to John by Monday."

In July, 2001, Spraylat announced the formation of its new European Mirror Division, naming DeBlandre as the Managing Director, Luettgens as Finance Director, and other former employees of Lilly/Valspar in key positions. Spraylat has been operating its business, and Valspar contends that Spraylat has done so by misappropriating Valspar's trade secrets. Valspar initiated this litigation, asserting claims against Spraylat for tortious

interference with contracts, misappropriation of trade secrets, conversion, tortious interference with business relations, and unfair competition.

**B. <u>German Legal Proceedings</u>**

In addition to initiating the present lawsuit, Valspar filed a criminal complaint against the former Lilly/Valspar employees in Germany. In February, 2002, the German police conducted searches of Spraylat GmbH and some of the employees' homes, seizing documents, computers and computer disks. Spraylat's German counsel, Thomas Schmitz, called the German District Attorney and "explained to her the sensitivity" of the documents relating to the American lawsuit. Mr. Schmitz also sent two letters to the German District Attorney, requesting that the documents be returned or, alternatively, be prevented from disclosure to Valspar. Neither letter mentioned concern over attorney-client privileged documents. The first letter emphasizes that Valspar could obtain an unlawful advantage in conducting the American lawsuit and get insight into Spraylat's production processes and marketing. The second letter explains that use by Valspar in the American lawsuit of documents marked "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" "could result in disadvantages."

The German prosecutor prepared an Evidence File with documents which were found in the searches; among the documents were attorney-client

privileged communications and documents relating to the present case. Mr. Schmitz again asked the District Attorney to deny Valspar access to the documents. The District Attorney denied the request. Spraylat did not appeal the District Attorney's decision. The District Attorney provided Valspar access to the file in late 2002.

As part of the document production in this case, Valspar produced a copy of the Evidence File to Spraylat in December, 2002. Spraylat then asserted privilege to approximately 67 documents in the Evidence File. Valspar "quarantined" the documents and subsequently returned to Spraylat all copies of the privileged documents, pending an order of this Court.

### C. <u>Prior Statements by Spraylat and Employees</u>

The parties have had previous discovery disputes submitted to the Court. In one motion to compel, Valspar sought production of documents which Spraylat employees took from Valspar while they worked at Valspar. In opposition to the motion, Spraylat argued that the employees downloaded no Valspar-related information, and that the only information they had was personal. One of the employees, Ludwig Kotschenreuther, submitted an affidavit to this Court, stating under oath that the files he took home were solely personal files and were not proprietary or confidential information regarding Lilly, Valspar, Spraylat, or the mirror business.

In the Evidence File compiled by the German police, Valspar found

files from Kotschenreuther's Spraylat computer which had been originally created at Lilly. The Evidence File also contained confidential Valspar financial documents from former Lilly/Valspar and current Spraylat employee Leuttgens. Spraylat does not now appear to deny that confidential Valspar documents were taken by their employees; Spraylat instead argues that there is no evidence that Spraylat knew of the improprieties.

There are now several motions before the Court:

a) Spraylat's Motion for Disclosure of Facts Concerning Access by Plaintiffs' Counsel to Defendants' Privileged Documents and for Related Relief;

b) Valspar's Motion to Compel Production of Documents;

c) Valspar's Motion for Leave to Amend the Complaint to Claim Punitive Damages; and

d) Spraylat's Expedited Motion to Strike (1) the Declaration of Kenneth H. Brown, (2) the Declaration of Monika Pieters, (3) Plaintiffs' Second Supplemental Initial Disclosures Under Fed.R.Civ.P. 26(A) and (4) Plaintiffs' Motion to Compel.

## II. DISCUSSION

### A. **Spraylat's Motion for Disclosure of Facts Concerning Access by Plaintiffs' Counsel to Defendants' Privileged Documents and for Related Relief**; and

### B. **Valspar's Motion to Compel Production of Documents**

Spraylat moves the Court to compel Valspar to disclose information relating to Valspar's counsel's access to the privileged documents and to determine a remedy, up to and including, disqualification of counsel. Valspar moves the Court to compel production of the privileged documents, claiming that Spraylat has waived any privilege to them.

In a diversity case, a court should apply the privilege law of the state in which it sits. Fed.R.Evid. 501; Simon v. G.D. Searle & Co., 816 F.2d 397, 402 (8th Cir. 1987). This Court has reviewed Minnesota law of privilege, but it has not found an applicable standard of review for waiver of inadvertently disclosed privileged documents. Accordingly, this Court must look to other court's decisions in an effort to apply an appropriate legal standard to the question before it.

