UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| The Valspar Corporation,<br>Valspar Sourcing, Inc., and<br>Valspar Industries GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>Spraylat Corporation and Spraylat GmbH,<br><br>Defendants. | ) | Civil Action No. 01-CV-1605 JEL/JGL |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE REFERENCES TO, AND ALLEGED INFERENCES TO BE MADE FROM, THE COURT'S SUMMARY JUDGMENT ORDER AT TRIAL**

Plaintiffs (collectively "Valspar") have moved this Court to preclude Defendants from referring to this Court's March 31, 2004 Summary Judgment Order (the "Order"). Evidence and arguments concerning the meaning and effects of that Order, which specifically left several issues for trial by jury (and which is subject to appeal), is irrelevant to any issue that the jury must address, would confuse the jury, and is highly prejudicial to Valspar. On any of these bases, all such references and arguments must be precluded.

## I. <u>INTRODUCTION</u>

This suit primarily concerns Defendants' receipt and use of Valspar's trade secret and confidential information to start a competing mirror business. The trade secret and confidential information taken and used by Defendants includes (1) business information such as financial data, key employees, key market segments, and key customers and (2) technical information such as mirror solutions formulae and additives. (Court Docket Nos. 13-16; 286) This

information was provided to Defendants by several former Valspar employees, including Alain DeBlandre, Guenther Reipa, Willie Luettgens, and Ludwig Kotschenreuther. Id.

All of Valspar's former employees, prior to working with or for Defendants, had signed confidentiality agreements with Valspar and/or its predecessors in interest. These contracts protected Valspar information and data, specifically including "information, knowledge or data relating to the Company or its Affiliates" such as, for example, "production methods, chemical formulas, chemical compounds, client information, calculations and price lists, etc." Declaration of Dennis Bremer in Support of Plaintiffs' Motions in Limine, dated March 4, 2005 (Bremer Decl. in Support), Exs. 1 at §9; 2 at ¶ 2a; 3 at ¶ 1; and 4 at §6. By their very language, the contracts not only protected trade secrets, but also protected other confidential information that did not necessarily rise to the level of a legally protectible trade secret.

In filing this lawsuit against Defendants, Valspar contended that the business and technical information taken and used by Defendants and Valspar's former employees was protected either as trade secrets under trade secret law or as confidential information or company data protected by their confidentiality agreements. (Court Docket No. 1, ¶¶ 7-21). Valspar further contended that Defendants misappropriated the trade secrets and tortiously interfered with the confidentiality agreements. Id., ¶¶ 22-38. Valspar also contended that Defendants tortiously interfered with Valspar's business relations with its customers through its misuse of Valspar's trade secrets and confidential information. Id., ¶¶ 44-55.

In summary judgment motions, Defendants argued that none of Valspar's business or technical information was legally protectible "trade secrets" under the Uniform Trade Secrets Act. Defendants further argued that they should not be liable for inducing Reipa and DeBlandre to breach their confidentiality agreements on the bases that (i) Reipa's contract was void for lack

of consideration, (ii) Defendants were unaware of Reipa's contract, and (iii) Defendants did not *intentionally* procure Reipa's and DeBlandre's breach of their contracts. Notably, Defendants never denied that the Reipa and DeBlandre contracts had, in fact, been breached. Instead, Defendants accepted that Valspar's allegedly non-"trade secret" information was protected by the broader language recited in the confidentiality agreements and sought to avoid liability based on other grounds.

The Court subsequently ruled that Valspar's trade secret misappropriation and breach of contract claims should proceed to trial for resolution by jury. In so doing, this Court found that Valspar's mirror solutions formulae – and in particular, Valspar's novel combinations of additives – were protectible "trade secrets"[1] but that the additives in and of themselves, as well as Valspar's business information, were not protectible "trade secrets." The Court also found that Valspar's breach of contract claims, even to the extent they were based on Defendants' receipt and use of Valspar's non-"trade secret" business information, should proceed to trial by jury. For example, the Court specifically pointed out that Defendants' receipt and use of Valspar's business information concerning perceived strategic weaknesses supported a tortious interference with contract claim. (Court Docket No. 286 at 17).

Plaintiffs are concerned that Defendants may attempt to make reference to this Court's previous Order and attempt to improperly "spin" the meaning and import of that Order. As one example, Plaintiffs are concerned that Defendants may highlight this Court's finding that Valspar's formula additives in and of themselves are not "trade secrets" to suggest or argue to the jury that Valspar's unique combinations of such additives also should not be deemed a trade secret. As another example, Plaintiffs are concerned that Defendants may attempt to argue that

[1] The Court left it up for the jury to determine whether the formulas and novel combinations of additives were, in fact, "trade secrets."

this Court's finding that Valspar's use of certain additives and Valspar's business information are not "trade secrets" means that such information should not be protected by the confidentiality agreements. But such arguments would contradict the law, overstate the meaning of the Order, confuse the jury, and prejudice Valspar.

Thus, this Court should preclude Defendants from discussing the Summary Judgment Order and the effects of that Order. If necessary, the Court can discuss that Order and its effects when instructing the jury at the conclusion of trial.

## II. ARGUMENT AND ANALYSIS

Only relevant evidence is admissible. Fed. R. Evid. 401, 402. Relevant evidence is that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. However, even relevant evidence should be excluded when its "probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury," or for numerous other reasons. Fed. R. Evid. 403.

This Court, in its previous Order, has already made some determinations of fact and law concerning the "trade secret" status of Valspar's business and technical information. For example, this Court has ruled that (1) none of Valspar's business information is a "trade secret" and (2) none of Valspar's formula additives, in and of themselves, are "trade secrets." Having resolved these issues on its own, there is no need for the jury to hear of the Court's determination.

