UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| The Valspar Corporation and, Valspar Sourcing, Inc. | ) | |
| Plaintiff, | ) | Civil Action No. ____________ |
| v. | ) | |
| Spraylat Corporation and Spraylat GmbH, | ) | |
| Defendants. | ) | |

## DECLARATION OF MICHAEL SEIDLER

I, Michael Seidler, hereby declare as follows:

1. My name is Michael Seidler and I am Division Vice President Industrial Coatings Europe for Valspar Industries GmbH. I make this declaration on my own information, knowledge and belief.

2. In the past several months, Spraylat has hired at least five former employees of Valspar and/or Lilly Industries, Inc., a company recently acquired by The Valspar Corporation. Officer Alain DeBlandre, Controller Willi Luettgens, technical service representatives Guenther Reipa and Ludwig Kotschenreuther and executive assistant Natalie Schroeer. Each of these individuals had access to trade secrets and other proprietary information of Valspar and/or Lilly Industries.

3. Numerous files were recovered from a Valspar computer that was used by former Valspar Controller Willi Luettgens. These files show that Luettgens was actually working for Spraylat while still employed by Valspar. These files also show that Spraylat was using Valspar confidential and proprietary information. For example, one file found on Luettgens' Valspar

computer was a draft business plan for Spraylat containing confidential information regarding Valspar's customers, sales, pricing, cost and profitability for its mirror products business.

4. DeBlandre also used a computer owned by Valspar. DeBlandre implemented a password in bios on this computer. Valspar does not know the password. Without the password, Valspar is unable to access the file system on this computer, even with a boot disk.

5. Reipa and Kotschenreuther also each used a computer owned by Valspar. Reipa and Kotschenreuther each moved the files from the hard drives on their respective Valspar computers to floppy disks. Reipa and Kotschenreuther also took other steps to prevent the recovery of files from their computers, so that Valspar has been unable to recover the removed files from these computers.

6. Attached as Exhibit 1 is a true and correct copy of an e-mail communication exchange that was recovered from the Valspar computer used by Willi Luettgens. The file indicates that the e-mail entitled "bank account" was sent from Willi Luettgens' Valspar / Lilly Industries e-mail account to John Ragazzini and Alain DeBlandre at Spraylat. The e-mail entitled "Re: bank account" was sent by Alain DeBlandre to Willi Luettgens, William Borner and John Ragazzini.

7. Attached hereto as Exhibit 2 is a copy of a page from the web site of Spraylat, showing that John Ragazzini is Spraylat's Vice President for Finance, while William Borner is a Spraylat Vice President and its General Counsel.

8. Spraylat has in its possession equipment formerly owned by Valspar predecessor Lilly Industries and now owned by Valspar. Valspar believes that Reipa and/or Kotschenreuther took this equipment when they left Valspar for Spraylat. Valspar is also missing a formula book

containing Valspar trade secrets. Valspar believes that Reipa and/or Kotschenreuther may have taken the formula book when they left Valspar for Spraylat.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2001

Michael Seidler

**Willi Luettgens**

| | |
|---|---|
| **Von:** | Alain DeBlandre [adeblandre@wwdc.com] |
| **Gesendet:** | Freitag, 8. Juni 2001 21:59 |
| **An:** | Willi Luettgens |
| **Cc:** | Bill Borner; John Ragazzini |
| **Betreff:** | Re: bank account |

Willi,

Although I understand emergency, please do not use your Lilly e-mail address for anything that has to do with Spraylat- insure this messages is deleted from your equipment - call me if you need assistance for this.

In the meantime, can you have a bank form to fill from Sparkasse, have it submitted to Thomas Schmitz this Monday and ask him to fax it urgent to Bill Borner, in order to open the business account a.s.a.p.

In the meantime, I have stressed the urgency of a bank account to be available for early next week. I will do anything I can to help. Bill or John will get back to us with a recommendation hopefully this week end to solve the guarantees for VW leasing and the Wallenfels building.

Can you also finalize the cash flow statement this week end and have it forwarded to John by Monday.

Thanks,

Alain.

**********************************************************************
* Tracking #: 6064C764275CD511879900E07D7FDA08149E1BA2
*
**********************************************************************



EXHIBIT
1
Seidler Decl.

**Willi Luettgens**

**Von:** Willi Luettgens [willi.luettgens@lillyindustries.de]
**Gesendet:** Freitag, 8. Juni 2001 16:18
**An:** 'RagazziniJ@Spraylat.com'
**Cc:** 'Alain DeBlandre'; 'Lüttgens Willi privat'
**Betreff:** bank account

Hello Mr Ragazzini

to open a simple bank account for the new company is more difficult as we thought.

For the installation of the account in the name of the Spraylat GmbH the bank needs the articles of association of the company where the shareholder of the company is named.
Additional we need the shareholder resolution which declares that Mr DeBlandre is to be installed as general manager.

As our lawer told me, he will finish this things until monday and also signed by a notary public. The problem will be to get the signature from Mr Borner so quickly. Normaly he has to do it in Germany. Perhaps he can sign it by a notary public in USA. But we have to check this.

There we need the money as soon as possible, there remain to possiblities.

1) You send the money to a trust account of our lawer and give him the declaration that Mr DeBlandre is allowed to take money for our special expenses.

2) Mr Deblandre opens a privat account by the Sparkasse and when the installation of the company is done we change it to the name of Spraylat GmbH.

What is your suggestion?

Please answer to my privat e-mail-address.

Best regards
W. Lüttgens

## OUR PEOPLE We have over 350 employees who make Spraylat work. Meet the executives who represent them.

**James Borner**
Chairman of the Board

**Michael Borner**
Chief Executive Officer

**Ray Chlodney**
President

**Donald Ensign**
Vice President
Sales & Marketing

**Trevor Mason**
Vice President & General Manager
Powder Coatings

**Roy Bjorlin**
Vice President
Conductive Coatings

**John Ragazzini**
Vice President
Finance

**Philip Smith**
General Manager
Chicago, IL

**William Borner**
Vice President
General Counsel

**Ken Breitman**
Director
Human Resources

**Jim Egizio**
National Sales Manager
Industrial Coatings

**Paul Johnson**
National Sales Manager
Powder Coatings

EXHIBIT
2
Seidlee Decl.

**Brian P. Kelly**
National Sales Manager
Sign Coatings

Learn about our Company and our History.

---

We want this website to be helpful. So, if there's something else you'd like to see or do here, let us know.

