1998 U.S. Dist. LEXIS 15093

BAXTER DIAGNOSTICS, INC., Plaintiff, -against- NOVATEK MEDICAL, INC., Defendant.

94 Civ. 5220 (AJP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1998 U.S. Dist. LEXIS 15093

September 25, 1998, Decided
September 25, 1998, Filed

**DISPOSITION:** **[*1]** Novatek's and Baxter's motions in limine denied, except Baxter's "Arab boycott" motion, and both Baxter's and Novatek's motion in limine to exclude financial information relevant solely to punitive damages. Baxter's and Novatek's punitive damage claims dismissed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff diagnostic company and defendant medical supplier filed motions in limine before the court, seeking to exclude certain financial evidence from trial in plaintiff's breach of contract cause of action.

**OVERVIEW:** Plaintiff diagnostic company and defendant medical supplier entered into a distributorship agreement where plaintiff was given exclusive right to distribute defendant's bloodloc device for use associated with blood transfusions by medical facilities. Plaintiff filed suit against defendant alleging that defendant fraudulently induced plaintiff into the agreement and that defendant breached and anticipatory repudiated the parties' agreement. At the close of discovery, both parties filed cross motions for summary judgment and the trial court denied both motions. Both parties then filed motions in limine. The court granted both parties' motions in limine to exclude evidence solely relating to punitive damage claims and denied both parties pending motions in limine. Both parties' punitive damage claims were dismissed because defendant's counterclaim only alleged a breach of contract claim and did not allege an independent tort of an egregious nature nor a pattern directed at the public generally and plaintiff's claim did not allege any conduct directed at the public generally, therefore, neither party could recover punitive damages as a matter of state law.

**OUTCOME:** The court granted both parties', plaintiff diagnostic company and defendant medical supplier, motions in limine to exclude evidence solely relating to punitive damage claims and denied both parties pending motions in limine. Both parties' punitive damage claims were dismissed because neither party could recover punitive damages as a matter of state law.

**CORE TERMS:** distributor, punitive damages, warranty, limine, motion in limine, misrepresentations, post-contractual, supplier, conversion, breach of contract, rescission, merchandise, faulty, fraudulent, punitive damage, discovery, notice, fair dealing, punitive damages claim, hereunder, independent tort, counterclaim, inducement, egregious, remainder, summary judgment motion, fraudulently induced, material information, implied covenant, factual context

**LexisNexis(TM) Headnotes**

***Torts > Damages > Punitive Damages***

[HN1]The pleading elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract. They are: (1) defendant's conduct must be actionable as an independent tort, (2) the tortious conduct must be of the egregious nature, (3) the egregious conduct must be directed to plaintiff, and (4) it must be part of a pattern directed at the public generally.

***Torts > Damages > Punitive Damages***

[HN2]Under New York law, punitive damages may be awarded when fraud is gross, wanton, or willful, whether or not directed at the public generally.

***Contracts Law > Remedies > Punitive Damages***

***Torts > Damages > Punitive Damages***

[HN3]Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but vindicate public rights. Where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally.

***Contracts Law > Remedies > Punitive Damages***

***Torts > Damages > Punitive Damages***

[HN4]Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract.

***Contracts Law > Defenses > Fraud & Misrepresentation***

***Torts > Damages > Punitive Damages***

[HN5]In addition to morally culpable conduct, the most current decisions by the New York Court of Appeals also appear to require conduct that is part of a pattern directed at the public generally before punitive damages may be imposed. Punitive damages claim may be based on egregious fraud without showing conduct aimed at the public generally, but noting that only in actions arising from a breach of contract might a plaintiff need to allege conduct constituting a public wrong.

***Civil Procedure > Trials > Motions In Limine***

[HN6]A trial court may deny a motion in limine 'when it lacks the necessary specificity with respect to the evidence to be excluded.

***Civil Procedure > Trials > Motions In Limine***

[HN7]An order in limine excludes only clearly inadmissible evidence, therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. Such evidentiary rulings should be reserved until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context.

***Civil Procedure > Pleading & Practice > Pleadings > Interpretation***

[HN8]Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. A claimant does not have to set out in detail the facts on which the claim for relief is based, but must provide a statement sufficient to put the opposing party on notice of the claim, so that the opposing party may answer, conduct discovery and prepare for trial.

***Civil Procedure > Pleading & Practice > Pleadings > Interpretation***

[HN9]The principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. Fed. R. Civ. P. 8 requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate. The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is now available through the liberalized discovery provisions.

***Civil Procedure > Pleading & Practice > Pleadings > Interpretation***

[HN10]The purpose of Fed. R. Civ. P. 8 is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The complaint must disclose adequate information as to the basis of the claim to allow the court and the defendants to understand the charges and underlying theories of law, to allow the defendants to formulate a response, and so that issues may be identified for meaningful discovery and intelligible presentation to the trier of fact.

***Civil Procedure > Pleading & Practice > Pleadings > Interpretation***

[HN11]Fed. R. Civ. P. 8(a)(2) indicates the objective of the rules to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved, the discovery process bears the burden of filling in the details.

***Commercial Law (UCC) > Sales (Article 2) > Remedies***

[HN12]U.C.C. § 2-708 provides: (1) Subject to U.C.C. § 2-708(2) and to the provisions of this Article with respect to proof of market price U.C.C. § 2-723, the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article U.C.C. § 2-710), but less expenses saved in consequence of the buyer's breach. (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit, including reasonable overhead, which the seller would have made from full performance by the buyer, together with any incidental damages provided in § 2-710, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

***Commercial Law (UCC) > Sales (Article 2)***

[HN13]U.C.C. § 2-105 provides: Goods mean all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale. The conversion requirement clearly does not fall within this definition of goods.

