SHAMROCK TECHNOLOGIES, INC., Plaintiff-Appellee, v. MEDICAL STERILIZATION, INC. and ROBERT LUNIEWSKI, Defendants-Appellants.

93-1101

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

1993 U.S. App. LEXIS 24557; 28 U.S.P.Q.2D (BNA) 1693

September 21, 1993, Decided

**NOTICE:**
**PUB-STATUS: [*1]** RULE 47.8. OPINIONS AND ORDERS DESIGNATED AS UNPUBLISHED SHALL NOT BE EMPLOYED AS PRECEDENT BY THIS COURT, AND MAY NOT BE CITED BY COUNSEL, EXCEPT IN SUPPORT OF A CLAIM OF RES JUDICATA, COLLATERAL ESTOPPEL, OR LAW OF THE CASE. ANY PERSON MAY REQUEST THAT AN UNPUBLISHED OPINION OR ORDER BE REPREPARED AND REISSUED FOR PUBLICATION, CITING REASONS THEREFOR. SUCH REQUEST WILL BE GRANTED OR DENIED BY THE PANEL THAT RENDERED THE DECISION.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 6 F.3d 788, 1993 U.S. App. LEXIS 38057.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of New York.

**DISPOSITION:** This court affirms.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, a competitor of plaintiff and a former employee, appealed the judgment of the United States District Court for the Eastern District of New York holding defendants liable for trade secret misappropriation and patent infringement.

**OVERVIEW:** Plaintiff, a corporation with a patented printing process, sued defendants for trade secret misappropriation and patent infringement; plaintiff alleged that defendant employee improperly disclosed the patented printing process to defendant competitor, who then knowingly and improperly used that process. A verdict was awarded to plaintiff, and defendants appealed. The federal appellate court affirmed, opining that (a) as to misappropriation claims, plaintiff established all elements required by applicable state law (i.e., existence of trade secret, communication to employee with duty of confidentiality, breach of that duty, receipt of information by party knowing of that duty, and third party's use); (b) damages for misappropriation could be measured as either lost income or unjust profits; and (c) damages for patent infringement could be measured using a "but for" analysis (i.e., but for the infringement, plaintiff would have received profits from specified sales).

**OUTCOME:** The judgment was affirmed..

**CORE TERMS:** patent, trade secret, misappropriation, customers, trade secrets, infringement, processed, patented process, processing, confidentiality, tray, infringing, uniformly, causation, duty, patent infringement, misappropriated, irradiation, preponderance, disclosure, correctly, irradiate, duplicate, patented, issuance, polymer, powder, chains, fine, plus interest

**LexisNexis(TM) Headnotes**

***Trade Secrets Law > Misappropriation Actions > General Overview***

***Civil Procedure > State & Federal Interrelationships > Application of State Law***

***Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets***

[HN1]Federal district courts apply the trade secret law of the appropriate state.

***Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality***

***Trade Secrets Law > Misappropriation Actions > Elements > Existence & Ownership***

***Trade Secrets Law > Ownership Rights > Employee Nondisclosure***

[HN2]To recover under New Jersey law for trade secret misappropriation, the plaintiff must show by a preponderance of the evidence (1) the existence of a trade secret, (2) communicated to an employee having a duty of confidentiality, (3) disclosed by the employee in breach of that duty of confidentiality, (4) to a third party who knows of that breach of duty, (5) who uses the information to the detriment of the plaintiff. In addition, the plaintiff must show that he took

reasonable precautionary measures to maintain the secrecy of the trade secret.

***Labor & Employment Law > Trade Secrets & Unfair Competition > Trade Secrets***

***Torts > Damages > Damages Generally***

***Torts > Damages > Lost Income***

[HN3]The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses or by the profits unjustly received by the defendant.

***Patent Law > Infringement Actions > Burdens of Proof***

***Patent Law > Remedies > Damages > Patentholder Losses***

***Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review***

[HN4]A federal appellate court reviews patent damage awards - determinations of fact - under a clearly erroneous standard. To obtain lost profits, a patentee must show a causal link between any lost profits and the infringement. To show this link, the patentee must prove by a preponderance of evidence that "but for" the infringement, it would have made the infringing sales.

