UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Valspar Corporation<br>Valspar Sourcing, Inc., and<br>Valspar Industries GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>Spraylat Corporation and Spraylat GmbH,<br><br>Defendants. | Civil Action No. 01-CV-1605 JEL/JGL<br><br>**DECLARATION OF DR. CHRISTOF SIEFARTH IN SUPPORT OF SPRAYLAT CORPORATION AND SPRAYLAT GMBH'S MOTION** |

DR. CHRISTOF SIEFARTH declares as follows:

1. I am a citizen of Germany, born in Cologne, Germany, on December 13, 1959. My office is located at Sachsenring 81, 50677 Cologne, Germany. This affidavit is based upon my personal knowledge of the laws of Germany and the United States and is submitted at the request of Defendants Spraylat Corporation and Spraylat GmbH.

## BACKGROUND AND TRAINING

2. My native language is German. I have also studied English throughout high school and I have been constantly exposed to English language matters since I started law school, particularly during two one-year stays in the United States in 1985/86 and 1991.

3. I am a German attorney ("Rechtsanwalt"), admitted to the Bar in Cologne, Germany, since 1989, and I am an attorney-at-law admitted to the New York State Bar

since 1992. In 1990 I received a doctor of law degree from the University of Cologne, and I have passed the two German state examinations for lawyers in 1984 and 1989. I obtained a Master of Laws degree from the University of Georgia School of Law in 1986. In 1991, I worked for one year as a foreign associate with the law firm of Kilpatrick & Cody (now: Kilpatrick Stockton) in Atlanta, Georgia. I have been associated with the law firm GÖRG Partnerschaft von Rechtsanwälten (formerly: Schlütter, Lüer & Görg, and Lüer & Görg) since 1989. In 1996, I was admitted to partnership with GÖRG, a German business law firm with now 41 partners, maintaining offices in Cologne, Berlin, Frankfurt and Essen, Germany. I am specialized in rendering legal advice to foreign, particularly US, clients regarding their business activities in Germany.

4. As a lawyer educated and admitted to practice in both the United States and Germany, I have been asked by Defendants to identify and describe conflicts between the laws of Minnesota and Germany with respect to the business torts alleged in Plaintiffs' Second Amended Complaint dated April 11, 2003 (the "Complaint") and with respect to the interpretation of putative confidentiality provisions of the kind contained in a contract executed by Plaintiffs' former employee, Guenther Reipa, on or around January 10, 1981 (the "Reipa Contract").

5. In providing this declaration, I have reviewed relevant aspects of German and Minnesota law (Minnesota law as explained to me by Defendant's counsel), as well as the Complaint, the Court's March 31, 2004 Order Granting Partial Summary Judgment to Spraylat, the Declaration of Plaintiffs' German law expert, Dr. Andrea Lensing-Kramer, dated August 15, 2003, and the Reipa Contract.

## INTRODUCTION

6. I agree with Dr. Lensing-Kramer that the laws of Germany provide civil causes of action for the Plaintiffs' remaining claims in this case that are similar to those offered by the laws of Minnesota, specifically:

(i) misappropriation of trade secrets;

(ii) tortious interference with contracts;

(iii) tortious interference with a company's business relationships with its customers by improper means.[1]

7. However, German law differs from Minnesota law in two important respects that are relevant to this case. *First*, as a matter of public policy German law does not permit punitive damage awards in civil actions between private parties. *Second*, under German law a broad confidentiality clause of the kind contained in the Reipa Contract is not enforceable absent the provision of a post-termination consideration. These two aspects of German law are discussed in greater detail below.

## GERMAN LAW DOES NOT PERMIT PUNITIVE OR ENHANCED DAMAGES

8. German law of damages follows the principle of "restoration in kind" (*"Naturalrestitution"*), i.e. the person obliged to compensate for a damage caused by him or her shall "restore the situation which would have existed if the circumstance rendering him or her liable to provide for a compensation would not have occurred", sec. 249 cl. 1 German Civil Code. Pursuant to such principle, the claimant may generally claim compensation for damages, including lost profits, but no punitive damages.

---

[1] Generally, German substantive law recognizes various claims in a situation as the one alleged in the Second Amended Complaint such as the concepts of "disclosure of trade or industrial secrets", "business spying", and "illegal use of trade or industrial secrets" pursuant to secs. 17 and 19 German Unfair Competition Act, as well as "Violation of Public Policy in Trade" (sec. 1 German Competition Act) and claims under tort law pursuant to secs. 823 et seq. German Civil Code.

9. Under the concept of German law, all kinds of damages with any punitive character or exceeding the damage actually sustained are strictly prohibited as contrary to German public policy. Even judgments of US courts awarding punitive damages may generally not be enforced in Germany for public policy reasons: In its judgment of June 4, 1992, the German Federal Supreme Court has held that: "A US-American judgment for punitive damages of a not insignificant amount, which was granted in addition to the reimbursement of material and immaterial damages as a lump sum, may generally not be declared enforceable in Germany", German Federal Supreme Court BGH NJW 1992, 3096, a copy of such judgment as well as a translation of the relevant portion is attached as Exhibit 1.