In Gray v. Bicknell, 86 F.3d 1472, 1483 (8th Cir. 1996), the Eighth Circuit reviewed a spectrum of three approaches that federal courts have applied, depending on the law of the particular jurisdiction, to the question of waiver of the attorney-client privilege. Under the "lenient" approach, courts find that waiver can only be accomplished through intentional and knowing relinquishment of privilege, not through inadvertence. Gray, 86 F.3d at 1483; Starway v. Independent School District No. 625, 187 F.R.D. 595, 597 (D. Minn. 1999). Under a "strict approach", an inadvertent disclosure of privileged information may accomplish a broad waiver of the privilege. Id. A third

approach is known as the "middle" approach, taken from Hydraflow, Inc. v. Enidine Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993). Id. The Eighth Circuit adopted this analysis to review the inadvertent production of attorney-client privileged documents in large document productions. Gray, 86 F.3d at 1482-84. The approach weighs five factors:[1]

1) the reasonableness of the precautions taken to prevent inadvertent disclosure;

2) the number of inadvertent disclosures;

3) the extent of the disclosures;

4) the promptness of measures taken to remedy the problem, and

5) whether justice is served by relieving the party of its error.

Gray, 86 F.3d at 1484; Starway, 187 F.R.D. at 597.

In the present case, the Court finds that factors 1, 4 and 5 are the most significant in the analysis here. Factors 2 and 3 apply most appropriately in circumstances where privileged documents have been mistakenly produced in a large document production - circumstances irrelevant to the facts now before the Court.

**1. Reasonableness of Precautions**

---

[1] Although this Court could find no Minnesota state case law applying these factors, at least one commentator has recommended that Minnesota law apply similar factors in analyzing inadvertent disclosures. See Peter N. Thompson, 11 Minnesota Practice § 501.04(H) (2001).

In analyzing the reasonableness of the precautions taken to protect the privileged information, pursuant to factor 1, the Court reviews the steps taken by Spraylat to prevent its privileged documents from being produced. It is uncontroverted that the documents in question were not voluntarily disclosed by Spraylat; they were instead seized by German authorities in February, 2002. Spraylat acknowledges that it knew privileged documents were included in the materials seized by the police shortly after the seizure, which is why Spraylat wrote to the District Attorney on February 26, 2002, seeking to deny Valspar access. However, the February 26, 2002 letter does not alert the District Attorney to the existence of privileged documents, instead it seeks return of all documents seized for fear that they would give Valspar a litigation and competitive advantage. Nor does the subsequent July 5, 2002, letter from Spraylat to the District Attorney mention that any documents were privileged. Spraylat did not notify Valspar that the seized documents included attorney-client privileged documents which it intended to protect. Moreover, once the District Attorney made the decision to allow Valspar to review the Evidence File, Spraylat had a right to appeal that decision under German law. Spraylat did not do so. Accordingly, based on a review of these facts, this Court finds that Spraylat did not take all reasonable precautions to prevent Valspar from receiving its privileged materials.

**2. Promptness of Remedial Measures**

In reviewing the promptness of measures taken by Spraylat in attempting to prevent the disclosure of privileged information, this Court turns to other federal precedent. In U.S. v. de la Jara, 973 F.2d 746 (9th Cir. 1992), the Ninth Circuit Court of Appeals reviewed a case in which a letter from the defendant's counsel was seized by law enforcement pursuant to a search warrant. The court found that, because defendant waited for six months before attempting to recover the letter, the "mantle of confidentiality which once protected the document" was "irretrievably breached." de la Jara, 973 F.2d at 750 (internal quotations omitted). As such, the Ninth Circuit deemed the privilege waived. Id.

In the present case, Spraylat waited over eight months to assert privilege to the documents in question. Indeed, although Spraylat knew in February, 2002, that privileged documents had been seized, it appears that Spraylat did not assert that privilege until December 12, 2002, when Valspar produced the documents to Spraylat. Although Spraylat did attempt to recover the documents from the District Attorney, Spraylat chose not to assert privilege to the few applicable documents and instead sought to recover all the documents seized, on general grounds of confidentiality. This Court finds that Spraylat's choice to delay the assertion of privilege supports a finding that Spraylat waived privilege.

**3. Service of Justice**

The final factor in analyzing whether inadvertent disclosure of privilege constitutes a waiver - whether justice is served by relieving the disclosing party of its error - is a close question in this case. Ordinarily, in the interest of preserving the free exchange of information between clients and counsel, this Court attempts to protect attorney-client privileged information. In this case, however, it appears that Spraylat was primarily concerned about the disclosure of discoverable information and only belatedly and secondarily interested in protecting the privilege. This Court is convinced that Spraylat made a tactical decision to attempt to prevent the disclosure of all of the seized information, without regard to privilege. As such, this Court finds that justice is best served by placing parties and counsel on notice that privileged information must be timely protected and defended in order to maintain the privilege.