The Court's determinations are irrelevant to the issues that remain in this suit. For example, the Court's finding that Valspar's formula additives, in and of themselves, are not trade secrets has no bearing on (i) whether Valspar's unique combinations of such additives are trade

secrets or (ii) whether Valspar's formulas are "information," "knowledge," "data," "chemical formulas," or "formulas" that are explicitly protected by the employee confidentiality agreements, or even (iii) whether Valspar's additives, in and of themselves, are "information," "knowledge," "data," or "chemical compounds" explicitly protected by the employee confidentiality agreements, or (iv) whether Valspar's *actual use* of the additives – particularly in their approximate amounts and for their respective purposes – are trade secrets or are protected by confidentiality agreements. See, e.g., Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 899 (Minn. 1983) (unique combinations of known elements are protectable as trade secrets); Wyeth v. Natural Biologics, Inc., No. 98-2469, 2003 U.S. Dist. LEXIS 17713, at *52 (D. Minn. October 2, 2003) Bremer Decl. in Support, Ex. 17, aff'd 395 F.3d 897 (8th Cir. 2005); Eaton Corp. v. Giere, 971 F.2d 136, 141 (8th Cir. 1992) (finding breach of confidentiality agreement by disclosure of drawings "even if they did not rise to the level of a 'trade secret'"); Structural Dynamics Research Corp. v. Eng'g Mechs. Research Corp., 401 F. Supp. 1102, 1114 (D. Mich. 1975) ("Defendants are liable for breach of their contracts and are answerable in damages if they used or disclosed confidential information, knowledge or technology gained while employed at SDRC. This is so even though such information, knowledge or technology is not itself a trade secret."); see also Ecolab, Inc. v. Paolo, 753 F. Supp. 1100, 1111 (E.D.N.Y. 1991) (applying New York law and holding that the unauthorized taking and exploitation of internal company documents, even if not rising to the levels of "trade secrets," gives rise to liability for unfair competition).[2]

[2] This Court previously analyzed and dismissed Valspar's unfair competition claim based on its application of Minnesota law. Valspar anticipates that Defendants will assert that the law of some other forum, such as New York (headquarters and domicile of Spraylat) or Germany will apply to this case. If Defendants prevail and New York law is applied, Valspar respectfully submits that its unfair competition claim should be reinstated pursuant to the Ecolab case and its predecessors and progeny.

Likewise, the Court's finding that Valspar's business information is not protectible as a "trade secret" has no bearing on whether such information is "information," "knowledge," or "data" explicitly protected by the employee confidentiality agreements. See, e.g., Eaton and Structural Dynamics Research, supra.

Moreover, allowing Defendants to present argument or evidence concerning the Order and its meaning will only confuse or mislead the jury, waste time and prejudice Valspar. If Defendants are allowed to point to the earlier Order as evidence of anything in this case, Valspar will be required to respond. This will open the door for each party to explain the summary judgment proceedings, the affect to be ascribed to the various arguments made during such proceedings, and the affect to be ascribed to this Court's Order based on such arguments.

For example, any argument by Defendants that the Court has held that the additives are not "trade secrets" may sway the jury to believe that the Court would disagree with a jury verdict that Valspar's combinations of such additives are trade secrets. Stated in other words, if the jury is told that the Court, itself, believes Valspar's additives are not trade secrets, the jury may be lead to believe that the Court would have the same opinion about Valspar's combinations of such additives. Likewise, any argument by Defendants that this Court has held that Valspar's additives and business information are not "trade secrets" may sway the jury to believe that the Court would frown upon a verdict that Defendants tortiously interfered with the confidentiality agreements.

The focus of the presentation to the jury should be on the evidence and its application to the remaining causes of action, ***not*** on this Court's summary judgment ruling and what inferences the jury should draw from it. Although the Court can sift through the argument and knows the import – and lack thereof – of its previous Order, the jury cannot. By the time

Valspar and the Court try to clarify the meaning and import of the Court Order via evidence, argument, and jury instructions, it is very likely that the jury will only become confused about its mission and the issues to be decided. Valspar should not be prejudiced by Defendants' references to the Court's Order and any perceived imprimatur stamps of approval to certain conclusions.

Thus, this Court should preclude Defendants from discussing the Summary Judgment Order and the effects of that Order. If necessary, the Court can discuss that Order and its effects when instructing the jury at the conclusion of trial.

## IV. CONCLUSION

Any "evidence" or argument concerning the Order is irrelevant, and worse yet will certainly mislead or confuse the jury to the prejudice of Valspar. Thus, this Court should preclude Defendants from introducing evidence, testimony, or argument concerning the March 31, 2004 Order and its effects on the case. The Court, if necessary, can discuss that Order and its effects when instructing the jury at the conclusion of trial.

Dated this 4th day of March, 2005.

**THE VALSPAR CORPORATION, VALSPAR SOURCING, INC. AND VALSPAR INDUSTRIES GMBH**

By their attorneys,

By s\ Dennis C. Bremer
Alan G. Carlson (MN ID #14,801)
J. Derek Vandenburgh (MN ID #224,145)
Dennis Bremer (MN ID #299,182)
Brian Hayes (MN ID #294,585)
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.C.
225 South Sixth Street, Suite 3200
Minneapolis, Minnesota 55402
Ph. (612) 436-9600
Fx. (612) 436-9605

Andrew Ubel (MN ID #235,799)
VALSPAR
1101 Third Street South
Minneapolis, Minnesota 55415
Ph. (612) 375-7322