[Copyright | Legal | Suggestions | Webmaster ]

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Valspar Corporation, Valspar Sourcing, Inc., and Valspar Industries GmbH, Plaintiffs, v. Spraylat Corporation and Spraylat GmbH, Defendants. | Civil Action No. 01-CV-1605 JNE/JGL<br><br>**ELECTRONIC PLACEHOLDER** |

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's office:

**EXHIBIT 13 TO THE DECLARATION OF DENNIS C. BREMER IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE**

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

___ Voluminous Document * (Document number of order granting leave to file conventionally: ___)

___ Unable to Scan Documents (PDF file size larger than the e-filing system allows)

___ Physical Object (description);

___ Non Graphical/Textual Computer File (audio, video, etc.) on CD or other media

_XX_ Item Under Seal* (Document number of protective order: Document number **11**)

___ Conformance with the Judicial Conference Privacy Policy (General Order 53)
(Document number of redacted version: __)

___ Other (description):

*Filing of these items requires Judicial Approval

This Notice is e-filed as a place holder in ECF for the Documents filed conventionally. A copy of this Notice and a copy of the NEF are filed with the Clerk's Office along with the conventionally filed item(s).

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| The Valspar Corporation,<br>Valspar Sourcing, Inc., and<br>Valspar Industries GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>Spraylat Corporation and Spraylat GmbH,<br><br>Defendants. | ) | Civil Action No. 01-CV-1605 JNE/JGL<br><br>**ELECTRONIC PLACEHOLDER** |

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's office:

**EXHIBIT 14 TO THE DECLARATION OF DENNIS C. BREMER IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE**

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

___ Voluminous Document * (Document number of order granting leave to file conventionally: ___)

___ Unable to Scan Documents (PDF file size larger than the e-filing system allows)

___ Physical Object (description);

___ Non Graphical/Textual Computer File (audio, video, etc.) on CD or other media

XX Item Under Seal* (Document number of protective order: Document number **11**)

___ Conformance with the Judicial Conference Privacy Policy (General Order 53)
(Document number of redacted version: __)

___ Other (description):

*Filing of these items requires Judicial Approval

This Notice is e-filed as a place holder in ECF for the Documents filed conventionally. A copy of this Notice and a copy of the NEF are filed with the Clerk's Office along with the conventionally filed item(s).

LEAK REPAIRS, INC., Plaintiff, v. DONALD M. HIGGINS, PAUL BOOVER, TERRY BRITT and ENERGY MAINTENANCE, INC., Defendants

No. 89 C 8034

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1991 U.S. Dist. LEXIS 13862

September 26, 1991
October 1, 1991, Docketed

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendants, former employees and their new employer, filed a motion for summary judgment in plaintiff former employer's action for breach of employment contract, tortious interference with contract, tortious interference with business relationship, breach of trust and confidence, and for injunctive relief. The matter was referred to a magistrate for a report and recommendation pursuant to 28 U.S.C.S. § 636(b)(1)(B).

**OVERVIEW:** The former employer claimed that the former employees breached their contracts when they went to work for the new employer and that the new employer tortiously induced the breach. The former employer also claimed that by soliciting its customers, the former employees and their new employer tortiously interfered with the former employer's business relationships and breached their common law duties of trust and confidence. The magistrate found that the former employees and their new employer were entitled to summary judgment on the former employer's claims for breach of contract and tortious interference with contract. The covenants not to compete were unenforceable because the former employees were employees at will and the covenants were not ancillary to otherwise valid and enforceable contracts. The former employees' contractual promises not to use or disclose confidential information similarly lacked consideration and were not enforceable. However, the former employer's remaining claims survived the invalidity of the employment contracts and were sufficient to withstand summary judgment.

**OUTCOME:** The magistrate found that the former employees and their new employer were entitled to summary judgment solely on the former employer's claims for breach of contract and tortious interference with contract. The magistrate recommended that the motion for summary judgment otherwise be denied. However, the former employees were entitled to a declaratory judgment that the covenants not to compete were unenforceable and void.

**CORE TERMS:** leak, covenant, compete, summary judgment, confidential information, employment agreement, enforceable, unenforceable, injunction, disclose, principal place of business, tortious interference, ancillary, common law, recommendation, non-competition, preliminary injunction, declaratory judgment, continued employment, legitimate interest, contractual promise, restraint of trade, undersigned, invalidity, void, entitled to summary judgment, summary judgment motion, jurisdictional minimum, change in position, injunctive relief

**LexisNexis(TM) Headnotes**

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy***

***Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss***

[HN1]The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN2]A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.

***Civil Procedure > Summary Judgment > Supporting Papers & Affidavits***

[HN3]Under U.S. Dist. Ct., N. D. Ill., R. 2(n)(2), a party contesting a summary judgment motion must submit a statement of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. To dispute an implication is not to offer evidence, or, for that matter, allege facts.

***Labor & Employment Law > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements***

[HN4]Texas follows the common-law rule that a covenant not to compete is in restraint of trade and unenforceable unless reasonable. Whether it is reasonable is a question of law for the court. To be reasonable a covenant must satisfy three criteria. First, it must be ancillary to an otherwise valid transaction or relationship which gives rise to an interest worthy of protection. Second, the restraint must not be greater than necessary to protect the promisee's legitimate interest. Third, the promisee's need for the protection afforded by the covenant must not be outweighed by either the hardship to the promisor or any likely injury to the public.

***Contracts Law > Consideration > Adequate Consideration***

[HN5]While Texas courts follow the general rule that a court will not concern itself with the adequacy of consideration, this is limited by the principle that a court should not ignore the substance of a transaction covered by a fig leaf of form.

***Labor & Employment Law > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements***

***Contracts Law > Consideration > Sufficient Consideration***

[HN6]Because an agreement not to use or disclose confidential information does not of itself limit the right of an employee to work for whom he chooses, it is not in restraint of trade and thus not subject to the same presumption of invalidity as a covenant not to compete. Nevertheless, continued employment at will does not constitute consideration to support a contract.

***Labor & Employment Law > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements***

[HN7]Texas law recognizes the obligation not to use or disclose confidential information even in the absence of an express agreement.

***Civil Procedure > State & Federal Interrelationships > Choice of Law***

[HN8]When the parties do not say that the forum state's conflict-of-laws rules require the application of another state's substantive law, the forum state's law is to be applied on the assumption that the law of the forum and the law of the applicable jurisdiction are the same.

**JUDGES: [*1]**

Bernard Weisberg, United States Magistrate.

**OPINIONBY:** WEISBERG

**OPINION:** Magistrate Judge's Report and Recommendation on Defendants' Motion for Summary Judgment

This suit was filed by Leak Repairs, Inc. (Leak) against three of its former employees, Donald M. Higgins, Paul Boover and Terry Britt, and their new employer, Energy Maintenance, Inc. (EMI), alleging that the former employees had breached their employment contracts in going to work for EMI and competing with Leak (Count I). Leak alleges that EMI tortiously induced these breaches, and that each former employee induced the breaches of the others (Count III). The complaint also alleges that by soliciting Leak's customers the defendants have tortiously interfered with Leak's business relationships, (Count II) and that the employees have breached common-law obligations of trust and confidence (Count IV). Leak seeks injunctive relief (Count V) and damages.