***Contracts Law > Remedies***

[HN14]Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law. First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes. In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.

**COUNSEL:** For BAXTER HEALTHCARE CORPORATION, plaintiff: Irving B. Levinson, Rudnick & Wolfe, Chicago, IL.

For BAXTER HEALTHCARE CORPORATION, plaintiff: Leonard F. Lesser, Schneck, Weltman, Hashmall & Mischel, New York, NY.

For NOVATEK MEDICAL, INC., defendant: David Molton, Laurie J. Dolinger, Molton & Meekins, New York, NY.

For NOVATEK MEDICAL, INC., counter-claimant: David Molton, Laurie J. Dolinger, Molton & Meekins, New York, NY.

For BAXTER HEALTHCARE CORPORATION, counter-defendant: Leonard F. Lesser, Schneck, Weltman, Hashmall & Mischel, New York, NY.

For BAXTER HEALTHCARE CORPORATION, counter-defendant: Irving B. Levinson, Rudnick & Wolfe, Chicago, IL.

**JUDGES:** Andrew J. Peck, United States Magistrate Judge.

**OPINIONBY:** Andrew J. Peck

**OPINION:** OPINION AND ORDER

ANDREW J. PECK, United States Magistrate Judge:

Presently before the Court are the parties' pre-trial motions in limine.

In March 1992, plaintiff **[*2]** Baxter entered into an Exclusive Distributorship Agreement (the "Agreement") with Novatek, giving Baxter the exclusive right to distribute Novatek's "Bloodloc" devices to end-use customers in the United States during the period March 1992 to March 1995. (See Molton 7/1/98 Aff. Ex. A: The Agreement; see also, e.g. Novatek 7/6/ 98 Br. at 2; Molton 7/17/98 Aff. Ex. E: Baxter Ans. to Novatek Counterclaim, P 47.) Bloodloc is a plastic combination lock device that is designed to reduce the risk that a hospital will give a patient the wrong type blood. (See, e.g., Baxter 7/2/98 Br. Ex. D at 1; Molton 7/17/98 Aff. E: Baxter Ans. to Novatek Counterclaim, PP 48-49.) Baxter agreed, inter alia, to (1) purchase a minimum aggregate of 5,000,000 Bloodloc units for an agreed upon price (the "Minimum Purchase Requirement") and (2) convert 1000 hospitals to Bloodloc during the same three-year term (the "Minimum Conversion Requirement"). (Molton 7/1/98 Aff. Ex. A: Agreement PP 3(a), 3(j), 8.)

Baxter sued Novatek, alleging that Novatek fraudulently induced Baxter to enter into the Agreement and that Novatek breached and anticipatorily repudiated the Agreement. (See Molton 7/1/98 Aff. **[*3]** Ex. B: Am. Cplt.) Novatek asserted counterclaims for breach of the Agreement. (Molton 7/1/98 Aff. Ex. C: Ans. & Counterclaims.) After the close of discovery, Novatek and Baxter filed cross-motions for summary judgment, which were denied by Judge Duffy on February 4, 1998. (2/4/98 Order.) The parties then consented to trial of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). Trial is scheduled to begin October 6, 1998. Presently before the Court are Baxter's and Novatek's motions in limine.

For the reasons set forth below, both parties' pending motions in limine are denied, except that the Court grants both parties' motions in limine to exclude evidence solely relating to punitive damage claims (which claims are dismissed). n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 On July 16, 1998, the Court granted Baxter's motion in limine to exclude references to the Arab embargo, as contained in an August 27, 1993 letter from Stephen C. Snyder to Vernon R. Loucks. (7/16/98 Memo Endorsed Order; 7/16/98 Tr. at 27-33.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**ANALYSIS [*4]**

**I. BOTH BAXTER'S AND NOVATEK'S MOTIONS IN LIMINE ARE GRANTED AS TO EVIDENCE RELATING SOLELY TO PUNITIVE**

**DAMAGES, AND ALL PUNITIVE DAMAGE CLAIMS ARE DISMISSED**

Novatek and Baxter each move to exclude financial evidence the other may offer that is only relevant to punitive damages because each argues that, as a matter of New York law, the other has no claim upon which punitive damages may be based. (See Baxter 7/2/ 98 Br. at 2-3; Novatek 7/6/ 98 Br. at 8-9.) n2 Both Novatek and Baxter base their arguments on the New York Court of Appeals' opinion in Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994). n3 The Rocanova holding more recently was summarized by the New York Court of Appeals as follows:

We set forth in the [Rocanova] decision [HN1]the pleading elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract. They are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in Walker v. Sheldon, 10 N.Y.2d 401, 404-05, [*5] 223 N.Y.S.2d 488, 179 N.E.2d 497, ...; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally ...

New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 315, 639 N.Y.S.2d 283, 287, 662 N.E.2d 763 (1995).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Novatek's response brief agreed that both parties punitive damage claims were defective:

Novatek agrees that its punitive damages claim suffers from the same deficiency as Baxter's claim under current New York law. If the Court precludes Baxter from offering evidence relating to its punitive damages claim, Novatek agrees that it also should not be permitted to offer evidence of Baxter's financial condition or net worth to support its demand for punitive damages.

(Novatek 7/21/ 98 Br. at 1-2.)n3 The Agreement provides that it is governed by New York law. (Molton 7/1/98 Aff. Ex. A: Agreement P 17(c).)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Since Novatek's counterclaim only alleges a breach contract claim, and does not allege an independent [*6] tort of an egregious nature, nor a pattern directed at the public generally, Baxter is correct in its assertion that Novatek's punitive damage claim should be dismissed as a matter of law.