***Torts > Causation > Cause in Fact***

***Torts > Damages > Damages Generally***

***Patent Law > Remedies > Damages > General Overview***

[HN5]In a patent case in which damages are in issue, the "but for" analysis satisfies the causation requirement. A federal district court need not apply a more stringent test to show causation.

***Torts > Damages > Lost Income***

***Torts > Damages > Damages Generally***

***Patent Law > Remedies > Damages > General Overview***

[HN6]In a patent case, a federal district court may assess damages based on sales by a non-party if, but for the infringement, the patentee would have made those sales.

**JUDGES:** Before ARCHER, RADER, and SCHALL, Circuit Judges.

**OPINIONBY:** RADER

**OPINION:** DECISION

The United States District Court for the Eastern District of New York awarded Shamrock Technologies, Inc. (Shamrock) damages for trade secret misappropriation and patent infringement by Medical Sterilization, Inc. and Mr. Luniewski (MSI). This court affirms.

BACKGROUND

This appeal arises from a bifurcated patent infringement action. This court previously affirmed partial summary judgment against MSI on the issues of patent validity and infringement. Shamrock Technologies, Inc. v. Medical Sterilization, Inc., 903 F.2d 789, 14 USPQ2d 1728 (Fed. Cir. 1990) **[*2]** (Shamrock I). Because Shamrock I discusses many facts of this case, this opinion may abbreviate its presentation.

For use in printing, polytetrafluoroethylene (PTFE) requires processing into a fine powder. Shamrock's patents recite a method for uniformly irradiating PTFE to reduce its molecular weight and facilitate this processing. Shamrock's United States Patent Nos. 4,748,005 ( '005) and 4,777,192 ( '192) cover this process. These patents issued on May 31, 1988 and October 11, 1988, respectively. Shamrock also owns United Kingdom Patent No. 2,119,385 ('385) published on December 18, 1985. The '005 patent duplicates the '385 patent. The patented process irradiates PTFE to break down long polymer chains. Breaking polymer chains facilitates grinding of PTFE into a fine powder.

Uniform irradiation is a key to processing PTFE. The prior art process carried the PTFE in trays on a conveyor belt past electron beam accelerators. This process did not irradiate the PTFE uniformly. Instead, top layers of PTFE received higher doses of radiation than bottom layers. The patented process stirs and agitates the PTFE during irradiation to ensure uniform exposure.

In 1975, Shamrock entered **[*3]** the irradiated PTFE market. Shamrock's PTFE processing business earned between $ 20 million and $ 22 million a year by the late 1980's. Due to excessive demand for its product, Shamrock even hired others, like Radiation Dynamics, Inc. (RDI), to supply some processed PTFE. RDI used the tray method of processing. In 1986, MSI supplied processed PTFE to Shamrock using the tray method.

During his employment at Shamrock from 1980 to 1983, Mr. Luniewski co-invented the patented process. When he became a Shamrock employee, Mr. Luniewski signed a written employment agreement to maintain the confidentiality of trade secret information. Mr. Luniewski assigned his patent rights to Shamrock. In 1983, Mr. Luniewski left Shamrock to work for MSI. Upon leaving Shamrock, Mr. Luniewski received

$ 16,500.00 for signing another nondisclosure agreement.

Notwithstanding the nondisclosure agreement, Mr. Luniewski disclosed Shamrock's trade secret to MSI. This disclosure occurred before the '192 patent issued. MSI took advantage of the disclosure and sold over 360,000 lbs. of PTFE processed according to the patent. As mentioned above, this court has affirmed in Shamrock I the district court's holding **[*4]** that MSI infringed Shamrock's patents.

In the case at bar, the district court held that MSI misappropriated Shamrock's trade secret. The trial court awarded Shamrock $ 620,434.40 in lost profits and profits unjustly received by MSI due to the trade secret violation. MSI's profits sprang from sales to both Shamrock's customers and customers who had not dealt with Shamrock. In addition, the trial court awarded Shamrock $ 2,057,294.30 for patent infringement. This award encompasses lost profits from MSI's sales to Shamrock's customers and a reasonable royalty for MSI's sales to others. In summary, the total judgment against MSI is $ 2,677,728.70, plus interest on $ 2,057,294.30 at 1.5% above the prime rate from August 21, 1989.