10. It follows from the principle of restoration in kind that under the German system of awarding damages in civil matters a compensation may only be obtained for actual losses which may be calculated commercially. The only exception under German law is compensation for pain and suffering ("*Schmerzensgeld*"). However, punitive damages may not be compared with *Schmerzensgeld*, since punitive damages primarily serve the function of punishment and criminal prevention whereas *Schmerzensgeld* aims to compensate actual non-pecuniary damages sustained. Therefore, punitive damages not compensating actual damages generally contradict the German approach of the punishment monopoly granted to the state as opposed to parties in civil actions, and are contrary to German substantive public policy.

**RELEVANT PORTIONS OF THE REIPA AGREEMENT**
**<u>ARE NOT ENFORCEABLE UNDER GERMAN LAW</u>**

11. The Reipa Contract contains (i) a purported non-compete clause, and (ii) a broad confidentiality clause. Neither provision is enforceable under German law.

12. German law provides that an agreement between an enterprise and an employee in which the employee undertakes not to work in his profession after termination of the employment contract or agrees to a restriction of his professional activities is only binding if the enterprise undertakes to pay a reasonable consideration for the term of such non-compete agreement, sec. 74 of the German Commercial Code, a copy and translation of which is attached as Exhibit 2. The Reipa contract purports to provide no such compensation, and hence the non-compete clause contained therein is unenforceable under German law.[2]

13. A related compensation requirement applies under German law to confidentiality agreements. In Germany, the liberty of an employee to use his or her professional experience and knowledge gained through his or her employment may only be restricted to a limited degree by a confidentiality agreement.

14. Although a confidentiality agreement generally does not need to provide reasonable consideration to be valid, it will not be binding absent such consideration if it is written so broadly as to constitute a *de facto* non-compete agreement. Were suit brought in Germany by the former employer against Reipa for breach of the Reipa contract, the case would be heard by the German labor courts. The highest such court, the German Federal Labor Court ("*Bundesarbeitsgericht*"), has held that a confidentiality agreement may not prohibit the use of professional experiences and that such an agreement must refer to specifically named trade secrets. Upon the termination of an employment relationship, the former employee may, in the absence of a valid non-compete agreement, compete with his former employer, and may use all of the experience and knowledge

---

[2] I have been advised that Plaintiffs concede that the confidentiality provision in the Reipa Contract is unenforceable, and discuss it here only to provide background concerning Germany's treatment of contracts, including confidentiality agreements, that purport to broadly restrict an employee's post-separation professional activities.

gained during his employment relationship. A confidentiality agreement is only valid if one or more specific trade secrets are specifically mentioned, but not by referring without distinction to all business transactions or general categories of information which may contain trade secrets. If such requirements are not met, the clause is deemed to serve the purpose of a non-compete clause and therefore needs a reasonable consideration to be valid, German Federal Labor Court NZA 1999, 200, a copy and a translation of such judgment is attached as Exhibit 3.

15. After having examined the Reipa Contract I am of the opinion that the aforementioned requirements are not met. The Reipa Contract contains a clause which reads:

> "2.) The employee was thoroughly informed and is completely aware that if he shall learn of or come across confidential knowledge and business secrets that will particularly concern production methods, chemical formulas, chemical compounds, client information, calculation and pricelists, etc. of the COMPANY during his employment relationship with the COMPANY and he is prepared and committed.
>
> a) Not to divulge the secrets outlined more specifically in the aforesaid paragraph to other entities, businesses, relevant institutes, etc. to his personal advantage or to the advantage of others during the duration of his employment relationship with the COMPANY as well as after termination of the same, regardless of the basis for the labor contract termination.
>
> (b) Not to perform any services in any function for other entities or companies active in the same or similar branch of business as the COMPANY and for those that could find application for the chemical processes and formulas as well as any other business secrets during the duration of his employment relationship with the COMPANY and for a period of two years thereafter."

16. Sub-clause (b), the non-compete, purports to prohibit Reipa from working for a competitor following his separation from employment, and is unenforceable as a matter of German law, absent the granting of a compensation, as discussed above.

17. Sub-clause (a), the putative confidentiality agreement, is also unenforceable. I note that this clause clearly comprises business secrets together with other information and experiences without further differentiation. In the case cited in paragraph 14, above, the German Federal Labor Court refused to enforce a similarly overbroad confidentiality agreement. There, as here, the agreement failed to provide post-termination consideration to the former employee, purported to require the employee to keep confidential all of the business transactions, and defined the relevant confidential information to include all information regarding technical production processes, recipes, tool designs, customer prices and products related to the employer's business. The German Federal Labor Court held that such a broad confidentiality agreement contradicts the employee's right to use all of his experience and knowledge gained during his employment relationship later in his or her career, has the effect of a non-compete agreement, and is unenforceable unless it provides for reasonable post-termination consideration.

18. The fact that Reipa's confidentiality agreement is unenforceable does not mean Plaintiffs would necessarily be without remedy against Reipa in Germany if they could demonstrate he misused their confidential information. However, the invalidity of the confidentiality agreement does mean – under the laws of both Germany and Minnesota – that Defendants could not be liable for tortious interference with contract in connection with that agreement.

Dated: March 4, 2005.

[signature]

Dr. Christof Siefarth