Based on the foregoing, the weight of the factors in this case support a finding that Spraylat waived the attorney-client privilege with respect to the seized documents. Spraylat's Motion for Disclosure of Facts Concerning Access by Plaintiffs' Counsel to Defendants' Privileged Documents and for Related Relief is denied, and Valspar's Motion to Compel Production of Documents is granted.

### C. Valspar's Motion for Leave to Amend the Complaint to Claim Punitive Damages

Valspar moves the Court to amend its Complaint to include a claim

for punitive damages against Spraylat. It is well-established that the pleading of punitive damages in cases involving Minnesota state law claims in federal court is governed by the pleading requirements of Minn. Stat. §§ 549.191 and 549.20. See, e.g., Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1118 (8th Cir. 1999); Bunker v. Meshbesher, 147 F.3d 691, 695-96 (8th Cir. 1998). A plaintiff seeking to assert a punitive damage claim may not include it in the initial complaint, but must move for leave to amend the complaint based on a *prima facie* showing of entitlement. See Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn. 1994). At this point in the litigation, "[t]he plaintiff is not required to demonstrate an entitlement to punitive damages *per se*, but only an entitlement to allege such damages." Id. *Prima facie* evidence is evidence which, if unrebutted, would sustain a judgment in the moving party's favor. See Swanlund v. Shimano Indus. Corp., Ltd., 459 N.W.2d 151, 154 (Minn. Ct. App. 1990) (citing Black's Law Dictionary 1071 (5th ed. 1979)). The term "*prima facie*" does not describe a quantum of evidence, but a standard for designating meritorious claims. See id.

The quantum of evidence needed to plead punitive damages is prescribed by Minn. Stat. § 549.20, subd. 1(a), which requires "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." To be clear and convincing, the proof must be more than a preponderance but less than beyond a reasonable doubt. See

Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). The clear and convincing standard is appropriately employed to determine whether a plaintiff has submitted sufficient evidence in support of a motion to amend a complaint to add a claim for punitive damages. See Utecht v. Shopko Dep't Store, 324 N.W.2d 652, 654 (Minn. 1982); Swanlund, 459 N.W.2d at 154.

Deliberate disregard is statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregarded facts that create a high probability of injury to the rights or safety of others and:
>
> A. deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injuries to the rights or safety of others; or
>
> B. deliberately proceeds to act with indifference to the high degree of probability of injuries to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b). In examining the facts in support of a motion to amend a complaint to plead punitive damages, the Court must not make credibility rulings and must not consider evidence submitted in opposition to a plaintiff's proof. See Northwest Airlines, Inc. v. Am. Airlines, Inc., 870 F. Supp. 1499, 1502-03 (D. Minn. 1994) (citation omitted); Swanlund, 459 N.W.2d at 154.

In the present case, Valspar has asserted three state law claims for

which it seeks to claim punitive damages: tortious interference with contracts, tortious interference with business relations, and unfair competition. Spraylat does not contest that punitive damages can be recovered in such claims; Spraylat does contest that Valspar has met the standard for pleading punitive damages in this case. Spraylat emphasizes that most of the "wrongful" acts alleged by Valspar were committed by non-party employees who were either not employees of Spraylat at the relevant times or were not sufficiently connected to Spraylat for Spraylat to be vicariously liable for their conduct.

This Court finds that Valspar has submitted a *prima facie* showing that Spraylat acted with deliberate disregard for Valspar's rights. It appears undisputed that several ex-Lilly/Valspar employees took confidential information from Lilly/Valspar and used it in at least creating a business plan for Spraylat. It further appears undisputed that, despite sworn statements to this Court to the contrary, some of these employees maintained Lilly/Valspar confidential information in their employment at Spraylat. It is undisputed that use of Lilly/Valspar confidential information would constitute a significant competitive advantage to Spraylat.

While Spraylat contends that it couldn't have known about the illegal actions of their ultimate employees, the Court finds that sufficient evidence exists at this time to show that Spraylat could be found to have acted with deliberate disregard for Valspar's rights. When Alain DeBlandre first met

with Spraylat executives about his business plan for a Spraylat Mirror Solutions business, he presented his business plan which, on its face, contemplated raiding specialized employees of Lilly/Valspar. Spraylat executives knew that DeBlandre had confidential Lilly/Valspar knowledge and that he had contracted not to disclose that information. Nevertheless, Spraylat executives spent a "couple of hours" reviewing DeBlandre's business plan, which was replete with references to Valspar, including the description of a planned "double hit" against Valspar. Based this business plan, Spraylat launched its Mirror Solutions business in direct competition with Valspar.