The complaint alleges diversity jurisdiction under 28 U.S.C. § 1332(a). Leak is a Texas corporation having its principal place of business in Texas, while Higgins, Boover and Britt (employees) are Illinois residents and EMI is a Missouri corporation having its principal place of business in **[*2]** OKlahoma. n1 The employees have counter-claimed for a declaratory judgment that the covenants not to compete contained in their employment agreements are unenforceable and void. On November 24, 1989 Leak moved for a preliminary injunction and evidentiary hearing. After that motion was referred to the undersigned the parties proceeded with discovery. Leak did not pursue its motion for preliminary injunction and the parties stated they expected to file cross motions for summary judgment. The defendants then moved for summary judgment on all of the plaintiff's claims. Leak did not file a cross motion. Defendants' motion has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties agree that the employment agreements are governed by Texas law.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Although the complaint did not state where the principal place of business of EMI is located, the parties subsequently stipulated that it is OKlahoma.

The complaint alleges that the amount in controversy exceeds the jurisdictional minimum of $ 50,000; this is denied in the defendants' joint answer. Leak seeks an injunction; the value of an injunction is measured by the threatened harm to the plaintiffs business if the injunction is denied, rather than the earnings to be lost by the defendants if it is granted. See id., para.96[2] at 896.

We conclude provisionally that the court has jurisdiction. The Supreme Court stated the test for the jurisdictional minimum in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938): [HN1]"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Leak's claim appears to be made in good faith, and it does not appear to a legal certainty that the threatened harm to Leak's business amounts to less than $ 50,000.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*3]**
Facts.

[HN2]A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. In deciding a motion for summary judgment we must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion. Holland v. Jefferson National Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989).

Both sides have engaged in unsupportable posturing concerning the scope of the summary judgment motion. Leak takes the position that by claiming there is no genuine issue of material fact, the defendants have admitted those matters not addressed in their motion, i.e., that they used confidential information. Leak Br. at 7-8. This is nonsense. The defendants contend they are entitled to summary judgment and that whether they used confidential information is immaterial; they admit nothing. The defendants offer the equally frivolous response that EMI is entitled to summary judgment because Leak did not come forward with evidence of any "wrongdoing by EMI" although defendants recognize that in addition to claims based on contractual **[*4]** covenants, Leak also asserts common law claims against all defendants which are not challenged by defendants' motion. Def. Reply at 9. Leak then argued that because they only addressed the validity of the covenants not to compete, the defendants have not "properly moved" for summary judgment as to the rest of the complaint. Leak Supplemental Response at 1-2. Nevertheless, the defendants claim that their motion is dispositive of the whole suit, Def. Br. at 8, and the court will consider all of Leak's claims.

The following facts are undisputed. Higgins "commenced a second term of employment" with Leak on March 13, 1986, and signed an employment agreement, Complaint Ex. A, on July 20, 1988. At the time he did so he accepted a change in position to operations manager of Leak's Chicago branch office and a salary increase. Boover signed an employment agreement, Complaint Ex. B, on November 21, 1988 while already employed by Leak. At the same time he received an increase in compensation. Employee Britt had been employed by Leak Repairs since April 23, 1985. He signed an employment agreement, Complaint Ex. C, on September 21, 1987. At the time he did so he received a change in position and **[*5]** an increase in compensation. n2 Attached to Britt's employment agreement is a separate memorandum, dated January 1987, directing employees to preserve confidential information. Britt acknowledged receipt of this memorandum; his signature is dated September 1, 1987.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Leak "disputes the implication" that Britt and Boover did not sign employment agreements with Leak prior to those sued upon, Response to Defendants' Statement of Facts paras. 2, 3, but has provided no evidence of such other agreements. [HN3]Under Local Rule 12(n)(2) a party contesting a summary judgment motion must submit "a statement . . . of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." To dispute an implication is not to offer

evidence, or, for that matter, allege facts. Although we must draw reasonable inferences in favor of Leak, it is not a reasonable inference that the employees had prior contracts that were superseded by the later ones.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*6]

The employment agreements were form contracts, identical except for the amounts of each employee's compensation filled in on the attached schedule, also a preprinted form. The schedule states that "the Employer may make adjustments in the rate of the Employee's basic compensation hereunder without the necessity of formal modification of this Agreement." The agreements were for a term of one year, automatically self-renewing from year to year thereafter. The duties of the employee were not set forth, but were to be determined by the employer's president or his representative; in other words, the employees were to do what their supervisors told them to.

Each employment agreement contained a covenant by the employee not to compete with Leak for a period of three years following termination of his employment within a 200 mile radius of any Leak office or place of business, and not to employ or solicit for employment any Leak employee. The employment agreements authorize a court to modify the duration and geographical area of the covenant, and contain the employee's acknowledgement that the non-competition covenant is reasonable. They also contain covenants not to use or disclose any confidential [*7] information of Leak without its consent. The agreements provided that the employee could be discharged, with or without cause, upon five days' notice.

All three employees were employed by Leak at its branch office in Chicago. All three resigned between August 29 and September 7, 1989 and shortly thereafter went to work for EMI in the Chicago area. Both EMI and Leak are in the business of, among other things, repairing leaks in industrial piping while the piping is in use and under pressure. Leak acknowledges that it is not seeking to prevent the disclosure of secret technical information, but only "customer and financial information."

Discussion

[HN4]Texas follows the common-law rule that a covenant not to compete is in restraint of trade and unenforceable unless reasonable. Whether it is reasonable is a question of law for the court. Martin v. Credit Protection Ass'n, Inc., 793 S.W.2d 667, 668-69 (Tex. 1990). To be reasonable a covenant must satisfy three criteria. First, it must be ancillary to an otherwise valid transaction or relationship which gives rise to an interest worthy of protection. Second, the restraint must not be greater than necessary to protect the promisee's [*8] legitimate interest. Third, the promisee's need for the protection afforded by the covenant must not be outweighed by either the hardship to the promisor or any likely injury to the public. DeSantis v. Wackenhut Corp., 793 S.W. 2d 670, 681-82 (Tex. 1990).

In Martin the petitioner had been employed by the respondent since 1980 as an employee at will. In 1983 he was promoted and in the same year signed an agreement not to compete for a period of three years following the termination of his employment. n3 Had he not signed it, his employment would have terminated. In 1985 he resigned and started his own business in competition with the respondent, who sued and obtained an injunction enforcing the covenant. The judgment was upheld by the Court of Appeals, but the Texas Supreme Court reversed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Neither the opinion of the Texas Supreme Court nor that of the Court of Appeals, Martin v. Credit Protection Ass'n, Inc., 757 S.W.2d 24 (1988), which quoted the trial court's findings of fact, stated whether he signed the agreement at the time of his promotion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*9]

The Supreme Court found that the covenant was not ancillary to an employment agreement because the agreement was the covenant; it did not contain any terms such as title, position, duration of employment, compensation, duties or responsibilities. Alternatively, the court concluded that the employment agreement was not an "otherwise enforceable agreement" because it was terminable at will. Id. at 669-70.

Leak seeks to distinguish Martin, pointing out that, unlike the agreement there held unenforceable, its employment agreements set forth the employees' compensation, were for a one year renewable term and required five days' notice of termination; therefore they contain promises enforceable against Leak and so are mutually binding agreements. We are unpersuaded by

these distinctions and conclude that the agreements add nothing of significance, other than the confidentiality and non-competition covenants, to an at-will employment relationship.