Baxter argues, however, that the fourth Rocanova requirement does not apply to its claim that it was fraudulently induced to contract with Novatek. (Baxter 7/21/ 98 Br. at 11.) Baxter bases this assertion upon Ostano Commerzanstalt v. Telewide Sys., Inc., 880 F.2d 642 (2d Cir. 1989), a pre-Rocanova case involving a fraudulent inducement claim in a suit arising from a contract dispute. In Ostano, the Second Circuit held that, [HN2]under New York law, "punitive damages may be awarded when fraud is gross, wanton, or willful, whether or not directed at the public generally." 880 F.2d at 649. Since Ostano was decided before the New York Court of Appeals' decisions in Rocanova and New York University, however, Ostano no longer reflects New York law.

The New York Court of Appeals in Rocanova clearly explained that fraud arising from a contractual relationship must be directed at the public generally for punitive damages to be awarded:

[HN3]Punitive damages are not recoverable for [*7] an ordinary breach of contract as their purpose is not to remedy private wrongs but vindicate public rights. However, where the breach of contract also involves a fraud evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations", punitive damages are recoverable if the conduct was "aimed at the public generally."

Rocanova v. Equitable Life Assurance Soc'y, 83 N.Y.2d at 613, 612 N.Y.S.2d at 342 (citations omitted & emphasis added).

If any doubts remained, they were answered by the New York Court of Appeals' New York University decision. In New York University, plaintiff asserted claims of breach of contract and fraudulent inducement. After laying out the Rocanova test, the New York Court of Appeals explained that [HN4]"where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." 87 N.Y.2d at 315-16, 639 N.Y.S.2d at 286. Although the Court of Appeals dismissed the punitive

damage claims because [*8] plaintiff had not made out an independent tort cause of action, by laying out the Rocanova test and examining whether an independent tort had been made out, the Court implicitly rejected the Ostano view that the fraud did not have to be aimed at the public generally.

The Second Circuit acknowledged as much in United States v. Merritt Meridian Constr. Corp., 95 F.3d 153 (2d Cir. 1996), a suit arising from a contract, when it assumed arguendo that Merritt had committed fraud and affirmed the district court's dismissal of plaintiff's punitive damages claim because "none of this ... evinces a pattern of conduct harming the general public." 95 F.3d at 161. Other state and federal decisions agree with this conclusion. See, e.g., Brower v. Nydic, Inc., 1 F. Supp. 2d 325, 326 (S.D.N.Y. 1998); Linkers (Far East) Pte., Ltd. v. International Polymers, Inc., 1996 U.S. Dist. LEXIS 10276, 94 Civ. 9226, 1996 WL 412854 at *5 (S.D.N.Y. July 23, 1996) [HN5]("In addition to morally culpable conduct, however, the most current decisions by the [New York] Court of Appeals also appear to require conduct that is 'part of a pattern directed at the public generally' before punitive damages may be imposed."); In [*9] re West 56th Street Assoc., 181 B.R. 720, 723-28 (S.D.N.Y. 1995); see also, e.g., Amherst Magnetic Imaging Assoc. v. Community Blue, 239 A.D.2d 892, 893, 659 N.Y.S.2d 657, 658 (4th Dep't 1997); cf. China Trust Bank v. Standard Chartered Bank, PLC, 981 F. Supp. 282, 289-90 (S.D.N.Y. 1997) (punitive damages claim may be based on egregious fraud without showing conduct aimed at the public generally, but noting that "only in actions arising from a breach of contract might a plaintiff need to allege conduct constituting a public wrong"). n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 While some decisions in this District are to the contrary, this Court finds that those opinions fail to recognize the full import of the New York Court of Appeals' Rocanova and New York University decisions. See, e.g., Blank v. Baronowski, 959 F. Supp. 172, 179 (S.D.N.Y. 1997); Schlaifer Nance & Co. v. Estate of Warhol, 927 F. Supp. 650, 664 (S.D.N.Y. 1996), aff'd, 119 F.3d 91 (2d Cir. 1997); Ramapo Land Co. v. Consolidated Rail Corp., 918 F. Supp. 123, 129 (S.D.N.Y. 1996).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*10]

Thus, Baxter's reliance on Ostano is misplaced, and the Rocanova/New York University "directed at the public generally" requirement applies. Since Baxter has not alleged any conduct directed at the public generally, Baxter may not recover punitive damages as a matter of New York law.

Accordingly, the Court dismisses both Baxter's and Novatek's punitive damage claims.

While neither Baxter nor Novatek may recover punitive damages, their motions in limine "lack[] the necessary specificity with respect to the evidence to be excluded" and are "too sweeping in scope to be decided in limine." National Union Fire Ins. Co. v. L.E. Myers Co. Group, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Baxter seeks to exclude all "evidence of Baxter's financial condition" (Baxter 7/2/ 98 Br. at 1) n5 and Novatek seeks to "preclude[] [Baxter] from presenting evidence on its punitive damages claim." (Novatek 7/6/ 98 Br. at 8.) These motions in limine lack "the necessary specificity with respect to the evidence to be excluded... Thus, the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context." National Union [*11] Fire Ins. Co. v. L.B. Myers Co. Group, 937 F. Supp. at 287; see also, e.g., Koch v. Koch Indus., Inc., 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) ("[HN6]The Court may deny a motion in limine 'when it lacks the necessary specificity with respect to the evidence to be excluded.'"); Auenson v. Lewis, 1996 U.S. Dist. LEXIS 11834, No. 94-2734, 1996 WL 457258 at *1 (E.D. La. Aug. 12, 1996) [HN7]("An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. Such evidentiary rulings should be reserved until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context."); Hawthorne Partners v. AT&T Techs., Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (same); see generally 21 Wright & Graham, Federal Practice & Procedure: Evidence § 5037 at 193-95 (1977 & 1998 Supp.).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In addition to its general request, Baxter seeks to exclude one specific piece of evidence; Baxter's 1996 SEC Form 10K, Novatek designated as a trial exhibit. (Levinson 7/2/98 Aff. at 1.) Baxter argues that the 10K is only relevant to punitive damages. Novatek argues that "the enormous resources and expertise available