DISCUSSION

Trade Secret Misappropriation

[HN1]Federal district courts apply the trade secret law of the appropriate state. See Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 670, 7 USPQ2d 1097, 1105 (Fed. Cir. 1988); Syntex Ophthalmics, Inc. v. Novicky, 745 F.2d 1423, 1433 n.21, 223 USPQ 695, 703 n.21 (Fed. Cir. 1984). In the case at bar, this court applies the trade **[*5]** secret law of the State of New Jersey.

[HN2]To recover under New Jersey law for trade secret misappropriation, the plaintiff must show by a preponderance of the evidence: (1) the existence of a trade secret, (2) communicated to an employee having a duty of confidentiality, (3) disclosed by the employee in breach of that duty of confidentiality, (4) to a third party who knows of that breach of duty, (5) who uses the information to the detriment of the plaintiff. Adolph Gottscho, Inc. v. American Marking Corp., 18 N.J. 467, 474, 114 A.2d 438, 442, 105 USPQ 398, 402 (1955); Stone v. Goss, 65 N.J. Eq. 756, 55 A. 736 (1903). See also Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429-30, 215 USPQ 1081, 1085 (Fed. Cir. 1982) (stating the elements of a misappropriation of trade secrets claim); Ferroline Corp. v. General Aniline & Film Corp., 207 F.2d 912, 921, 99 USPQ 240, 246 (7th Cir. 1953). In addition, the plaintiff must show that he took "reasonable precautionary measures to maintain the secrecy" **[*6]** of the trade secret. Sun Dial Corp. v. Rideout, 16 N.J. 252, 260, 108 A.2d 442, 447 (1954).

The record shows that Shamrock established each of the elements for trade secret misappropriation by a preponderance of the evidence. First, the misappropriation occurred after issuance of the '005 patent and its duplicate the United Kingdom '385 patent. MSI's misappropriation used the "water injection" improvements of the '192 patent. At the time of the misappropriation, the '192 patent had not issued. The district court specifically found:

> We further find that since the British patent did not disclose the improved procedure under the '192 patent, the use of that procedure violated Luniewski's obligation not to reveal it.

Shamrock Technologies, Inc. v. Medical Sterilization, Inc., 808 F. Supp. 932, 938, 25 USPQ2d 1692, 1697 (E.D.N.Y. 1992). The art in the '192 patent was a trade secret before its issuance. Shamrock had an enforceable trade secret in the '192 process.

Second, Mr. Luniewski worked at Shamrock during the invention of the '192 patent. Twice Mr. Luniewski agreed to hold confidential **[*7]** Shamrock's trade secrets. Shamrock paid Mr. Luniewski $ 16,500.00 to ensure this confidentiality. Therefore, the record shows that Shamrock had a confidential relationship with Mr. Luniewski.

Third, the trial court determined that Mr. Luniewski breached his fiduciary duty to maintain the confidentiality of Shamrock's trade secrets. The district court found:

> MSI acquired the information for installation and use of the equipment [for the patented process] from Luniewski, who had acquired it during his employment at Shamrock . . . .

Shamrock, 808 F. Supp. at 936. Substantial evidence supports this finding.

Fourth, MSI knew that Mr. Luniewski obtained his information in breach of his duty to Shamrock. MSI contends that it considered the British patent and the '005 patent to have extinguished Shamrock's trade secrets. As noted, however, MSI used as well the trade secrets which later emerged in the '192 patent. Luniewski and MSI could not misappropriate Shamrock's trade secret merely because some of the trade secret was in the public domain.

Fifth, MSI's misappropriation damaged Shamrock's business. The district court found:

The [*8] parties agree that during the period from February 1, 1986 to May 31, 1988, MSI sold PTFE products, using Shamrock's process . . . .

Shamrock, 808 F. Supp. at 940. Even some of Shamrock's customers purchased processed PTFE from MSI. Finally, MSI did not contest Shamrock's precautions to protect its trade secrets.

Consequently, the district court's finding that Mr. Luniewski and MSI misappropriated Shamrock's trade secrets is not clearly erroneous. Therefore this court affirms the district court's holding that Mr. Luniewski and MSI committed trade secret misappropriation.