At least one additional document supports Valspar's position that Spraylat knew or participated in the unlawful activities of its employees. On June 8, 2001, senior Spraylat executives, including its General Counsel and Vice President of Finance, were copied on DeBlandre's e-mail to Willi Luettgens - then a Lilly/Valspar employee - advising Luettgens to "not use your Lilly e-mail address for anything that has to do with Spraylat - insure this message is deleted from your equipment." The same e-mail asked Luettgens to "finalize the cash flow statement." This Court finds that, these documents alone, if unrebutted at trial, could allow a fact finder to reasonably conclude that Spraylat acted with its employees in deliberate disregard to Valspar's rights. Accordingly, Valspar's Motion for Leave to Amend the Complaint to Claim

Punitive Damages is granted.[2]

**D. Spraylat's Expedited Motion to Strike the Declaration of Kenneth H. Brown, the Declaration of Monika Pieters, Plaintiffs' Second Supplemental Initial Disclosures Under Fed.R.Civ.P. 26(A), and Plaintiffs' Motion to Compel**

**1. Motion to Strike Declarations and Disclosures**

Spraylat moves to strike several documents submitted by Valspar in connection with the present motions. Spraylat asks the Court to strike the declarations of witnesses Brown and Pieters, as well as Plaintiffs' Second Supplemental Initial Disclosures, on the grounds that these submissions are untimely, not previously disclosed in discovery, and prejudicial. This Court has not reviewed or relied on the Declaration of Kenneth H. Brown, the Declaration of Monika Pieters, or Plaintiffs' Second Supplemental Initial Disclosures in connection with the motions before it. Accordingly, Spraylat's Motion to Strike these submissions is granted as moot. This Court makes no finding on whether the information disclosed in these declarations and disclosures should be admissible at trial; that question is not before this Court and is appropriately before the trial court at a later date.

**2. Motion to Strike Valspar's Motion to Compel**

---

[2] Valspar notes that it does not believe it needs to amend its Complaint to seek exemplary damages on its claim under the Minnesota Uniform Trade Secrets Act claim, but asks the Court to preserve its right to do so. This Court agrees that a motion under Minn. Stat. § 549.191 is not necessary to seek exemplary damages under the Minnesota Uniform Trade Secrets Act, and Valspar may seek whatever damages are appropriate at trial.

Spraylat moves to strike Valspar's Motion to Compel for submission in violation of Local Rules 37.1 and 37.2. Valspar denies that its motion is in violation of the Local Rules.

Local Rule 37.1 requires parties seeking court intervention on discovery matters to file a certification that the movant has in good faith conferred with the other parties in an attempt to resolve the matter without Court action. Local Rule 37.2 requires a party seeking to compel production of documents to recite the discovery requests upon which the motion is based, as well as a recitation of the responses at issue.

Valspar has not submitted a Local Rule 37.1 certification, and by failing to do so, is in violation of the Local Rules. As Valspar has previously asked this Court to apply the Local Rules strictly in admonishing Spraylat, the Court now admonishes Valspar to comply with the Local Rules. In this instance, Valspar's failure does not appear prejudicial, as Spraylat does not contend that the parties could have resolved the issue by conferring in good faith. To the contrary, Spraylat's own Local Rule 37.1 Certification relating to its own Motion for Disclosure of Facts shows that the parties have conferred on the issue of privilege and were unable to resolve it. With respect to Local Rule 37.2, the Court finds that Valspar is not in violation of the Local Rules. In motions compelling production of privileged documents, which by nature usually encompass nearly all discovery requests served in a case, there is often

no value to the Court in reciting every applicable discovery request. In this case, Spraylat has not argued that the documents at issue in this motion are not responsive to discovery requests served in the case. Under the facts presented here, recitation of the discovery requests pursuant to Local Rule 37.2 would not have been necessary or useful to this Court. Spraylat's Motion to Strike Valspar's Motion to Compel is denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1) Spraylat's Motion for Disclosure of Facts Concerning Access by Plaintiffs' Counsel to Defendants' Privileged Documents and for Related Relief (Doc. No. 143) is **DENIED**;

2) Valspar's Motion to Compel Production of Documents (Doc. No. 150) is **GRANTED**;

3) Valspar's Motion for Leave to Amend the Complaint to Claim Punitive Damages (Doc. No. 155)is **GRANTED**;

4) Spraylat's Expedited Motion to Strike (1) the Declaration of Kenneth H. Brown, (2) the Declaration of Monika Pieters, (3) Plaintiffs' Second Supplemental Initial Disclosures Under Fed.R.Civ.P. 26(A) and (4) Plaintiffs' Motion to Compel (Doc. No. 163) is **GRANTED IN PART AS MOOT** and **DENIED IN PART**, as set forth above.

Dated: April 10, 2003

JONATHAN LEBEDOFF
Chief United States Magistrate Judge