While the agreements do specify the employees' rate of compensation, the schedule attached to each agreement states that "the Employer may make adjustments in the rate of the Employee's basic compensation hereunder without the necessity **[*10]** of formal modification of this Agreement." Since Leak reserved the right to alter the employee's compensation, the compensation provisions of the agreements were not enforceable against Leak, except for compensation already earned, as is true of any employment at will.

Nor, in our view, are the one-year term or the five-day notice period significant. The contract renewed itself automatically at the end of the term but could be terminated at any time by either party without cause. The term added nothing of substance to employment at will. Only the five-day notice period had any effect on the substance of the relationship, but not much. Leak retained its right to dismiss the employee the instant it wanted to, although it had to pay five days of compensation in any event. The employee could be required to work for Leak after notice was given; he could not spend that time looking for another job. In exchange the employee gave up the right to work for any competing company within two hundred miles of each of Leak's offices for a period of three years.

[HN5]While Texas courts follow the general rule that a court will not concern itself with the adequacy of consideration, Manges v. Astra Bar, **[*11]** Inc., 596 S.W.2d 605, 612 (Tex. Civ. App., Corpus Christi 1980), this is limited by the principle that a court should not ignore the substance of a transaction covered by a fig leaf of form. n4 These agreements were form contracts, not bargained for, presented to the employees long after they started working for Leak. Leak wanted the covenants without giving up its prerogatives. Although courts in other states have held that continued employment at will for a reasonable period is valid consideration for a covenant not to compete, the Texas Supreme Court has held otherwise. In substance the employees were employees at will, and Martin governs. Since the covenants are not ancillary to otherwise valid and enforceable agreements, they are unenforceable under Martin and we need not determine whether they are reasonable in scope or protect a legitimate interest.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 See e.g., Miller v. Treo Enterprises, 585 S.W.2d 674, 676-77 (Tex. 1979) ("For the purposes of determining the applicability of the Real Estate License Act and the necessity of a license to recover a fee, the substance of the contract is the controlling question, not the form which the transaction ultimately takes. [citation] To hold otherwise would encourage unlicensed entities to develop ingenious devices or other indirections to evade the salutary purposes of the Act.")

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*12]**

The parties also disagree about the enforceability of the non-competition covenants under Texas Business and Commerce Code §§ 15.50 and 15.51, enacted in 1989 (Vernon Supp. 1990). Those provisions, set out in DeSantis, 793 S.W. 2d at 684 n. 7, are similar, if not identical, to Texas common law. Daytona Group Of Texas, Inc. v. Smith, 800 S.W. 2d 285, 288 (Tex. Civ. App., Corpus Christi 1990) (writ denied 1991). Since the parties have not pointed to any aspect of these statutes which would make a difference but have relied on Texas common law decisions, we find it unnecessary to discuss the statutes.

Turning to the contractual promise not to use or disclose confidential information, [HN6]because such an agreement does not of itself limit the right of an employee to work for whom he chooses, it is not in restraint of trade and thus not subject to the same presumption of invalidity as a covenant not to compete. Nevertheless, Martin, 793 S.W.2d at 670, holds that continued employment at will does not constitute consideration to support a contract. We are not aware of any doctrine that consideration insufficient to make one sort of promise enforceable is nonetheless sufficient to **[*13]** sustain a different promise. Therefore the employee's contractual promise not to use or disclose confidential information is also not enforceable and Count I for breach of contract should be dismissed in its entirety. Because there was no enforceable contract, the claim for tortious interference with contract, Count III, should be dismissed as well.

Leak argues that if the defendants were employees at will, this would not prevent a claim of tortious interference, citing Sterner v. Marathon Oil Co., 767 S.W.2d 686 (Tex. 1989). The argument was waived because it was not raised until Leak's supplemental response, the last brief filed. Furthermore, we think Sterner should be distinguished. The defendant there caused Sterner's employer to discharge him from his at-will employment. The court stated broadly that a

cause of action exists for tortious interference with a contract of employment terminable at will, 767 S.W. 2d at 688, and a voidable contract is valid and subsisting and not to be interfered with before it is voided. But the alleged interference here is quite different; it is with post-employment covenants which violate fundamental policy under Texas law. DeSantis, [*14] 793 S.W.2d at 679-81.

However, we do not agree with the defendants that this disposes of the rest of the complaint. Although both Martin and De Santis discussed goodwill and confidential information as interests that may be protected by a covenant not to compete, the obligation not to use or disclose confidential information is generally considered a separate obligation. [HN7]Texas law recognizes such an obligation even in the absence of an express agreement. Jeter v. Associated Rack Corp., 607 S.W.2d 272, 276 (Tex. Civ. App., Texarkana 1980) (writ ref. n.r.e. 1981); Collins v. Ryon's Saddle & Ranch Supplies, Inc., 576 S.W.2d 914 (Tex. Civ. App., Ft. Worth 1979). Thus these obligations survive the invalidity of the employment agreements and Count IV should not be dismissed.

If the defendants' use of confidential business information was wrongful, the defendants may have committed the tort of interference with business relationships as alleged in Count II. Prudential Insurance Co. v. Van Matre, 158 Ill App. 3d 298, 511 N.E.2d 740, 744-45, 110 Ill. Dec. 563, 567-68 (5th Dist. 1987). n5 Count II as well should therefore not be dismissed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Although not alleged in the complaint, it is reasonable to suppose that some of the allegedly tortious activities of the defendants took place in Illinois, rendering Illinois law applicable. In any event, [HN8]when the parties do not say that the forum state's conflict-of-laws rules require the application of another state's substantive law, the forum state's law is to be applied on the assumption that the law of the forum and the law of the applicable jurisdiction are the same. In the Matter of Iowa Railroad, 840 F. 2d 535, 543 (7th Cir. 1988); National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp., 779 F.2d 1281, 1284-85 (7th Cir. 1985).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*15]**

Count V is a prayer for injunctive relief. In view of the foregoing discussion, Leak cannot succeed in enforcing the covenant not to compete by requiring EMI to discharge the defendant employees. Nevertheless, it may persuade the court that an injunction is appropriate to protect it from the misuse of its confidential information. So limited, Count V should stand.

The employee defendants have also moved for summary judgment on their counterclaim seeking a judgment that the covenants not to compete contained in the employment agreements are unenforceable and void. This motion should be granted.

Conclusion

We recommend that the defendants' motion for summary judgment on the complaint be granted as to Counts I and III and denied as to the other counts of the complaint. We further recommend that the employee defendants' motion for summary judgment on their counterclaim for declaratory judgment be granted.

Under 28 U.S.C. § 636(b)(1) the parties have 10 days from the date of service hereof to file written objections to this Report and Recommendation with Judge Marovich. Failure to file such objections will normally waive the right to appeal the rulings set forth in this Report. **[*16]** Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1039 (7th Cir. 1990).