to Baxter defeats its claims of justifiable reliance on the oral statements allegedly made by Novatek concerning Bloodloc." (Novatek 7/21/ 98 Br. at 6.) Because the 10K may be relevant to whether Baxter's reliance was justified, the Court denies the motion in limine as to Baxter's 10K, subject to renewal at trial. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541 (2d Cir.) ("It is well established that 'where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."), cert. denied, 139 L. Ed. 2d 112, 118 S. Ct. 169 (1997); Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 737-38 (2d Cir. 1984) (same; relying on fact that "Grumman-the allegedly defrauded plaintiff-is a Fortune 500 company" in determining reliance was unjustifiable); Congress Fin. Corp. v. John Morrell & Co., 790 F. Supp. 459, 470-72 (S.D.N.Y. 1992) (same; relying on fact that allegedly defrauded plaintiff was "a large corporation with annual sales of approximately 1.8 billion" in determining reliance was unjustifiable).

Baxter argues that this evidence should be excluded under Federal Rule of Evidence 403 because the prejudice to Baxter from being viewed as "Goliath" against Novatek's "David" would outweigh any probative value. (Baxter 2/2/ 98 Br. at 4.) In support of this argument, Baxter cites American Hospital Supply Corp. v. Hospital Prods. Ltd., 780 F.2d 589 (7th Cir. 1986), which Baxter notes states that "'we attach no legal significance to the difference in the size of the parties. Although [one company] is a giant and [another] a pygmy, we cannot think what legal difference that makes.'" (Baxter 7/2/ 98 Br. at 4, quoting 780 F.2d at 598.) Baxter fails to note that the Seventh Circuit meant that the corporation's size had no significance in the specific factual context before it. In fact, two sentences after the language quoted by Baxter, the Seventh Circuit stated that size may be relevant in other potential fact situations: "Relative size is relevant where ... one party, being small and weak, faces bankruptcy if the preliminary injunction is granted or denied...." 780 F.2d at 598. The instant case presents another scenario where size may be relevant -- in demonstrating that reliance was not justifiable.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*12]**

Thus, the Court rules that both parties' punitive damage claims are dismissed and evidence that relates only to punitive damages is excluded. If financial evidence is relevant for other purposes it will not be excluded, subject to more specific objections and rulings at trial.

## II. NOVATEK'S REMAINING MOTIONS IN LIMINE ARE DENIED

### A. Baxter's Rescission Claim

In addition to damages, Baxter's complaint seeks rescission of the Agreement as a remedy on both its fraudulent inducement and breach of contract claims. Novatek argues that whether Baxter "is entitled to rescission of the Agreement is a question for the Court, not the jury." (Novatek 7/6/ 98 Br. at 5.) Novatek moves in limine that "evidence relevant solely to the rescission claims should not be presented to the jury." ( Id. at 6.) Novatek, however, does not refer to any specific evidence, and acknowledges that "the proof on Baxter's rescission claims overlaps to some extent with the proof on the legal claims" before the jury. ( Id. at 6; see also Baxter 7/21/ 98 Br. at 3-4.) Therefore, the Court will not rule on this motion now, but rather "will reserve judgment on the motion until trial when **[*13]** admission of particular pieces of evidence is in an appropriate factual context." National Union Fire Ins. Co. v. L.E. Myers Co. Group, 937 F. Supp. 276, 287 (S.D.N.Y. 1996); see also cases cited at pages 8-9 above. The Court notes that, to the extent a witness testifying on matters relevant to the jury's decision also is to testify briefly upon matters relevant to rescission, the Court is likely to allow the witness to testify as to the issue of rescission rather than call the witness back a second time to testify in a separate rescission proceeding, unless such testimony will become a lengthy digression. The Court further notes the obvious: since rescission is not a jury question, it is not an appropriate topic for opening statements or summations.

### B. Evidence Concerning Allegedly Unpleaded Breaches of the Agreement and the Covenant of Good Faith and Fair Dealing

Novatek moves in limine for the exclusion of evidence concerning two breaches of the Agreement and two violations of the covenant of good faith and fair dealing allegedly committed by Novatek that Novatek argues were not plead in Baxter's Amended Complaint. (Novatek 7/6/ 98 Br. at 10-11; Novatek 7/17/ 98 [*14] Br. at 9-10.) The "two unpleaded breaches [consist of the following]: (i) that Novatek failed to produce Bloodlocs pursuant to an August 9, 1993 'request' . . ., and (ii) that Novatek ceased all business operations in Summer of 1993." (Novatek 7/6/ 98 Br. at 10.) As to the implied covenant of good faith and fair dealing, Novatek opposes "Baxter's attempt to plead for the first time and introduce evidence on the following two additional grounds upon which Novatek allegedly violated the implied covenant of good faith and fair dealing between the parties: (1) by suspending its agreement with Skonie to provide field assistance; and (2) by declining to manufacture Bloodlocs when requested to by Baxter." (Novatek 7/ 17 Br. at 9-10.)