In computing damages, the district court correctly applied A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87, 19 USPQ2d 1519, 1523 (2d Cir. 1991):

[HN3]The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses or by the profits unjustly received by the defendant.

Id. (citations omitted). The district court awarded damages based on profits lost by Shamrock on MSI's sales to Shamrock's former customers ($ 422,159.40) and profits unfairly made [*9] by MSI in sales to others ($ 198,275). The trial court relied extensively upon Mr. Luniewski's testimony about MSI's profits. That evidence supports the district court's damages award for trade secret misappropriation.

Patent Damages

[HN4]This court reviews patent damage awards -- determinations of fact -- under a clearly erroneous standard. Smithkline Diagnostics, Inc. v. Helena Laboratories, Corp., 926 F.2d 1161, 1164-65 n.2, 17 USPQ2d 1922, 1925 n.2 (Fed. Cir. 1991). To obtain lost profits, a patentee must show a causal link between any lost profits and the infringement. Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065, 219 USPQ 670, 675 (Fed. Cir. 1983). To show this link, Shamrock must prove by a preponderance of evidence that "but for" the infringement, it would have made the infringing sales. King Instrument Corp. v. Otari Corp., 767 F.2d 853, 863, 226 USPQ 402, 409 (Fed. Cir. 1985).

[HN5]This "but for" analysis satisfies the causation requirement. BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc., F.2d , 27 USPQ2d 1671 (Fed. Cir. 1993). [*10] The district court need not apply the Panduit test to show causation. Id. The Panduit test is an acceptable, though not an exclusive, method of showing causation. Carella v. Starlight Archery & Pro Line Co., 804 F.2d 135, 141, 231 USPQ 644, 648 (Fed. Cir. 1986).

MSI supplied to many of Shamrock's customers PTFE processed by the infringing method. The record shows that these customers (Ampac, Dyall, and Caroll) demanded PTFE of the quality only attainable under the patented process. The patented method produces a higher quality product than the prior art "tray method." In Shamrock I, this court concluded:

Hence the district court did not err in determining that "uniformly irradiated" refers to "more consistent exposure" of PTFE to radiation as contrasted with the "uneven irradiation" provided by the prior art.

Shamrock I, 903 F.2d at 792. PTFE processed according to the patented process is not fungible with that produced using the "tray method."

The demand for PTFE processed by the patented method, according to testimony from Mr. Neuberg, Shamrock's president, among others, [*11] was high. Nonetheless the record shows that Shamrock had the capability to exploit this demand. Shamrock's policy of subcontracting some PTFE processing to other firms did not indicate that Shamrock lacked capacity to meet the demand for quality PTFE. Rather Shamrock used these subcontracts for sound business reasons -- providing an emergency back-up supply system, easing the burden and reducing maintenance time on Shamrock's electron beams, and expanding business relations. *

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

* MSI makes much of the district court's statement that "Shamrock was unable to satisfy the demand for its product." When this statement is taken in context, however, it is clear that the district court was referring to the time periods before MSI's acts of infringement and misappropriation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This record evidence provides credible support for the district court's finding that Shamrock would have made MSI's sales in the absence of infringement. "But for" MSI's infringement, its customers would have bought quality PTFE from Shamrock. "But for" [*12] MSI's infringement, Shamrock would have made these sales.

[HN6]Finally, the district court committed no error in assessing damages based on sales by Daipolymer, a non-party. Diapolymer sold to former Shamrock

customers PTFE processed by MSI. Diapolymer served as an intermediary between MSI and Shamrock's customers, but its products were MSI products made by the infringing process. Therefore, Diapolymer displaced Shamrock's sales with sales of an infringing product. But for infringement, Shamrock would have made those sales. The district court correctly included Diapolymer's sales in the lost profits calculation.

CONCLUSION

For the reasons stated above, this court detects no error in the trial court's conclusion that Mr. Luniewski and MSI misappropriated Shamrock's trade secrets. This court also upholds the trial court's award to Shamrock of $ 2,677,728.70, plus interest on $ 2,057,294.30 at a rate of 1.5% above the prime rate from August 21, 1989. In sum, this court affirms the district court's decision.

COSTS

Each party to bear its own costs.