Inter-Tel, Inc., Plaintiff, v. CA Communications, Inc., Marc Agar, Michael Agar, Brad Coburn, Jason Archuleta, Bill Pavelko, and Judy Pedlar, Defendants.

Civ. File No. 02-1864 (PAM/RLE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2003 U.S. Dist. LEXIS 23467

December 29, 2003, Decided

**SUBSEQUENT HISTORY:** Motion denied by Inter-Tel, Inc. v. CA Communs., Inc., 2004 U.S. Dist. LEXIS 1703 (D. Minn., Feb. 5, 2004)

**PRIOR HISTORY:** Inter-Tel, Inc. v. CA Communs., Inc., 2002 U.S. Dist. LEXIS 16989 (D. Minn., July 31, 2002)

**DISPOSITION:** [*1] Defendants' Motion for Summary Judgment Granted in part and denied in part. Counts VI, VII, VIII, IX and XI of Complaint dismissed with prejudice.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff telephone equipment company bought part of a business of a corporation. The company sued defendants, former employees of the corporation and their newly formed company, and alleged that they were either violating the terms of the non-competition and confidentiality agreements they signed with the corporation or were engaging in unfair competition. The former employees and their company moved for summary judgment.

**OVERVIEW:** The employees were terminated as part of a reduction in force. The company alleged that the employees were subject to covenants not to compete and confidentiality agreements, and that those agreements were assigned to the company. The employees contended that those agreements were superseded by the severance agreements each was required to sign when their employment with the corporation ended. As part of the severance agreements, the corporation had each employee sign a letter of confirmation that released the employee from any previous non-compete agreement. The confirmation contained its own non-competition agreement. The court found that the employees who signed the confirmation were no longer bound by the restrictive covenants in their prior employment agreements. Because the letter of confirmation did not contain any assignability clause, and the employees had not ratified assignment or waived their right to object to assignment, under Iowa law the letter of confirmation could not be assigned to the company and the company could not enforce it. Thus, the company's claims for tortious interference with the restrictive covenants and breach of contract were dismissed.

**OUTCOME:** Questions of fact existed as to two of the allegations of unfair competition and as to the misappropriation of trade secrets, tortious interference with customer contracts, and unjust enrichment claims. Summary judgment was granted with respect to the company's claims of tortious interference with restrictive covenants, breach of contract, and conspiracy, and those claims were dismissed with prejudice.

**CORE TERMS:** customer, trade secrets, covenant, misappropriation, restrictive covenants, compete, deceptive, summary judgment, genuine issue, severance, tortious interference, restrictive covenant, assignable, disparagement, assigned, unfair competition, non-competition, confidentiality, common-law, telephone, bought, ended, civil conspiracy, right to object, moving party, assignability, misleading, dentist, unjust enrichment, Lanham Act

**LexisNexis(TM) Headnotes**

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN1]Fed. R. Civ. P. 56(c) provides that a motion for summary judgment shall be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.

***Civil Procedure > State & Federal Interrelationships > Choice of Law***

[HN2]In diversity cases, the district court applies the choice-of-law principles of the forum state. Minnesota's choice-of-law rules are well settled. The court initially must determine whether the choice of one state's law over the other will determine the outcome of the case.

***Contracts Law > Types of Contracts > Personal Service Agreements***

***Contracts Law > Third Parties > Assignment of Rights***

***Contracts Law > Types of Contracts > Employment Contracts***

[HN3]In Iowa, executory contracts for personal services are not assignable unless the contract so provides or unless the other party consents thereto or ratifies the assignment or waives his right to object. Thus, an employment contract containing a covenant not to compete is not assignable under Iowa law unless the underlying agreement provides for assignment or the employee ratifies or waives her right to object to the assignment.

***Labor & Employment Law > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements***

***Contracts Law > Third Parties > Assignment of Rights***

***Contracts Law > Types of Contracts > Employment Contracts***

[HN4]In Minnesota, as in Iowa, a finding of assignability likely depends on the language of the contract. Moreover, Minnesota courts are historically reluctant to enforce covenants not to compete, because such covenants decrease competition and restrict the employee's ability to earn a living. Therefore, where the contract does not provide for assignment, a Minnesota court, like an Iowa court, would likely construe the language of the contract against the employer and find any assignment void.

***Trademark Law > Federal Unfair Competition Law > False Designation of Origin > Elements***

***Trademark Law > Subject Matter > Names > General Overview***

***Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview***

[HN5]The Lanham Act, 15 U.S.C.S. § 1051 et seq., proscribes the use in commerce of any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. 15 U.S.C.S. § 1125(a)(1).

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***

[HN6]In the context of a motion for summary judgment, it is not the role of the Court to search the record for facts that might create a genuine issue for trial.

***Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets***

***Trade Secrets Law > Protected Information > Customer Lists***

***Trade Secrets Law > Civil Actions > General Overview***

[HN7]Minnesota law prohibits the misappropriation of information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Minn. Stat. § 325C.01, subd. 5(i).

***Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy***

***Trade Secrets Law > Misappropriation Actions > Elements > Use***

[HN8]In order to establish a conspiracy, a plaintiff must prove, among other things, a meeting of the minds between two or more persons to perform an act or accomplish an unlawful purpose and the commission of one or more overt acts in pursuit of the illegal objective.

**COUNSEL:** For INTER-TEL, INCORPORATED, plaintiff: Bruce J Douglas, Dionne M Benson, Larkin Hoffman Daly & Lindgren, Bloomington, MN.

For CA COMMUNICATIONS, INC., MARC P AGAR, MICHAEL AGAR, BRAD COBURN, JASON ARCHULETA, BILL PAVELKO, JUDY PEDLAR, defendants: Barbara P Berens, Erin K Fogarty Lisle, Kelly & Berens, Mpls, MN.

For PETER JONES, movant: Joseph T Dixon, Jr, Timothy Mulrooney, Henson & Efron, Mpls, MN.

**JUDGES:** Paul A. Magnuson, United States District Court Judge.

**OPINIONBY:** Paul A. Magnuson

**OPINION: MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 This is not the first time the parties have been before this Court. In July 2002, Inter-Tel sought injunctive relief to enforce the individual Defendants' non-competition agreements. The Court found that there was insufficient evidence that the agreements were enforceable and denied Inter-Tel's Motion for a Temporary Restraining Order.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*2]

## BACKGROUND

Plaintiff Inter-Tel, Inc. is a telephone equipment company headquartered in Arizona. In January 2002, Inter-Tel bought part of the business of McLeodUSA, Inc. ("McLeod"), a company headquartered in Iowa. The portion of McLeod's business that Inter-Tel bought was called Integrated Business Systems ("IBS"). It appears that IBS was located in Minnesota, and primarily performed service on Toshiba telephone equipment for its customers. The assets acquired by Inter-Tel consisted of IBS's service maintenance contracts for telephone equipment.