[HN8]Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claimant does not have to set out in detail the facts on which the claim for relief is based, but must provide a statement sufficient to put the opposing party on notice of the claim," so that the opposing party may answer, conduct discovery and prepare for trial. 2 James **[*15]** Moore, Moore's Federal Practice § 8.04[1] at 8-22 (Matthew Bender 3d ed. 1998); see also, e.g., Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) [HN9]("the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial"); Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986); Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980) (Rule 8 "requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate. The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is now available through the liberalized discovery provisions."); Conomos v. Chase Manhattan Corp., 1998 U.S. Dist. LEXIS 3135, 97 Civ. 0909, 1998 WL 118154 at *2 (S.D.N.Y. March 17, 1998); Jones v. Capital Cities/ABC Inc., 874 F. Supp. 626, 628 (S.D.N.Y. 1995); Schoolfield v. Department of Correction, 1994 U.S. Dist. LEXIS 4132, 91 Civ. 1691, 1994 WL 119740 at *2 (S.D.N.Y. April 6, 1994) [HN10]("The purpose of Rule 8 is to give **[*16]** the adverse party 'fair notice of the claim asserted so as to enable him to answer and prepare for trial.' ... The complaint must disclose adequate information as to the basis of the claim to allow the court and the defendants to understand the charges and underlying theories of law, to allow the defendants to formulate a response, and so that issues may be identified for meaningful discovery and intelligible presentation to the trier of fact."); 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1215 [HN11](Rule 8(a)(2) "indicates the objective of the rules to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details."), §§ 1216-20 (1990 & 1998 Supp.); 1 Michael C. Silberberg, Civil Practice in the Southern District of New York § 6.04 (1997).

A review of Baxter's Amended Complaint demonstrates that it satisfactorily places Novatek on notice of Baxter's breach of contract claim and breach of the implied covenant of good faith and fair dealing. **[*17]** Morever, the specifics that Novatek wishes to exclude actually are contained or alluded to in the Amended Complaint. The Amended Complaint asserts that Novatek breached the Agreement by "its lack of financial wherewithal to perform its obligations under the Agreement." (Molton 7/1/98 Aff. Ex. B: Am. Cplt. P 27.) This certainly is quite suggestive of the allegation, which Novatek wishes to exclude, that Novatek ceased all business operations in the summer of 1993. As for Novatek's alleged failure to manufacture and provide product, the Amended Complaint alleges that "this refusal to communicate with its distributor ... makes it impossible to continue with a viable supplier/distributor relationship" (Id. P 26), and Baxter's Fifth Affirmative Defense to Novatek's counterclaims states that "Novatek has failed to provide certain product to Baxter under the agreement" (Molton 7/17/98 Aff. Ex. E: Baxter Ans. to Novatek Counterclaim, 5th Aff. Defense). Finally, paragraphs 21-23 of the Amended Complaint detail Novatek's failure to provide field assistance. (Molton 7/1/98 Aff. Ex. B: Am. Cplt. PP 21-23.) Indeed, even without these specifics, the Amended Complaint sufficiently put Novatek **[*18]** on notice of Baxter's claims. Novatek certainly was placed on sufficient notice to conduct discovery to find out any further details it wished. n6 Therefore, the Court will not exclude evidence of these allegations. Novatek's motion in limine is denied.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 According to Baxter, discovery has been conducted by the parties regarding

these allegations: "Extensive discovery has been conducted regarding Novatek's suspension of its dealings with Skonie and Novatek's declining to manufacture Bloodlocs when requested by Baxter. Indeed, an employee of Skonie was deposed, as was the author of the letter objecting to Baxter's request for more Bloodlocs." (Baxter 8/3/ 98 Br. at 10; see also Baxter 7/21/ 98 Br. at 13.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**C. Baxter is Not Precluded From Offering Parol Evidence of Fraudulent Inducement**

Novatek argues that "the parol evidence rule prohibits Baxter from attempting to prove that it was fraudulently induced to enter into the Agreement by alleged oral representations whose existence is negated by the **[*19]** Agreement" and that evidence should be precluded regarding two of the alleged misrepresentations because they "are not actionable as a matter of law." (Novatek 7/6/ 98 Br. at 12, 16.) Novatek put forth similar arguments in its summary judgment motion. (See Novatek 4/12/96 S.J. Br. at 49-51, 37-39.) Judge Duffy denied Novatek's summary judgment motion, holding that "questions of fact exist as to the circumstances concerning the formation of the Exclusive Distribution Agreement. . . ." (See 2/4/98 Order.) This is the law of the case, and evidence concerning the fraudulent inducement claim and the alleged misrepresentations that are the bases for it therefore may be presented to the jury.

Novatek also has moved to exclude certain alleged fraudulent misrepresentations beyond the five specified in paragraph 11 of the amended complaint, as not being pled and therefore excludable. (See Novatek 7/17/ 98 Br. at 3-6; Molton 7/1/98 Aff. Ex. B: Am. Cplt. P 11(a)-(e).)

The flaw in Novatek's motion in limine is the "preamble" to paragraph 11 of the Amended Complaint. Before listing the five misrepresentations, paragraph 11 states: "Novatek's representatives made intentional misrepresentations **[*20]** of material fact to Baxter's representatives during the negotiations in order to induce Baxter to enter into the Agreement..., said misrepresentations including but not limited to" those in subparagraphs 11(a)-(e). (Molton 7/1/98 Aff. Ex. B: Am. Cplt. P 11, emphasis added.) In light of the "including but not limited to" language, the Court cannot understand Novatek's claim that only evidence as to the specific misrepresentations in subparagraphs 11(a)-(e) may be presented at trial. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 The Court need not decide if "including but not limited to" is appropriate where fraud is pled, pursuant to Fed. R. Civ. P. 9(b), because Novatek did not move against the complaint on that ground; a motion in limine is not a substitute for or equivalent to proper Rule 12 motions against pleadings. (See Baxter 8/3/ 98 Br. at 5-7.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Novatek's motion in limine is denied.