Five of the individual Defendants, Marc Agar, Michael Agar, Jason Archuleta, Bill Pavelko, and Judy Pedlar, are former employees of McLeod. n2 All of these Defendants were terminated as part of a reduction in force on or before the date of Inter-Tel's purchase of IBS. The sixth individual Defendant, Brad Coburn, worked as a subcontractor for McLeod but was never an employee of McLeod. According to Inter-Tel, the five former employees were subject to covenants not to compete and confidentiality agreements and these agreements were assigned to Inter-Tel as part of the purchase of IBS.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Defendants Pedlar and Archuleta reached a settlement with Inter-Tel and thus no claims against these Defendants remain for resolution.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*3]

Inter-Tel alleges that Defendants Marc Agar and Brad Coburn formed Defendant CA Communications, Inc., shortly after Marc Agar was terminated from McLeod in December 2001. CA Communications then hired the remaining individual Defendants, albeit not until after these Defendants were terminated by McLeod. According to Inter-Tel, all of the individual Defendants are either violating the terms of the non-competition and confidentiality agreements they signed with McLeod or are engaging in the common-law torts of unfair competition, business disparagement, misappropriation of trade secrets, and tortious interference with contracts. Among Inter-Tel's allegations are that employees of CA Communications have represented to former McLeod customers that CA Communications, not Inter-Tel, bought their service maintenance contracts, and that one of the individual Defendants, Marc Agar, solicited McLeod employees to break their employment contracts.

Defendants (aside from Coburn) do not dispute that they signed confidentiality and non-competition agreements with McLeod. They contend, however, that those agreements were superseded by the severance agreements each was required to sign when their [*4] employment with McLeod ended. As part of the severance agreement, each individual Defendant signed a "Letter of Confirmation" from McLeod that released the employee from any previous non-compete agreement. This Letter of Confirmation contained its own non-competition agreement that required the former employee not to solicit customers or employees of McLeod for one year and not to disparage McLeod, and provided that the terms of any previously signed confidentiality agreement remained in effect until the employee's severance payments ended. The Letter of Confirmation did not specify that it was assignable to any third party or otherwise mention Inter-Tel. Defendants argue that, because Inter-Tel may not enforce the agreements, all of Inter-Tel's claims fail.

## DISCUSSION

### A. Standard of Review

Rule 56(c) provides that [HN1]a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably [*5] drawn from the evidence in the light most favorable to the non-moving

party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

The first issue to be determined is whether the individual Defendants are bound by any restrictive covenants. If the individual Defendants are bound by restrictive covenants, the Court must next determine whether Inter-Tel can enforce those covenants.

**B. Covenants not to Compete**

As noted above, all of the individual Defendants save Coburn signed covenants not to compete at some point during their employment with McLeod. Although the agreements were not identical, each agreement required the employee **[*6]** to maintain McLeod's confidential information and to refrain from competing with McLeod for a certain period of time after the employment relationship ended. (Behrens Aff. Ex. A.) Only one agreement, that of Michael Agar, provided that it could be assigned by McLeod to another company. (Id. at McLeod USA 000241.)

The Letter of Confirmation that McLeod required the individual Defendants to sign to receive severance purported to at least partially supersede these employment agreements, however. The Letter states:You agree not to solicit customers or employees of McLeodUSA for a period of one year from your last day paid. You also agree not to in any way disparage McLeodUSA. Any other terms of your current nonsolicitation agreement or noncompete agreement with McLeodUSA, including your agreement not to disclose proprietary information (if applicable) remain in force. Effective on last date paid, however, McLeodUSA releases you from any noncompete covenant to which you may have otherwise previously agreed to in writing with McLeodUSA.(Id. Ex. C.) The Letter of Confirmation was clearly intended to, and did, create a new restrictive covenant between McLeod and **[*7]** its soon-to-be-former employees. By the terms of the Letter of Confirmation, the previous employment agreements remained in effect only until the last severance payment. Defendants' severance payments ended at the latest in May 2002. Thus, the employees who signed the Letter of Confirmation are no longer bound by the restrictive covenants in their prior employment agreements. The terms of the Letter of Confirmation now govern Defendants' relationship with their former employer. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 It is undisputed that the covenant not to compete in the Letters of Confirmation has expired. To the extent that Inter-Tel has any claims under the covenant not to compete, those claims are limited to the one-year period outlined in the Letters of Confirmation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**C. Assignment**

Having determined that all of the individual Defendants but Coburn were bound by restrictive covenants, the Court must next examine whether Inter-Tel may enforce the covenants. It is undisputed that the Letter of Confirmation did not explicitly provide **[*8]** for assignment. The Letter of Confirmation likewise is silent as to which state's law applies to the terms of that agreement.

Defendants argue that Iowa law should apply because McLeod is an Iowa corporation. They make the curious argument that Iowa law applies because the bill of sale between McLeod and Inter-Tel provides that Iowa law applies to that agreement. A choice-of-law provision in a contract between McLeod and Inter-Tel is of no moment, however, when examining a contract between McLeod and its employees. Inter-Tel contends that, because the employees were located in Minnesota and the business was located in Minnesota, Minnesota law must apply to the Letter of Confirmation.

1. Choice of Law Analysis

[HN2]In diversity cases such as this, the Court applies the choice-of-law principles of the forum state. See Indep. Sch. Dist. No. 197 v. W.R. Grace & Co., 752 F. Supp. 286, 298 (D. Minn. 1990). Minnesota's choice-of-law rules are well settled. The Court initially must determine whether the choice of one state's law over the other will determine the outcome of the case. See Meyers v. Gov't Employees Ins. Co., 302 Minn. 359, 225 N.W.2d 238, 241 (Minn. 1974). **[*9]**

a. Iowa Law

Defendants contend that Iowa law clearly precludes the assignment of restrictive covenants to third parties. Orkin Exterminating Co. v. Burnett, 259 Iowa 1218, 146 N.W.2d 320 (Iowa 1966). The Orkin court found

that [HN3]executory contracts for personal services are not assignable "unless the contract so provides or unless the other party consents thereto or ratifies the assignment or waives his right to object." Id. at 327. The court assumed that the contract containing the covenant not to compete was an executory contract for personal services, but found that the contract expressly contemplated assignment and could therefore be assigned. Id. It appears as though Orkin remains the law of Iowa and thus an employment contract containing a covenant not to compete is not assignable under Iowa law unless the underlying agreement provides for assignment or the employee ratifies or waives her right to object to the assignment. Because the Letter of Confirmation did not contain any assignability clause, nor is there argument that any of the Defendants ratified assignment or waived their right to object to assignment, under Iowa law the Letter of **[*10]** Confirmation could not be assigned to Inter-Tel and Inter-Tel may not enforce it.

b. Minnesota Law

Inter-Tel contends that Minnesota law allows the assignment of covenants not to compete in all circumstances. Saliterman v. Finney, 361 N.W.2d 175 (Minn. Ct. App. 1985). As Inter-Tel notes, the court in Saliterman stated that "a covenant not to compete in an employment agreement is assignable ancillary to the sale of a business to protect the goodwill of that business." Id. at 178. However, the facts of Saliterman do not bear out such a broad reading of that case's holding.