**D. At This Stage, the Court Will Not Exclude Plaintiff's Exhibits 59, 62, 138, 198**

Novatek argues that Plaintiff's Exhibits 59, 62, 138, and **[*21]** 198 should be excluded because these exhibits are "evidence of alleged misrepresentations by Novatek to" entities other than Baxter and "evidence that [Novatek] engaged in similar conduct is not admissible to prove that [Novatek] is likely to have engaged in the conduct alleged by [Baxter]." (Novatek 7/6/ 98 Br. at 18, 19.) In response, Baxter asserts that it "does not intend to argue that the four exhibits ... are evidence of Novatek's misrepresentations to others"; rather, Baxter argues that this evidence "comprehensively detail[s] the status of Novatek's business at crucial times during its relationship with Baxter." (Baxter 7/21/ 98 Br. at 20-21.) The Court will not decide the admissibility of these documents at this time, but will instead wait for further development of the factual setting at trial to provide clarity as to the potential relevance of these documents. See cases cited at pages 8-9 above. The Court stresses, however, that it will hold Baxter to its representations: if these exhibits are admitted into evidence, the Court will not permit Baxter to put forth a "similar bad acts" argument based upon this evidence. Novatek's motion in limine is denied.

**[*22] E. Baxter May Proffer Evidence of Novatek's Alleged Fraudulent Omissions**

Novatek argues that Baxter may not offer evidence suggesting "fraudulent omissions" by Novatek because "under New York law, in order to sustain such claims, Baxter must establish facts demonstrating a special or confidential relationship with Novatek." (Novatek 7/17/ 98 Br. at 8.) Under New York law, however, "in business negotiations, an affirmative duty to disclose material information [also] may arise from the need to complete or clarify one party's partial or ambiguous

statement." Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 155 (2d Cir. 1995); see also, e.g., Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) ("New York recognizes a duty by a party to a business transaction to speak ... where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth.") (citing Junius Constr. Corp. v. Cohen, 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.)); Ray Larsen Assocs., Inc. v. Nikko America, Inc., 1996 U.S. Dist. LEXIS 11163, 89 Civ. **[*23]** 2809, 1996 WL 442799 at *4 (S.D.N.Y. Aug. 6, 1996). Baxter has alleged specific misrepresentations on the part of Novatek, which, if true, might trigger a duty to disclose omitted material information. Therefore, evidence of any such omissions may be offered. n8 Novatek's motion in limine is denied.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Novatek also argues that evidence of such omissions must be excluded because they were not alleged in the Amended Complaint. Since misrepresentations were specifically pled by Baxter, Novatek received adequate notice that any failure to disclose material information to correct these alleged misleading statements would also be at issue. See Point II.B & fn. 7 above, discussing notice pleading.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**F. Novatek's Motion in Limine to Exclude Evidence of Baxter's Lost Profits is Denied**

Novatek asks the Court to exclude evidence of Baxter's lost profits because, Novatek asserts, Paragraph 15(b) of the Agreement prohibits Baxter from recovering lost profits. (Novatek 7/6/ 98 Br. at 6-7.) Section 15 of the **[*24]** Agreement provides, in full, as follows:

15. LIMITED WARRANTY & LIMITATION OF LIABILITY.

a. With respect solely to the warranties provided by SUPPLIER [Novatek] to the DISTRIBUTOR [Baxter] herein, SUPPLIER warrants the Products supplied hereunder shall be free from material defects in workmanship and material when shipped and shall be in accordance with the specification and representations made herein. In the event that a defect is discovered and such defect is covered by the foregoing warranty, upon notice from the DISTRIBUTOR, SUPPLIER will, at its option, replace the defective Products or refund the purchase price of such Products to DISTRIBUTOR.

The foregoing warranty shall not apply if the Product in question is improperly stored or intentionally or negligently damaged by any person. Except as specified in the foregoing and in the Continuing Guaranty, SUPPLIER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE PRODUCTS.

b. DISTRIBUTOR'S sole and exclusive remedy for claims arising hereunder whether in contract, negligence or otherwise **[*25]** shall be for damages. EXCEPT TO THE EXTENT SPECIFIED HEREIN AND IN THE CONTINUING GUARANTY, SUPPLIER SHALL NOT BE LIABLE FOR LOSS OF PROFITS OR ANY OTHER INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES. SUPPLIER shall not under any circumstances be liable for, and DISTRIBUTOR assumes all risk resulting from, the transportation, unloading, handling or shipment of Products.

c. The foregoing warranty shall in no way affect any claims made by DISTRIBUTOR's customers with respect to the Products and Supplier will take full responsibility for and be liable for any and all such claims in accordance with the terms of the Continuing Guaranty.

(Molton 7/1/98 Aff. Ex. A: Agreement P 15.)

Paragraph 15(b) arguably applies only to claims regarding Novatek's breach of its warranty that the Bloodloc devices are not defective, and not to Baxter's claims based on conduct other than the provision of faulty merchandise by Novatek, such as Baxter's claim that, inter alia, Novatek repudiated the Agreement. Paragraph 15(b) is titled "LIMITED WARRANTY & LIMITATION OF LIABILITY." Paragraphs 15(a) and 15(c) specifically and exclusively discuss the scope of Novatek's faulty merchandise **[*26]** warranties to Baxter. This suggests that Paragraph 15 as a whole, including Paragraph 15(b), only relates to Novatek's faulty merchandise warranties to Baxter. Further, Paragraph 15(b), by its terms, limits the scope of its limitation on Novatek's liability to "claims arising hereunder." While the word "hereunder" is ambiguous, particularly in light of its use in Paragraph 15(a), it may refer to Paragraph 15, which would mean that this limitation only applies to claims based upon Novatek's faulty merchandise warranties to Baxter. Finally, the last sentence of Paragraph 15(b) states that