In Saliterman, a dentist signed a restrictive covenant with a dental practice. The agreement prohibited the dentist from practicing dentistry within three miles of the practice's office after the termination of his employment. Id. at 176. The dental practice was sold, and several months later the dentist left the practice and opened his own practice within three miles of his former office. The new owner sued to enforce the restrictive covenant. Id.

The court, in language quoted above, found that the new owner could enforce the restrictive covenant. Id. at 178. **[*11]** However, the court's holding regarding assignability rested in large part on the fact that the contract expressly contemplated assignment. Id.; see also Enforceability, By Purchaser or Successor of Business, of Covenant Not to Compete Entered into by Predecessor and its Employees, 12 A.L.R.5th 847, 879 (1993) (discussing Saliterman). Thus, [HN4]in Minnesota, as in Iowa, a finding of assignability likely depends on the language of the contract. Moreover, Minnesota courts are historically reluctant to enforce covenants not to compete, because such covenants decrease competition and restrict the employee's ability to earn a living. Jim W. Miller Constr., Inc. v. Schaefer, 298 N.W.2d 455, 458 (Minn. 1980). Therefore, where the contract does not provide for assignment, a Minnesota court, like an Iowa court, would likely construe the language of the contract against the employer and find any assignment void. See, e.g., Hess v. Gebhard & Co., 570 Pa. 148, 808 A.2d 912 (Pa. 2002) (noting Pennsylvania's reluctance to enforce restrictive covenants and finding that restrictive covenant that does not provide for assignment is not assignable). **[*12]**

The Court determines that the choice of Minnesota's law over Iowa's law will make no substantive difference in the outcome of this case. The Court will therefore apply the law of the forum.

c. Merits

As noted previously, the Letters of Confirmation that the individual Defendants signed do not contain any language indicating that the signer assented to an assignment of the agreement. Thus, these agreements could not be assigned to Inter-Tel and Inter-Tel may not enforce the restrictive covenants in the Letters of Confirmation.

Inter-Tel argues that, at the time the Letters of Confirmation were signed, Inter-Tel's purchase of McLeod had been accomplished, so that the Letters actually evidenced an agreement between Inter-Tel and the signing employees. The dates of the Letters belie this argument however. Inter-Tel and McLeod signed the purchase agreement on January 24, 2002. Two of the Letters of Confirmation at issue were signed in late 2001. The remaining Letters of Confirmation were signed on January 24, 2002. On that date, McLeod still owned IBS, and, as the Letters of Confirmation make clear, the agreement is between McLeod and the employees, not McLeod's successor and the **[*13]** employees.

The Court notes that both Inter-Tel and McLeod are sophisticated companies and could easily have avoided the result here. Inter-Tel was undoubtedly aware when it was negotiating to purchase IBS that McLeod was in the process of reducing the IBS workforce. Inter-Tel knew or should have known that such a reduction in force would entail severance agreements. At a minimum, Inter-Tel should have insisted that any severance agreements provide specifically for assignment. Inter-Tel's failure to ensure that the restrictive covenants were assignable is fatal to its claims seeking to enforce those covenants. Thus, Inter-Tel's claims for tortious interference with the restrictive covenants (Count VI), and breach of contract against Michael Agar and Pavelko (Counts VII and IX) are dismissed. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 As noted previously, Inter-Tel and Archuleta have reached a settlement and thus the breach of contract claim against Archuleta (Count VIII) will be dismissed.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**C. Unfair Competition and Trade Secrets**

The Court's **[*14]** determination that Inter-Tel may not enforce the contractual restrictive covenants does not deprive Inter-Tel of all remedy for Defendants' allegedly anti-competitive conduct. Indeed, despite Defendants' contention to the contrary, Inter-Tel's claims for unfair competition and misappropriation of trade secrets do not depend on the existence of restrictive covenants. Inter-Tel may maintain these claims whether or not Defendants had any sort of restrictive covenant with Inter-Tel. See, e.g., Saliterman, 361 N.W.2d at 178-79 (describing common-law duty not to disclose or use confidential information).

In Counts I, II, III, and X, Inter-Tel contends that Defendants violated the Lanham Act, the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44, the Minnesota Prevention of Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69, and committed common-law business disparagement. These allegations arise out of several instances when individual Defendants, after commencing employment with CA Communications, allegedly made disparaging remarks about Inter-Tel or allegedly told customers that CA Communications, **[*15]** not Inter-Tel, had purchased the customer's service maintenance contracts from McLeod. Defendants contend that all of these claims fail because Inter-Tel has failed to raise a genuine issue of fact on the claims.

1. Deceptive Trade Practices

Inter-Tel claims that Defendants have used deceptive trade practices in violation of the Lanham Act, the DTPA, and the CFA. In pertinent part, the Lanham Act [HN5]proscribes the use in commerce ofany word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.15 U.S.C. § 1125(a)(1). n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The Complaint also contends that Defendants are violating 15 U.S.C. § 1125(b). (Compl. P47.) This section pertains to the importation of falsely labeled goods into the United States and has no bearing on Inter-Tel's allegations against Defendants.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*16]**

Inter-Tel contends that Defendants violated the DTPA, Minn. Stat. § 325D.44, subd. 1(1)-(3), (8), by: (1) passing off CA Communications' services as those of McLeod; (2) causing a likelihood of confusion or of misunderstanding among McLeod customers as to the source, sponsorship, approval, or certification of goods or services; (3) causing a likelihood of confusion or of misunderstanding as to CA Communications' affiliation, connection, or association with, or approval by Inter-Tel; and (4) making false, misleading, and disparaging statements about Inter-Tel. (Compl. P 53.) Similarly, Inter-Tel alleges that Defendants violated the CFA by employing "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice . . . in connection with the sale" of CA Communications' services. Minn. Stat. § 325F.69, subd. 1; Compl. P 100. Inter-Tel also claims that Defendants' conduct constituted common-law business disparagement. (Compl. 58.)

According to Inter-Tel, Defendants' deceptive trade practices include: (1) telling Inter-Tel (former McLeod) customers that McLeod is now CA Communications; (2) putting **[*17]** a CA Communications sticker on a phone serviced by Inter-Tel (formerly by McLeod); (3) using the former McLeod telephone number as CA Communications' number; (4) wearing McLeod clothing when calling on Inter-Tel (former McLeod) customers; and (5) telling customers that Inter-Tel cannot properly service their Toshiba phone systems. Defendants assert that Inter-Tel has no evidence to establish any of these violations and thus that summary judgment is appropriate on Inter-Tel's deceptive trade practices claims.

Inter-Tel insists that it has raised a genuine issue of fact on its claims. However, for most of its allegations, Inter-Tel does not point the Court to any deposition testimony or affidavit that raises these questions of fact. For example, Inter-Tel insists that Defendants altered service stickers on Inter-Tel's customer's telephones but does not cite to any evidence in the

record establishing that such alterations actually occurred. (See Pl.'s Opp'n Mem. at 24.) The Court reminds counsel that [HN6]it is not the role of the Court to search the record for facts that might create a genuine issue for trial. See Northwestern Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994) **[*18]** (Easterbrook, J.) ("District judges are not archaeologists."); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs"); Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc., 695 F.2d 839, 846-47 (5th Cir. 1983) ("Judges are not ferrets!"). The Court will presume from Inter-Tel's failure to come forward with evidence that there is no such evidence in the record.