"SUPPLIER [Novatek] shall not under any circumstances be liable for, and DISTRIBUTOR [Baxter] assumes all risk resulting from, the transportation, unloading, handling or shipment of Products." This sentence clearly references Paragraph 15(a), which deals exclusively with defining Novatek's faulty merchandise warranties to Baxter, by reinforcing the limitation on the scope of Novatek's warranty to "defects in workmanship and material when shipped," a limitation established in Paragraph 15(a). Thus, the last sentence of Paragraph 15(b) refers to the faulty merchandise warranty, suggesting **[*27]** that the remainder of Paragraph 15(b), including the liability limitation, also refers to that warranty, as does the remainder of Paragraph 15. Since the liability limitation found in Paragraph 15(b) at least arguably applies only to Novatek's faulty merchandise warranties to Baxter, and not to Baxter's claims based on conduct other than the provision of faulty merchandise, the Court will not exclude evidence of Baxter's lost profits. Novatek's motion in limine is denied. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 In a related issue of contract construction, Novatek argues that Baxter should be precluded from arguing that a ten cent per Bloodloc device price increase clause in the Agreement if Baxter did not buy specified quantities of Bloodloc devices is the exclusive damage remedy. (Novatek 7/17/ 98 Br. at 11-12, relying on Molten 7/1/98 Aff. Ex. A: Agreement P 8(c).) The Agreement is unclear as to whether that is an exclusive remedy or merely an additional remedy, the parties' cross-motions for partial summary judgment were denied by Judge Duffy, and thus both sides may advance their interpretation of the contract at trial. Novatek's additional argument that Baxter waived the exclusive damage argument by not asserting it as an affirmative defense (Novatek 7/17/ 98 Br. at 11-12) is without merit because this is not an affirmative defense under Fed. R. Civ. P. 8(c).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*28]**

## III. BAXTER'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF NOVATEK'S LOST PROFITS BEYOND THE TERM OF THE AGREEMENT IS DENIED

### A. Article 2 of the New York UCC Does Not Limit Novatek's Remedies for Breach of the Minimum Conversion Requirement, As Opposed to the Minimum Purchase Requirement

Baxter argues that Section 2-708 of the New York Uniform Commercial Code ("UCC") n10 applies and limits the damages Novatek may recover to profits lost on the five million Bloodloc devices that were to be sold by Novatek to Baxter under the Agreement, and not post-contractual damages. (Baxter 7/2/98 UCC Br. at 6-7.) Article 2 is the "Sales Article" of the UCC and applies only to "transactions in goods." UCC §§ 2-101, 2-102. n11 UCC Section 2-701 of the UCC specifically provides that "remedies for breach of any obligation or promise collateral or ancillary to a contract for sale are not impaired by the provisions of" Article 2. UCC § 2-701. The New York Annotation explains that Section 2-701 "appears to limit the scope of the Sales Article to parts of a contract related to the sale of goods. . . ."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 [HN12]Section 2-708 provides:

(1) Subject to subsection (2) and to the provisions of this Article with respect to proof of market price (Section 2-723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2-710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

**[*29]**

n11 [HN13]Section 2-105 provides: "'Goods' mean all things (including specially manufactured goods) which are movable at the time of identification to the contract

for sale. . . ." The conversion requirement clearly does not fall within this definition of goods.

------------ End Footnotes- - - - - - - - - - - - -

While the Minimum Purchase Agreement was governed by the UCC as a transaction in goods, n12 the Minimum Conversion Requirement did not involve the sale of goods. Rather, the Minimum Conversion Requirement required Baxter to "convert" hospitals to Bloodloc users. The Minimum Conversion Requirement is therefore collateral to the sale of goods, and the remedies available to Novatek for breach of the Minimum Conversion Agreement are not limited by UCC Article 2. Thus, the UCC does not bar Novatek's claim for post-contractual damages based upon breach of the Minimum Conversion Agreement.

-------------- Footnotes - - - - - - - - - - - - - - -

n12 Novatek agrees that "Article 2 of the UCC applies to 'transactions in goods'. . . [and] therefore governs the damages recoverable for [Novatek's claim for] breach of the Minimum Purchase Requirement." (Novatek 7/21/ 98 Br. at 12.)

------------ End Footnotes- - - - - - - - - - - - -

[*30]

**B. New York Common Law Does Not Prevent Novatek From Seeking Post-Contractual Damages**

Baxter further claims that New York common law bars Novatek's claim for post-contractual damages. (Baxter 7/2/98 UCC Br. at 10-14.) The New York Court of Appeals has set forth clear requirements that must be met in order to claim post-contractual profits:

[HN14]
Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law. First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes. In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.

Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234 (1986) (citations omitted); accord, e.g., Trademark Research **[*31]** Corp. v. Maxwell Online, Inc., 995 F.2d 326, 332 (2d Cir. 1993); see also, e.g., RMLS Metals, Inc. v. International Bus. Machs. Corp., 874 F. Supp. 74, 75 (S.D.N.Y. 1995).

A new enterprise, such as Novatek here, is subject to an even stricter standard for lost profits damages:

If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty.

Kenford Co. v. County of Erie, 67 N.Y.2d at 261, 502 N.Y.S.2d at 132 (citations omitted); accord, e.g., Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d at 332; RMLS Metals, Inc. v. International Bus. Machs. Corp., 874 F. Supp. at 76.