Inter-Tel has established questions of fact on only two of its deceptive trade practices claims. The first claim is the claim arising out of Michael Agar's visit to McLeod customer AmeriStar Agency, Inc. ("AmeriStar"). Although Defendants attempt to paint this visit as innocent, it is apparent from the AmeriStar representative's deposition testimony that Michael Agar either told her or led her to believe that CA Communications and McLeod were one and the same. n6 (Behrens Aff. Ex. Q (Peterson Dep.) at 19 ("Q: So did [Michael Agar] say that McCloud [sic] had sold Toshiba phone accounts to CA Communications? A: Yes he did.").)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The Court notes that Defendants, not Inter-Tel, cite the relevant pages of the representative's deposition.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*19]**

The second claim that remains for trial is Inter-Tel's claim for business disparagement. Marc Agar testified that he told customers that Inter-Tel was not able to get new Toshiba equipment. (Steffenhagen Aff. Ex. G (Marc Agar Dep.) at 215-16.) Inter-Tel contends that it was able to purchase new Toshiba equipment. (Id. Ex. A (Johnson Dep.) at 122.) If Marc Agar's statement is false, it could constitute business disparagement. Inter-Tel has raised a genuine issue of fact on this claim. However, Inter-Tel has failed to establish that genuine issues of fact exist on its remaining allegations of deceptive trade practices.

2. Misappropriation of Trade Secrets

[HN7]Minnesota law prohibits the misappropriation of information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Minn. Stat. § 325C.01, subd. 5(1). Neither the Complaint nor Inter-Tel's memorandum specifies precisely what trade secrets Inter-Tel is seeking to protect. It appears as though the trade secrets at issue are customer **[*20]** lists and pricing information.

Defendants contend that there is no evidence that they misappropriated any of Inter-Tel's confidential information. According to Defendants, CA Communications purchased customer lists from other entities, including Toshiba. Moreover, Defendants argue that Inter-Tel cannot pursue a misappropriation claim because Inter-Tel has not established that it takes steps to protect these alleged trade secrets. Defendants assert that Inter-Tel has waived its misappropriation claim by not pursuing the alleged misappropriation of these same trade secrets by another former McLeod employee, Peter Johnson.

There are significant factual disputes between the parties on Inter-Tel's misappropriation claim. For example, Inter-Tel contends that CA Communications used Inter-Tel's customer lists, and Defendants contend that CA Communications purchased customer lists from other entities. Similarly, Defendants contend that former McLeod employee Peter Johnson has misappropriated Inter-Tel's trade secrets, often with the blessing of Inter-Tel, while Inter-Tel asserts that it has no knowledge that Peter Johnson has misappropriated any trade secret. There is likewise a factual dispute **[*21]** as to whether Inter-Tel took steps to maintain the confidentiality of the alleged trade secrets. These factual disputes preclude summary judgment on Inter-Tel's misappropriation of trade secrets claim.

If, however, the facts show that Inter-Tel acquiesced in Peter Johnson's use of Inter-Tel's trade secrets for a competing company, then the Court will determine, as a matter of law, that Inter-Tel cannot maintain a trade secret claim against Defendants.

3. Tortious Interference with Customer Contracts

In Count V of the Complaint, Inter-Tel contends that Defendants' deceptive trade practices and misappropriation of trade secrets constituted tortious interference with Inter-Tel's customers. The Court has concluded that Inter-Tel has succeeded in raising a genuine issue of fact as to some of its allegations of deceptive trade practices and misappropriation of trade secrets. A reasonable jury could find that this conduct also amounted to tortious interference with Inter-Tel's customer contracts. Thus, this claim survives summary judgment.

4. Conspiracy

Inter-Tel claims that Defendants' "coordinated misappropriation of trade secrets" and "consistent, uniform use of deceptive **[*22]** and untrue statements regarding Inter-Tel" constituted a civil conspiracy to deprive Inter-Tel of its customers. (Pl.'s Opp'n Mem. at 21.) [HN8]In order to establish a conspiracy, Inter-Tel must prove, among other things, a meeting of the minds between two or more persons to perform an act or accomplish an unlawful purpose and the commission of one or more overt acts in pursuit of the illegal objective. Anderson v. Douglas County, 4 F.3d 574, 578 (8th Cir. 1993); In re Temporomandibular Joint Implants Prods. Liab. Litig., 880 F. Supp. 1311, 1320 (D. Minn. 1995) (Magnuson, J.).

Inter-Tel has failed to establish any sort of meeting of the minds. There is no evidence that the alleged misappropriation of trade secrets was in any way "coordinated." Similarly, the record, at least as cited by Inter-Tel, is devoid of evidence that Defendants used any sort of consistent misrepresentations regarding Inter-Tel. At most, the record shows that Marc Agar may have told customers that Inter-Tel could not buy new Toshiba equipment and that Michael Agar may have told one customer that CA Communications bought McLeod's customer service contracts. This evidence simply does **[*23]** not amount to a meeting of the minds of the sort necessary to support a civil conspiracy claim, and summary judgment is appropriate on Inter-Tel's conspiracy claim (Count XI). See In re Temporomandibular Joint Implants Prods. Liab. Litig., 113 F.3d 1484, 1489 (8th Cir. 1997) ("Without evidence of specific facts tending to show an agreement or a 'meeting of the minds' and concerted action, a plaintiff seeking to show a civil conspiracy cannot survive a defendant's summary judgment motion.")

5. Unjust Enrichment

Count XII of the Complaint alleges that Defendants have been unjustly enriched by virtue of their allegedly unlawful conduct. Specifically, Inter-Tel claims that Defendants have been enriched "as a result of deceptive trade practices, violations of the Lanham Act, misappropriation of trade secrets, and breach of restrictive covenants." (Pl.'s Opp'n Mem. at 21.) To the extent that Inter-Tel has succeeded in raising a genuine issue of fact on its claims for deceptive trade practices under Minnesota and federal law and its claims for misappropriation of trade secrets, the unjust enrichment claim likewise survives summary judgment.

**CONCLUSION**

Questions **[*24]** of fact exist as to two of the allegations of unfair competition and as to the misappropriation of trade secrets, tortious interference with customer contracts, and unjust enrichment claims. Summary judgment is granted with respect to Inter-Tel's remaining claims. Accordingly, **IT IS HEREBY ORDERED** that:1. Defendants' Motion for Summary Judgment (Clerk Doc. No. 41) is **GRANTED in part** and **DENIED in part**; and

2. Counts VI, VII, VIII, IX, and XI of the Complaint (Clerk Doc. No. 1) are **DISMISSED WITH PREJUDICE**.Dated: December 29, 2003

S/

Paul A. Magnuson

United States District Court Judge