Baxter contends that the Agreement's language demonstrates that post-contractual profits arising from breach of the Minimum Conversion Requirement were not within the contemplation of the parties and therefore not recoverable under New York law. (Baxter 7/2/98 UCC Br. at 11-13.) Baxter relies upon Paragraph 8 of the Agreement, which provides as follows:

8. Minimum **[*32]** Conversion Requirements

a. For purposes of this Agreement, "hospital" shall mean any hospital having at least 200 beds. For purposes of this Agreement, in order for a hospital to be deemed "converted," or for DISTRIBUTOR [Baxter] to be deemed to have "secured the conversion of" a hospital, that hospital's protocol must have been changed in such a way that each such hospital has, with respect to at least one year, ordered a minimum of 2,000 units of the Product per year.

b. DISTRIBUTOR shall secure the conversion of a minimum total of 1,000 hospitals over the Initial Term of this Agreement as follows: (i) By the end of the first year, DISTRIBUTOR shall have secured the conversion of a total minimum of 250 hospital; (ii) By the end of the second year, Distributor shall have secured the conversion of a total cumulative minimum of 500 hospitals; and (iii) By the end of the third year, DISTRIBUTOR shall have secured the conversion of a total cumulative minimum of 1,000 hospitals.

c. Notwithstanding any other provision of this Agreement to the contrary, if by the end of any year during the Initial Term, Distributor has not satisfied the

annual cumulative minimum conversion **[*33]** requirement for such year in accordance with the terms set forth in 8b. above, the then current purchase price of the Products shall automatically be increased by $ .10 per Product for the remainder of the Initial Term and each Renewal Term.

(Molton 7/1/98 Aff. Ex. A: Agreement P 8, emphasis added.)

Baxter argues that "although [Paragraph 8(b) of] the Agreement states that by the end of the three year term Baxter shall have secured the conversion of 1000 hospitals, the Agreement did not require that a hospital remain converted at the end of the three year term in order to count towards the conversion requirement." (Baxter 7/2/98 UCC Br. at 11, emphasis removed.) Thus, Baxter argues, the parties did not contemplate post-contractual lost profits because the Agreement did not require Baxter to create a network of hospitals that would purchase Bloodlocs beyond the length of the Agreement. (Id.) Further, Baxter notes that Paragraph 8(c) provides for a 10 cent price increase per Bloodloc if the Conversion Requirement is not met, and argues that this was meant as the sole remedy for such a breach. (Id. at 12.)

Finally, Baxter points to Paragraph 13, which provides **[*34]** that upon termination of the Agreement, "'DISTRIBUTOR [Baxter] shall pay SUPPLIER [Novatek] any unpaid amount due for Products ordered, shipped or sold to DISTRIBUTOR hereunder and, to the extent that DISTRIBUTOR has not satisfied the Minimum Purchase Requirement for the remainder of all Products that should have been purchased by DISTRIBUTOR through the effective date of termination based upon the Minimum Purchase Requirement. . . .'" (Baxter 7/2/98 UCC Br. at 12-13, quoting Agreement P 13(a)(i).) Since this paragraph provides that Baxter must pay for Bloodlocs that were required to be bought pursuant to the Minimum Purchase Requirement upon termination, without any mention of payment for post-contractual profits, Baxter argues that the parties did not contemplate payment for lost profits based upon the Minimum Conversion Requirement. (Baxter 7/2/98 UCC Br. at 13.)

These contractual clauses, however, are far from conclusive on the issue of the parties' intentions. While these contractual clauses constitute evidence that deserves consideration, the Court cannot determine the parties' intentions on the record as it now stands. Further development of the record is needed to determine **[*35]** whether the parties contemplated the recovery of post-contractual lost-profits. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 In this regard, it is noteworthy that most of the case law dealing with the recoverability of post-contractual profits is found in the context of bench trials, post-trial motions or appeals, where decisions may be based on a fully-developed record. See, e.g., Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1577-80 (2d Cir. 1994); Toltec Fabrics, Inc. v. August Inc., 29 F.3d 778, 781 (2d Cir. 1994); Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d at 332-34; Coastal Aviation, Inc. v. Commander Aircraft Co., 937 F. Supp. 1051, 1065-70 (S.D.N.Y. 1996), aff'd mem., 108 F.3d 1369 (2d Cir. 1997); Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 670-73 (S.D.N.Y. 1996), aff'd mem., 122 F.3d 1055 (2d Cir. 1997).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Baxter also argues that the testimony of Novatek's expert is speculative and, therefore, that Novatek cannot prove their post-contractual lost profits **[*36]** with sufficient certainty to satisfy New York's requirement for such damages. (Baxter Br. at 15-24.) Some of Baxter's criticisms of Novatek's expert's methodology seem extremely likely to be persuasive to the jurors. However, the criticisms go to the weight to be given to the expert's opinion, rather than admissibility.

As with many of Novatek's in limine arguments, Baxter's arguments on its motion in limine regarding Novatek's lost profits are largely re-hashes of arguments made in its earlier summary judgment motion and rejected by Judge Duffy because of fact disputes. (See Novatek 7/21/ 98 Br. at 7.) The argument is not appropriate for a motion in limine. Of course, this does not mean that Novatek necessarily will be able to recover future lost profits. As the Second Circuit has noted, New York's strict requirements for recovery of lost profits "have often resulted in the reversal of jury awards for loss of future profits." Toltec Fabrics, Inc. v. August, Inc., 29 F.3d 778, 781 (2d Cir. 1994). At this point in the case, however, the Court will not preclude Novatek from presenting this evidence to the jury. If the jury errs, the Court can always correct it on a post-trial **[*37]** motion for judgment as a matter of law. Baxter's motion is limine is denied.

**CONCLUSION**

Both Novatek's and Baxter's motions in limine are denied, except: (1) Baxter's "Arab boycott" motion, and (2) both Baxter's and Novatek's motion in limine to exclude financial information relevant solely to punitive damages. The Court also dismisses both Baxter's and Novatek's punitive damage claims.

SO ORDERED.

DATED: New York, New York

September 25, 1998

**Andrew J. Peck**

United States Magistrate Judge