+ Verweise

**Vollstreckbarerklärung eines US-amerikanischen Schadensersatzurteils auf „punitive damages" und deutscher ordre public†**

*ZPO §§ 265 II , 328 , 722 ; BGB §§ 249 , 253 , 847 ; EGBGB Art. 5 I , 38*

**1. § 265 II ZPO gilt auch im Rechtsstreit auf Vollstreckbarerklärung eines ausländischen Urteils nach § 722 ZPO (Abgrenzung zu BGHZ 92, 347 = NJW 1985, 809 = LM § 727 ZPO Nr. 6).**

**2. Der Umstand, daß ein rechtskräftiges ausländisches Urteil nach dem Recht des erlassenden Staates ausnahmsweise vernichtbar ist, schließt die Vollstreckbarerklärung gem. § 722 ZPO so lange nicht aus, bis das Urteil im Erststaat aufgehoben ist.**

**3. Die Tatsache allein, daß einem US-amerikanischen Urteil eine pre-trial discovery vorausgegangen ist, hindert dessen Anerkennung in Deutschland nicht.**

**4. Kann ein ausländisches Urteil wegen einzelner Ansprüche im Inland nicht für vollstreckbar erklärt werden, so hindert das die Vollstreckbarerklärung im übrigen nicht.**

**5. Bei Anwendung des § 328 I Nr. 4 ZPO ist auch auf Ausmaß und Bedeutung der Inlandsbeziehung des Sachverhalts abzustellen, der dem ausländischen Urteil zugrunde liegt.**

**6. Gewährt das ausländische Recht einen Anspruch auf Ersatz von Heilungskosten ohne Rücksicht darauf, ob der Verletzte gegenwärtig die bestimmte Absicht hat, sich der Heilbehandlung zu unterziehen, so begründet das kein Anerkennungshindernis i. S. von § 328 I Nr. 4 ZPO.**

**7. Spricht ein zuständiges ausländisches Gericht dem ausländischen Prozeßbevollmächtigten des obsiegenden ausländischen Klägers aufgrund des dort geltenden Rechts ein Erfolgshonorar von 40 % aller eingehenden Schadensersatzleistungen zu, so begründet das für sich allein in Deutschland kein Anerkennungshindernis.**

**8. Ein US-amerikanisches Urteil auf Strafschadensersatz (punitive damages) von nicht unerheblicher Höhe, der neben der Zuerkennung von Ersatz für materielle und immaterielle Schäden pauschal zugesprochen wird, kann insoweit in Deutschland regelmäßig nicht für vollstreckbar erklärt werden.**

**9. Zur Anerkennung eines US-amerikanischen Urteils auf Zahlung eines für inländische Verhältnisse außerordentlich hohen Schmerzensgeldbetrages (damages for pain and suffering).**

**10. In Deutschland kann ein ausländisches Urteil unabhängig davon für vollstreckbar erklärt werden, ob es Art. 5 I 2 oder Art. 38 EGBGB entspricht.**

*BGH, Urteil vom 04.06.1992 - IX ZR 149/91 (Düsseldorf)*

**Zum Sachverhalt:**

Der Kl. begehrt, ein US-amerikanisches Schadensersatzurteil in der Bundesrepublik Deutschland für voll-

streckbar zu erklären. Er ist Staatsangehöriger der Vereinigten Staaten von Amerika. Der Bekl. hat seit der Geburt die deutsche und erwarb dazu die US-amerikanische Staatsbürgerschaft. Beide Parteien lebten in Stockton/Kalifornien. Am 30. 5. 1984 verließ der Bekl., der von einem US-amerikanischen Gericht wegen sexuellen Mißbrauchs von Jugendlichen zu einer langjährigen Freiheitsstrafe verurteilt worden war, die USA. Er lebt nunmehr in Deutschland, wo er über Grundvermögen verfügt. Durch Urteil des Superior Court of the State of California in and for the County of San Joaquin (im folgenden: Superior Court) vom 24. 4. 1985 wurde dem - 1968 geborenen - Kl. unter dem Decknamen „John Doe" gegen den Bekl. ein Schadensersatzanspruch in Höhe von 750260 US-Dollar zuerkannt. Das Urteil enthält keine ins einzelne gehende Darstellung des ihm zugrundeliegenden Sachverhalts und der Entscheidungsgründe. Jedoch erschließt sich aus dem Protokoll der Gerichtsverhandlung vor dem Superior Court, daß der Verurteilung sexuelle Verfehlungen des Bekl. gegenüber dem zur Tatzeit noch nicht 14 Jahre alten Kl. in Stockton zugrunde liegen (gemeinsames Masturbieren in fünf Fällen) und daß sich die gesamte, dem Kl. zugesprochene Urteilssumme zusammensetzt aus 260 US-Dollar als Ersatz für Heilaufwendungen (past medical damages), 100000 US-Dollar für künftige medizinische Versorgung (future medical), 50000 US-Dollar für eine voraussichtlich erforderliche Unterbringung des Kl. (cost of placement), 200000 US-Dollar für erlittene Ängste, Schmerzen, Leiden und sonstige Schäden dieser Art (anxiety, pain, suffering and general damages of that nature) und 400000 US-Dollar Strafschadensersatz (exemplary and punitive damages). Ferner ordnete der Superior Court in seinem Urteil an, daß dem amerikanischen Rechtsanwalt des Kl. 40 % aller Gelder zustehen, die dieser im Namen des Kl. von dem Bekl. erhalte.

Das LG hat das Urteil des Superior Court zuzüglich Zinsen für vollstreckbar in Deutschland erklärt. Auf die Berufung des Bekl. hat das OLG die Vollstreckbarerklärung in Höhe von 275325 US-Dollar aufrechterhalten und die Klage im übrigen abgewiesen. Mit seiner hiergegen gerichteten Revision erstrebt der Bekl. die vollständige Abweisung der Klage, während der Kl. mit seiner Revision die Wiederherstellung des landgerichtlichen Urteils ohne Zinsen begehrt. Beide Rechtsmittel hatten zum Teil Erfolg.

**Aus den Gründen:**

A. Zur Revision des Bekl.

I. Nach den unangefochtenen Feststellungen des BerGer. hat der Kl. im Verlauf des vorliegenden Rechtsstreits die ihm durch das Urteil des Superior Court zuerkannte Forderung an seinen amerikanischen Rechtsanwalt als Treuhänder vorübergehend abgetreten, um sich vor Beeinflussungsversuchen durch den Bekl. zu schützen. Der Abtretungsempfänger ist mit der Einziehung durch den Kl. einverstanden.

Das BerGer. ist der Ansicht, die Abtretung habe gem. § 265 II ZPO die Prozeßführungsbefugnis des Kl. nicht beeinflußt. Auch einer Umstellung des Klageantrags dahin, daß das Urteil des Superior Court nunmehr für den neuen Forderungsinhaber vollstreckbar sein solle, bedürfe es nicht. Der Kl. habe nach wie vor ein schutzwertes Interesse daran, die Klage in unveränderter Form durchzusetzen.

Diese Ausführungen halten den Angriffen der Revision stand.

1. Zutreffend hat das BerGer. die Prozeßführungsbefugnis des Kl. aus § 265 II ZPO hergeleitet und insoweit deutsches Verfahrensrecht angewandt (vgl. Stein-Jonas-Leipold, ZPO, 20. Aufl., vor § 50 Rdnr. 22; Wieczorek, ZPO, 2. Aufl., § 722 Anm. C IIb 2; Geimer, Internationales ZivilprozeßR, Rdnrn. 2041 f.). Der Gegenansicht, die zur Prozeßführungsbefugnis allgemein auf die für den materiellrechtlichen Streitstoff maßgebliche Rechtsordnung abstellen will (Grunsky, ZZP 89, 241 (257 f.)), kann jedenfalls insoweit nicht gefolgt werden, als sich die Prozeßführungsbefugnis - wie nach § 265 II ZPO - unmittelbar aus dem im deutschen Gerichtsstand anwendbaren Prozeßrecht ergibt. Wegen des Zwecks dieser Vorschrift, das Prozeßrechtsverständnis vor materiellrechtlichen Änderungen abzuschirmen, gilt sie für jedes von ihr erfaßte Verfahren (Riezler, Internationales ZivilprozeßR, S. 427 f.; Schack, Internationales ZivilrechtsverfahrensR, Rdnr. 552; Nagel, Internationales ZivilprozeßR, 3. Aufl., Rdnr. 281).

Entgegen der Ansicht der Revision steht der Rechtsgrundsatz, daß § 265 ZPO für die Übertragung eines titulierten Anspruchs im inländischen Vollstreckungsverfahren nicht gilt (BGHZ 92, 347 (349 f.) = NJW 1985, 809 = LM § 727 ZPO Nr. 6 m. w. Nachw.), der Prozeßführungsbefugnis des Kl. nicht entgegen. Das Urteil des Superior Court kann und soll hier nicht Grundlage einer Zwangsvollstreckung im Inland sein. Maßgeblicher Titel dafür ist allein die Entscheidung über die Vollstreckbarerklärung (vgl. BGH, NJW 1986, 1440 = LM Deutsch-schweiz. VollstrAbk Nr. 1 = JZ 1987, 203; Zöller-Geimer, ZPO, 17. Aufl., § 722 Rdnr. 56, jeweils m. w. Nachw.; Stein-Jonas-

Münzberg, ZPO, § 722 Rdnr. 23; Roth, IPRax 1989, 14 (15)). Mit der Abtretung der im Urteil des Superior Court zuerkannten Forderung hat der Kl. noch keinen nach deutschem Recht titulierten Anspruch übertragen. Ein solcher kann erst im Rechtsstreit nach § 722 ZPO entstehen. Dabei handelt es sich um einen ordentlichen Zivilprozeß und nicht um ein Verfahren der Zwangsvollstreckung (Geimer-Schütze, Internationale Urteilsanerkennung, Bd. I, 2. Halbbd., § 237 I ; Zöller-Geimer, ZPO, § 722 Rdnr. 16 und 44 m. w. Nachw.). Der Umstand, daß sein Streitgegenstand unmittelbar das - nicht abgetretene - prozessuale Begehren auf Vollstreckbarerklärung ist, schadet entgegen der Meinung der Revision nicht, weil der Rechtsstreit der Sache nach die Durchsetzung der - abgetretenen - ausländischen Ansprüche in Deutschland vorbereiten soll. Infolgedessen ist, wie auch sonst im Erkenntnisverfahren, § 265 ZPO anwendbar (Stein-Jonas-Schumann, ZPO, § 265 Rdnr. 15).

2. Es ist entgegen der Ansicht der Revision auch nicht zu beanstanden, daß das BerGer. eine Umstellung des Klageantrags nicht für notwendig erachtet hat. Zwar führt eine nach Rechtshängigkeit vorgenommene Forderungsabtretung ungeachtet der nach § 265 II ZPO fortbestehenden Prozeßführungsbefugnis regelmäßig dazu, daß nur auf Leistung an den neuen Gläubiger geklagt werden kann (BGHZ 26, 31 (37) = NJW 1958, 98 = LM § 13 GmbHG Nr. 13 L; BGH, NJW-RR 1986, 1182). Der alte Gläubiger ist dann nicht mehr in der Lage, Leistung an sich selbst zu fordern, weil die Abtretung sachlich-rechtliche Wirksamkeit entfaltet. Einer Umstellung des Klageantrags bedarf es gleichwohl nicht, wenn der alte Gläubiger trotz der Abtretung die Ermächtigung zur Einziehung der Forderung behalten hat (RGZ 166, 218 (237)). Ob dies der Fall ist, bestimmt sich nach den zwischen ihm und dem neuen Gläubiger getroffenen Vereinbarungen. Dabei handelt es sich um eine materiell-rechtliche Frage, die im Streitfall gem. Art. 33 I , 27 EGBGB nach ausländischem Recht zu beurteilen ist (vgl. Schack, Internationales ZivilverfahrensR Rdnr. 558), hier also nach kalifornischem Recht. Die Revision legt nicht in der Form des § 554 III Nr. 3b ZPO dar, daß das BerGer. mit seiner Annahme, der Kl. sei nach wie vor zur Einziehung der Forderung aus dem Urteil des Superior Court in eigenem Namen und an sich selbst berechtigt, seine Verpflichtung zur Ermittlung entgegenstehenden amerikanischen Rechts (§ 293 ZPO) unberücksichtigt gelassen habe.

II. 1. Zu Unrecht rügt die Revision das Fehlen tatrichterlicher Feststellungen zu der Frage, ob das Urteil des Superior Court gem. § 723 II 1 ZPO nach dem für dieses Gericht geltenden Recht die formelle Rechtskraft erlangt hat. (Wird ausgeführt.)

III. Zu Recht ist das BerGer. zu dem Ergebnis gelangt, die Anerkennung der Vollstreckbarkeit des Urteils des Superior Court sei auch im übrigen nicht aus verfahrensrechtlichen Gründen ausgeschlossen. (Es folgen Feststellungen zum Zustellungsverfahren und zum Verfahrensfortgang des Prozesses vor dem Superior Court.)

1. Damit ist dem Bekl. die verfahrenseinleitende Klageschrift ("complaint") rechtzeitig zugestellt worden, und er hat sich darauf - vor dem international zuständigen Gericht (§ 328 I Nr. 1, §§ 12f ., 32 ZPO) - auch eingelassen (§ 328 I Nr. 2 ZPO). Daß die Klage unter einem Decknamen für den Kl. erhoben war, machte sie nicht unwirksam. Denn sie enthielt jedenfalls so viele Einzelangaben, daß der Bekl. sich dagegen in vollem Umfange verteidigen konnte. Aus ihr ergab sich, daß Streitgegenstand ein Anspruch auf Zahlung von Ersatz für materielle und immaterielle Schäden sowie von Strafschadensersatz wegen sexueller Handlungen sein sollte, die der Bekl. in seinem Hause in der Zeit von Februar bis August 1982 am minderjährigen Kl. angeblich vorgenommen hatte.

2. Der Bekl. hat das Gutachten eines amerikanischen Rechtsanwalts vorgelegt, das zu dem Ergebnis gelangt, das Urteil des Superior Court verstoße gegen die amerikanische Bundesverfassung und die Verfassung des Staates von Kalifornien, weil es unter Überschreitung der Rechtsprechungsbefugnis ("jurisdiction") des Gerichts ergangen sei. Dies folge daraus, daß weder der Bekl. noch Rechtsanwalt J zu der mündlichen Verhandlung am 23. April 1985 geladen worden sei. Dem Bekl. könne die an Rechtsanwalt G gerichtete Ladung nicht zugerechnet werden, weil dieser nicht wirksam zu seinem Prozeßbevollmächtigten bestellt worden sei. Das Urteil des Superior Court sei deshalb nichtig und nicht vollstreckbar ("void and unenforceable").

Das BerGer. hat hierzu ausgeführt, die Frage der Nichtigkeit des kalifornischen Urteils sei im Rahmen des Verfahrens auf Verleihung

der Vollstreckbarkeit von den deutschen Gerichten nur beschränkt zu überprüfen. Im Grundsatz seien ausländische Urteile zu respektieren. Dazu gehöre in erster Linie, den ausländischen Hoheitsakt als nach ausländischem Recht existent zu betrachten, sofern nicht seine Nichtigkeit auf der Hand liege. Von einer ganz offenkundigen und unzweifelhaften Nichtigkeit könne hier jedoch keine Rede sein. Es sei nicht Aufgabe des deutschen Richters, in Zweifelsfällen über die Vereinbarkeit US-amerikanischer Urteile mit der US-amerikanischen Bundesverfassung und der Verfassung der jeweiligen Einzelstaaten zu entscheiden.

Diese Ausführungen halten im Ergebnis einer rechtlichen Überprüfung stand.

a) Wirkungen eines ausländischen Urteils können allerdings nur dann auf das Inland erstreckt werden, wenn sie nach der Rechtsordnung des Staates, in dem das Urteil ergangen ist, überhaupt eintreten. Urteile, die nach der Rechtsordnung des Entscheidungsstaats schlechthin nichtig oder unwirksam (ungültig) sind, sind deshalb nicht gemäß §§ 722 , 723 ZPO für vollstreckbar zu erklären (Martiny, Hdb. des internationalen ZivilverfahrensR, Bd. III/1 Rdnr. 485; Stein-Jonas-Schumann, ZPO, § 328 Rdnr. 105; Geimer-Schütze, Internationale Urteilsanerkennung, Bd. I/1 § 139 I 1; Gottwald, in: MünchKomm-ZPO, § 328 Rdnr. 51; Nussbaum, 41 Columbia Law Review, 221 (231)). Ist das Urteil nach dem Recht des Erststaates hingegen lediglich anfechtbar, so schließt dies seine Anerkennung nicht aus, solange es nicht aufgehoben ist (Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnr. 486; Geimer, Internationales ZivilprozeßR, Rdnr. 2236; Geimer-Schütze, Internationale Urteilsanerkennung Bd. I/2 § 195 I ; Zöller-Geimer, ZPO, § 328 Rdnr. 91 m. w. Nachw.). Das gilt - vorbehaltlich des § 328 I Nr. 4 ZPO - auch dann, wenn die Entscheidung, der im Inland die Vollstreckbarkeit verliehen werden soll, im Erlaßstaat in einem neuen Verfahren, wie etwa auf eine Verfassungsbeschwerde oder Wiederaufnahme des Verfahrens, beseitigt werden könnte (vgl. Martiny, Hdb. des Internationalen ZivilverfahrensR, Rdnr. 489 m. w. Nachw.; Pohle, JW 1936, 1873). Gegen derartige fehlerhafte Urteile muß grundsätzlich Abhilfe vor den Gerichten des Erlaßstaates aufgrund der dafür eröffneten Rechtsbehelfe gesucht werden. Die im Revisionsrechtszug vom Bekl. erhobene neue Behauptung allein, er habe inzwischen das Urteil des Superior Court vor einem kalifornischen Gericht wegen Nichtigkeit angefochten, ist unerheblich. Der Bekl. legt nicht dar, daß das angegangene ausländische Gericht das Ersturteil aufgehoben habe.

Für die Abgrenzung zwischen der Nichtigkeit einer ausländischen Entscheidung und deren bloßer Aufhebbarkeit ist zu beachten, daß Fälle, in denen ein Urteil ohne Rechtswirkungen bleibt, auch in ausländischen Rechtsordnungen die Ausnahme bilden und in der Regel die Fehlerhaftigkeit einer Entscheidung lediglich dazu führt, daß diese mit Rechtsmitteln angefochten werden kann (vgl. Geimer-Schütze, Internationale Urteilsanerkennung, Bd. I/1 § 139 I 3). Nach amerikanischem Recht gilt ebenfalls eine Vermutung für die Wirksamkeit des Urteils (Engelmann=Pilger, Die Grenzen der Rechtskraft des Zivilurteils im Recht der Vereinigten Staaten, S. 39 m. w. Nachw.). Verfahrensfehler können grundsätzlich nur durch Rechtsmittel gegen das Urteil selbst ("direct attack") geltend gemacht werden (vgl. Teply-Whitten, Civil Procedure, S. 59, 665, 669 f.).

b) Nach diesen Grundsätzen ist es entgegen der Ansicht der Revision nicht zu beanstanden, daß das BerGer. zu dem Ergebnis gelangt ist, das Vorbringen des Bekl. zur Frage der Nichtigkeit des Urteils des Superior Court stehe einer Vollstreckbarerklärung nicht entgegen. (Wird ausgeführt.)

c) Der Senat ist gem. §§ 559 II 2, 565 IV ZPO befugt, selbst die Schlüssigkeit der auf ausländisches Recht gestützten Behauptung nachzuprüfen, wenn - wie im Streitfall - Feststellungen des BerGer. hierzu fehlen. Denn die vom Bekl. nach § 554 III Nr. 3 lit. b ZPO erhobene Rüge einer Verletzung des § 293 ZPO durch das BerGer. kann nur berechtigt sein, wenn die Behauptung in der Berufungsinstanz objektiv geeignet war, eine Pflicht des Tatrichters zur Ermittlung des ausländischen Rechts auszulösen. Dies hängt auch davon ab, ob die Parteien zu den Erkenntnisquellen der ausländischen Rechtsordnung unschwer Zugang haben; dann müssen sie das auslösende Recht regelmäßig konkret darstellen (BGH, NJW 1992, 2026 = LM H. 10/1992 § 106 KO Nr. 9). Legt eine Partei das Privatgutachten eines ausländischen Sachverständigen vor und ergibt es nicht, daß der Ausgang des inländischen Prozesses von der mitgeteilten ausländischen Rechtslage abhängt, so hat das deutsche Gericht insoweit regelmäßig nicht von sich aus weiter nachzuforschen.

Danach stellt es hier im Ergebnis keinen Verstoß des BerGer. gegen § 293 BerGerr, wenn es zur Frage der Nichtigkeit des Urteils des Superior Court nach amerikanischem Recht keine weiteren Ermittlungen vorgenommen hat. (Wird ausgeführt.)

3. Das BerGer. hat die Umstände, die dazu führten, daß der Bekl. im Termin vom 23. 4. 1985 vor dem Superior Court nicht vertreten war, desweiteren gem. § 723 II , 328 I Nr. 4 ZPO auf ihre Vereinbarkeit

mit dem verfahrensrechtlichen ordre public untersucht und ist dabei zu dem Ergebnis gelangt, ein unerträglicher Verstoß gegen wesentliche Grundsätze des deutschen Rechts liege nicht vor. Entgegen der Auffassung der Revision hält auch das einer rechtlichen Überprüfung stand.

a) Zutreffend hat das BerGer. insoweit von einer Überprüfung der Frage abgesehen, ob der Bekl. aufgrund der am 16. 1. 1985 an Rechtsanwalt G gerichteten Ladung nach den für den Zivilprozeß in Kalifornien geltenden Regeln ordnungsgemäß über den Termin vom 23. 4. 1985 benachrichtigt war. Der Superior Court hat dies ausdrücklich bejaht. Eine Nachprüfung der sachlichen Richtigkeit der Feststellung ist dem deutschen Gericht gem. § 723 I ZPO (Verbot der revision au fond) im Verfahren über die Vollstreckbarkeit des ausländischen Urteils verwehrt (BGHZ 53, 357 (363) = NJW 1970, 1004 = LM § 328 ZPO Nr. 25 L).

b) Ein die Anerkennung ausschließender Verstoß gegen den ordre public i. S. des § 328 I Nr. 4 ZPO n. F. läge vor, wenn die Anerkennung des Urteils des Superior Court zu einem Ergebnis führte, das mit den Grundrechten oder sonst offensichtlich mit wesentlichen Grundsätzen des deutschen Rechts unvereinbar wäre. Hiervon ist bei Verfahrensverstößen nur auszugehen, wenn die Entscheidung auf einem Verfahren beruht, das von den Grundprinzipien des deutschen Verfahrensrechts in einem Maße abweicht, daß es nach der deutschen Rechtsordnung nicht als in einer geordneten, rechtsstaatlichen Weise ergangen angesehen werden kann (BGHZ 48, 327 (331) = NJW 1968, 354 = LM § 328 ZPO Nr. 18 L; BGHZ 53, 357 (359 f.) = NJW 1970, 1004 = LM § 328 ZPO Nr. 25 L; BGHZ 73, 378 (386) = NJW 1979, 1105 = LM § 328 ZPO Nr. 29 L; BGHZ 98, 70 (73) = NJW 1986, 3027 = LM Übk. ü. d. Anerkennung u. Vollstreckung ausl. Schiedssprüche Nr. 3; BGH, NJW 1978, 1114 = LM Deutsch-britisches VollstrAbk. Nr. 3 = WM 1977, 1230; BGH, NJW 1990, 2201; BGH, NJW 1984, 2765 = LM § 328 ZPO Nr. 32 = WM 1984, 748). Das trifft hier nicht zu. Insbesondere verletzt das Verfahren des Superior Court nicht die Prinzipien, die dem Verfahrensgrundrecht auf rechtliches Gehör (Art. 103 I GG) zugrunde liegen. Dessen Schutz erstreckt sich nicht auf eine bestimmte, verfahrensrechtliche Ausgestaltung (BGH, NJW 1980, 529 (531) = LM Art. 7 ff. EGBGB (Haager Übereink. über den Schutz v. Minderjährigen) Nr. 2), etwa eine Terminsladung. Bei der Anwendung jener Verfassungsbestimmung zur Konkretisierung des gem. § 328 I Nr. 4 ZPO maßgeblichen verfahrensrechtlichen ordre public ist vielmehr auf die Grundsätze abzustellen, die Art. 103 I GG schützen will. Dies ist einmal das Prinzip der Rechtsstaatlichkeit, das grundsätzlich verbietet, eine Entscheidung zu treffen, bevor der Betroffene Gelegenheit zur Äußerung hatte. Ferner verlangt das Gebot der Achtung der Menschenwürde, daß ein Beteiligter in der Lage sein muß, auf den Verfahrensablauf aktiv Einfluß zu nehmen (BVerfGE 63, 332 (337) = NJW 1983, 1726 m. w. Nachw.; BGHZ 48, 327 (333) = NJW 1968, 354 = LM § 328 ZPO Nr. 18 L bestätigt durch Beschl. des BVerfG v. 28. 3. 1968 - 2 BvR 740/67; BGH, NJW 1978, 1114 = LM Deutsch-britisches VollstrAbk. Nr. 3; Schmidt=Aßmann, in: Maunz-Dürig, GG, Art. 103 I Rdnrn. 2 ff.). Diesen Erfordernissen hat das Verfahren vor dem Superior Court Rechnung getragen.

Dem Bekl. war die in Kalifornien gegen ihn anhängige Zivilklage des Kl. bekannt, und er hatte bereits geraume Zeit vor seiner Flucht aus den USA Rechtsanwalt J zu seinem Prozeßbevollmächtigten bestellt, der ihn zunächst im amerikanischen Rechtsstreit auch vertrat. Damit war der Bekl. jedenfalls in der Lage, sich gegenüber der Klage vor dem kalifornischen Gericht zu verteidigen. Die nach seinem Verlassen der USA eingetretene weitere Entwicklung seiner Vertretung im amerikanischen Prozeß vermag eine Verletzung der Grundsätze



rechtlichen Gehörs nicht zu begründen. Nach den insoweit unangefochtenen Feststellungen des BerGer. erfolgte die als „Assoziierung" vorgenommene Einschaltung von Rechtsanwalt G durch förmliche Erklärung des Rechtsanwalts J an den Superior Court. Der Sache nach beabsichtigte Rechtsanwalt J damit, einen Anwaltswechsel vorzunehmen. In der Folgezeit trat allein Rechtsanwalt G vor dem Superior Court auf und wurde zu dem Termin vom 23. 4. 1985 geladen. Erst danach kam es zu seiner Entlassung als Rechtsanwalt des Bekl.

Zu Recht führt das BerGer. aus, es sei schon deutschen Rechtsvorstellungen nicht fremd, eine Partei unter diesen Umständen als ordnungsgemäß geladen anzusehen. Seinen Ausdruck findet das in der Vorschrift des § 176 ZPO, derzufolge Zustellungen im anhängigen Rechtsstreit an den bestellten Prozeßbevollmächtigten erfolgen müssen. Die Zustellung an einen von mehreren Prozeßbevollmächtigten genügt (Zöller-Stephan, ZPO, § 176 Rdnr. 13). Dabei kommt es entgegen der Ansicht der Revision nicht darauf an, ob der Rechtsanwalt tatsächlich Prozeßvollmacht hatte. Entscheidend ist im Hinblick auf den erforderlichen Vertrauensschutz für die Gegenseite und auf §

579 I Nr. 4 ZPO allein, ob er sich ausdrücklich oder durch schlüssiges Verhalten zum Prozeßbevollmächtigten bestellt hat (BGH, VersR 1979, 255 m. w. Nachw.; BGH, VersR 1986, 993 (994); BGH, NJW 1987, 440 = LM § 85 ZPO Nr. 11; v. Feldmann, in: MünchKomm-ZPO, § 176 Rdnrn. 4, 8). Eine spätere Beendigung des Mandats berührt die Wirksamkeit der Zustellung nicht. Das Interesse der Partei, für die ein nicht bevollmächtigter Rechtsanwalt aufgetreten ist, wird durch die je nach Lage des Falles bestehenden Möglichkeiten, das Urteil anzufechten oder sich an dem vollmachtlosen Vertreter schadlos zu halten, hinreichend gewahrt (BGH, VersR 1979, 255).

Darüber hinaus gewährleistet Art. 103 Abs. 1 GG nur die - von Staats wegen ungehinderte - Gelegenheit, sich am Gerichtsverfahren zu beteiligen. Der Berechtigte kann sie durch schuldhaftes Verhalten verwirken oder von der Ausübung des Rechts absehen. Es stand allgemein im Machtbereich des Bekl., sich in dem ihm bekannten Verfahren in Kalifornien weiter zu verteidigen. Für ihre eigene ordnungsmäßige Vertretung in einem ihr bekannten Gerichtsverfahren hat in erster Linie jede Partei selbst nach besten Kräften zu sorgen (BGH, NJW 1978, 1114 = LM Deutsch-britisches VollstrAbk. Nr. 3; Zöller-Geimer, ZPO, § 328 Rdnrn. 156 f.). Durch Flucht konnte sich der Bekl. dieser Obliegenheit nicht wirksam entziehen. Er hat auch nicht dargetan, daß er die spätere Zurückhaltung des Rechtsanwalts J in dem Prozeß sowie das Auftreten des Rechtsanwalts G füt ihn nicht hätte verhindern können. Dann erscheint aus rechtsstaatlicher Sicht das Ergebnis nicht unerträglich, daß der Superior Court später allein Rechtsanwalt G als berechtigten Vertreter des Bekl. behandelt hat. Gegen das verfassungsrechtliche Gebot einer fairen Verfahrensgestaltung hat das Gericht hierdurch nicht in erheblicher Weise verstoßen ...

4. Die Ausführungen, mit denen das BerGer. einen Verstoß gegen den prozessualen ordre public angesichts der übrigen Umstände des Verfahrens vor dem Superior Court verneint hat, sind ebenfalls frei von Rechtsfehlern.

a) Insbesondere geht das BerGer. zutreffend davon aus, allein die Tatsache, daß dem Urteil des Superior Court eine Ladung des Bekl. zur „pre-trial discovery" vorausgegangen sei, stehe einer Vollstreckbarerklärung nicht entgegen. Die Durchführung eines solchen Beweis- und Beweisermittlungs-Verfahrens zwischen Klageerhebung und mündlicher Verhandlung ("trial") unter weitgehender Parteiherrschaft in den USA begründet für sich noch keinen Verstoß gegen den ordre public i. S. des § 328 I Nr. 4 ZPO (ebenso Martiny, Hdb. des Internationalen VerfahrensR, Rdnr. 1109; Schack, Internationales ZivilverfahrensR, Rdnr. 865; Stürner, ZVglRWiss 81, 159 (200); Stiefel-Stürner, VersR 1987, 829 (830 f.); Heidenberger, RiW 1990, 804 (807); Zekoll, US-Amerikanisches ProdukthaftpflichtR vor deutschen Gerichten S. 137 ff., 148 f.; ders., RiW 1990, 302 (305); v. Westphalen, PHI 1988, 18 (20); Veltins, DB 1987, 2396 (2398); Gottwald, in: MünchKomm-ZPO, § 328 Rdnr. 91; Gottwald, ZZP 103, 257 (283); Hoechst, Die US-amerikanische Produzentenhaftung, S. 121; wohl auch Schütze, in: Festschr. f. Stiefel, S. 697, 703 ff.; a. A. Schütze, WM 1986, 633 (636); wohl auch ders., in: Festschr. f. Nagel, S. 392, 401; vgl. ferner LG Berlin, RiW 1989, 988 (990); Greger, ZRP 1988, 164 (166)). Die bloße Möglichkeit, daß hierbei unter anderem eine nach deutschem Prozeßrecht unzulässige Ausforschung erreicht wird, erfüllt die Voraussetzungen des § 328 I Nr. 4 ZPO nicht. Insoweit gilt ebenfalls das Gebot (oben 3 b und BGHZ 48, 327 (333) = NJW 1968, 354 = LM § 328 ZPO Nr. 18 L; BGH, NJW 1978, 1114 = LM Deutsch-britisches VollstrAbk. Nr. 3; Gottwald, in: MünchKomm-ZPO, § 328 Rdnrn. 85 f.; Zöller-Geimer, ZPO, § 328 Rdnr. 155), über die - sogar zwingenden - Einzelregelungen des deutschen positiven Rechts hinaus auf die Grundwerte abzustellen, die hierdurch geschützt werden sollen. Dabei sind nicht nur die deutschen Prozeßrechtsgrundsätze zu beachten (a. M. Schütze, Deutsch-amerikanische Urteilsanerkennung, S. 169), sondern ist die Gesamtrechtsordnung zu berücksichtigen, einschließlich deutscher materiellrechtlicher Auskunftspflichten, die mit vergleichbarer Wirkung an die Stelle ausländischer Verfahrensregeln treten können (vgl. Schlosser, IPRax 1987, 153 (154); Paulus, ZZP 104, 397 (402 ff.); Schack, Internationales ZivilverfahrensR, Rdnr. 740). Entscheidend ist sodann, ob das konkrete Ergebnis der Anwendung des ausländischen Rechts einschließlich damit möglicherweise verbundener völkerrechtswidriger Eingriffe in die Hoheitsrechte des Anerkennungsstaates (Schack, Internationales ZivilverfahrensR, Rdnr. 865; Stiefel-Stürner, VersR 1987, 829) mit den so ermittelten wesentlichen Grundsätzen des deutschen Rechts und dem Wert der gerichtlichen Wahrheitsfindung an sich offensichtlich unvereinbar ist.

Dafür ist hier nichts dargetan. Im Gegenteil erstreckt sich nach den unangefochtenen Feststellungen des BerGer. die vom Superior Court an das Ausbleiben des Bekl. im „pre-trial discovery"-Verfahren geknüpfte Säumnisfolge nur auf die Tatsachen zum Anspruchsgrund, die schon durch das amerikanische Strafverfahren gegen den Bekl. aufgedeckt waren und die er bis heute nicht bestreitet. Deshalb ist es aus Rechtsgründen nicht zu beanstanden, daß das BerGer. angenommen hat, das Urteil des Superior Court beruhe im Ergebnis nicht auf dem „pre-trial discovery"-Verfahren.

b) Entgegen einer teilweise vertretenen Ansicht (Schütze, WM 1979, 1174 (1176)) bestehen auch keine allgemeinen Bedenken gegen die Anerkennung US-amerikanischer Zivilurteile deswegen, weil diese grundsätzlich keine Kostenerstattung zugunsten der obsiegenden Partei vorsehen (Jestaedt, RiW 1986, 95). Für einen ausländischen Bekl. ist es sogar unter Berücksichtigung der ihn in jedem Falle treffenden beträchtlichen Kostenlast nicht unzumutbar, sich auf ein solches Verfahren einzulassen.

Aus deutscher Sicht folgt die Verteilung der Kostenlast für streitige Verfahren je nach dem Verfahrensausgang aus dem Veranlassungsprinzip (BGHZ 60, 337 (343) = NJW 1973, 1118; Rosenberg-Schwab, ZivilprozeßR, 14. Aufl., § 87 V 5 (S. 500); Becker=Eberhard, Grundlagen der Kostenerstattung bei der Verfolgung zivilrechtlicher Ansprüche, S. 25 ff.; Hommelsheim, Kostentragung und -ausgleichung im amerikanischen Zivilprozeß, Diss. Bonn 1990, S. 65 f.). Es erscheint als ein Gebot der Billigkeit, nicht stets den jeweiligen Antragsteller als Veranlasser anzusehen, sondern denjenigen, der durch unberechtigtes Verhalten Anlaß zum Einschreiten der Gerichte geboten hat. Davon gibt es - vor allem aus sozialen Gründen - Ausnahmen (§ 12a I 1 ArbGG, § 193 I SGG). Im übrigen entspricht es vor allem der Zweckmäßigkeit, die Berechtigung der vorprozessualen Standpunkte der Parteien im wesentlichen schematisch am Prozeßausgang zu messen. In Einzelfällen, etwa nach § 91a ZPO, kann das Ergebnis der prozessualen Kostenentscheidung, wenn es dem materiellen Recht widerspricht, durch eine hierauf zu stützende Klage berichtigt werden.

Demgegenüber wird der Ausschluß der Kostenerstattung gemäß der „American rule of costs" vor allem mit der Notwendigkeit begründet, den Zugang zu den Gerichten durch ein verringertes Kostenrisiko zu erleichtern (The Amercian Law Institute, Enterprise Responsibility for Personal Injury Vol. II, S. 274 f.; Hommelsheim, Kostentragung und -ausgleichung im amerikanischen Zivilprozeß, S. 81 f., 155 f.). Hierdurch wird teilweise zugleich die weitgehend fehlende Prozeßkostenhilfe ersetzt (Hommelsheim, Kostentragung und -ausgleichung im amerikanischen Zivilprozeß, S. 94 f.; Großfeld, RabelsZ 1975, 5 (25)). Zudem wird der Prozeßausgang als ein nicht hinreichend zuverlässiger Maßstab für die Berechtigung der vorprozessualen Standpunkte der Parteien angesehen (The American Law Institute, Enterprise Responsability for Personal Injury, S. 274; Fleming, The American Tort Process, S. 193, jeweils m. w. Nachw.; Hommelsheim, Kostentragung und -ausgleichung im amerikanischen Zivilprozeß, S. 67 ff.).

Danach bestimmen vor allem wertende und rechtspolitische Gesichtspunkte die unterschiedlichen Kostenregelungen. Aus deutscher Sicht verletzt der regelmäßige Ausschluß der Kostener-



stattung im US-amerikanischen Zivilprozeß weder Grundrechte der Parteien noch grundlegende Gebote der Rechtsstaatlichkeit. Er ist hinzunehmen (ebenso Gottwald, in: MünchKomm-ZPO § 328 Rdnr. 21 a. E.; Zekoll, 37 AmJCompL, 301 (322 f.); vgl. auch Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnr. 1111). Fällen bewußten Mißbrauchs (dazu Stiefel-Stürner, VersR 1987, 829 (831)) ist mit den dafür allgemein vorgesehenen Mitteln zu begegnen, soweit der Titel, der im Inland für vollstreckbar erklärt werden soll, darauf beruht. Zudem beschwert gerade das Ergebnis dieser Anwendung der „American rule of costs" im vorliegenden Falle nicht den Bekl.

5. Von der Verbürgung der Gegenseitigkeit (§ 328 I Nr. 5 ZPO) im Verhältnis zu Kalifornien nach geltendem Recht gehen die Parteien zutreffend selbst aus (vgl. dazu Schütze, Deutsch-amerikanische Urteilsanerkennung, S. 43 f; ders. JR 1986, 177 (235); Geimer-Schütze, Internationale Urteilsanerkennung, Bd. I 2 § 246; S. 1917 f.; Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnr. 1534; Hoechst, Die US-amerikanische Produzentenhaftung, S. 123; Brenscheidt, RiW/AWD 1976, 554 (556, 558) jeweils m. w. Nachw.).

IV. Soweit das BerGer. die Höhe des dem Kl. im Urteil des Superior Court zuerkannten Ersatzes für selbst erlittene materielle und immaterielle Schäden gem. §§ 723 II 2, 328 I Nr. 4 ZPO an den Erfordernissen des materiellen ordre public gemessen hat, lassen seine Ausführungen Rechtsfehler zum Nachteil des Bekl. nicht erkennen.

1. Als Haftungsgrundlage nimmt der Superior Court einen Fall von „battery" an, also eine nicht - rechtswirksam - erlaubte absichtliche körperliche Berührung (zum Begriff vgl. Prosser, Handbook of

the Law of Torts, 2nd ed. S. 30 ff.; Kionka, Torts in a Nutshell, S. 152 f.). Dem entspräche nach deutschem Recht eine Verletzung des Körpers und/oder des Persönlichkeitsrechts (§ 823 I BGB).

2. Anhaltspunkte dafür, daß die nach amerikanischem Recht erfolgte Verurteilung des Bekl. zur Zahlung tatsächlich angefallener Heilaufwendungen in Höhe von 260 Dollar gegen den ordre public verstoßen könnte, werden von der Revision nicht aufgezeigt und sind auch sonst nicht ersichtlich.

3. Das BerGer. hat ferner insoweit eine Verletzung des materiellen ordre public verneint, als der Superior Court dem Kl. für eine zu erwartende psychologische Behandlung 100000 Dollar und für aus diesem Anlaß zu erwartende Unterbringungskosten 50000 Dollar unabhängig davon zugesprochen hat, ob er sich tatsächlich für die Durchführung einer Heilbehandlung entscheidet. Es hat festgestellt, daß der Superior Court nach Anhörung eines Sachverständigen eine solche Behandlung sowie die berechneten Kosten für objektiv nötig hielt, und als entscheidend angesehen, daß auch der deutschen Rechtsordnung in Ausnahmefällen die Ersatzfähigkeit „fiktiver" Reparaturkosten nicht fremd sei.

Dieses Ergebnis ist aus Rechtsgründen nicht zu beanstanden. Der Revision ist zwar zuzugeben, daß im deutschen Schadensersatzrecht dem Geschädigten bei Personenschäden - anders als bei Sachschäden (BGHZ 66, 239 (241 ff.) = NJW 1976, 1396 = LM § 249 BGB Nr. 16) - keine Dispositionsbefugnis darüber eingeräumt ist, ob er den zur Herstellung erforderlichen Geldbetrag tatsächlich zur Schadensbeseitigung verwenden will, und er deshalb keine „fiktiven" Behandlungskosten ersetzt verlangen kann (BGHZ 97, 14 (18 ff.) = NJW 1986, 1538 = LM § 249 BGB Nr. 25). Allein dies hindert jedoch die Anerkennung des Urteils des Superior Court nicht.

a) Die insoweit nach deutschem Recht maßgeblichen §§ 249 ff. BGB gelten hier weder über Art. 5 noch über Art. 38 EGBGB.

aa) Gem. Art. 5 I 2 EGBGB geht zwar bei Doppelstaatern die deutsche Staatsangehörigkeit auch dann vor, wenn die sonstigen Anknüpfungstatsachen auf Auslandsrecht verweisen. Diese Vorschrift regelt jedoch allein das für den deutschen Richter maßgebliche materielle IPR, für das sie eine klare und einfache Anknüpfungsnorm schaffen soll. Hingegen kann nach der amtl. Begründung der Bundesregierung (BR-Dr 222/83 = BT-Dr 10/504, jeweils S. 40 f.) die mehrfache Staatsangehörigkeit „im internationalen Verfahrensrecht ... zu anderen, teilweise erheblich abweichenden Folgen führen". Im Rahmen der §§ 328 , 722f . ZPO gilt deshalb Art. 5 I 2 EGBGB nicht (ebenso Palandt-Heldrich, BGB, 51. Aufl., Art. EGBGB Rdnr. 5; Basedow, NJW 1986, 2971 (2974); vgl. auch Sonnenberger, in: MünchKomm, 2. Aufl., Art. 5 EGBGB Rdnr. 12).

bb) Art. 38 EGBGB, demzufolge gegen einen Deutschen aus einer im Ausland begangenen unerlaubten Handlung keine weitergehenden Ansprüche geltend gemacht werden können als nach den deutschen Gesetzen, schließt die Vollstreckbarerklärung ebenfalls nicht aus. Für den Geltungsbereich des Art. 27 Nr. 1 EuGVÜ hat der BGH (BGHZ 88, 17 (24) = NJW 1983, 2139 = LM § 249 BGB Nr. 69 mit zust. Anm. Kropholler, JZ 1983, 905 (906)) bereits entschieden, Art. 12 EGBGB a. F. - dem die Neuregelung des Art. 38n. F. entspricht - könne nicht so verstanden werden, daß jede ausländische Verurteilung eines deutschen Schädigers, die dem ebenfalls deutschen Geschädigten weitergehende Ansprüche zuspricht als nach den deutschen Gesetzen begründet wären, gegen den deutschen ordre public verstoße und deshalb nicht anerkannt werden dürfe. Dem folgt der erkennende Senat auch für die Vollstreckbarerklärung ausländischer Urteile gem. §§ 722 , 723 ZPO. Sachliche Unterschiede bestehen insoweit nicht. Außerhalb des Geltungsbereichs des Art. 5 EuGVÜ steht dem Geschädigten ebenfalls eine Klage im ausländischen deliktischen Gerichtsstand frei (§ 328 I Nr. 1 ZPO; dazu oben III 1). Nicht nur gem. Art. 29 EuGVÜ, sondern allgemein nach § 723 I ZPO ist für die Vollstreckbarerklärung ausländischer Urteile festgelegt, daß sie nicht auf ihre Gesetzmäßigkeit zu überprüfen sind.

Gegen eine zwingende und uneingeschränkte Anwendung des Art. 38 EGBGB im Rahmen des § 328 I Nr. 4 ZPO spricht, daß die letztgenannte Vorschrift in der Neufassung des Gesetzes zur Neuregelung des IPR vom 25. 7. 1986 (BGBl I, 1142, 1151) eine eigenständige, abschließende Sonderregelung darüber enthält, was zur Versagung der Anerkennung aus Gründen der öffentlichen Ordnung führt. Zweck der Neufassung war es, die Vorschrift an Art. 27 Nr. 1 EuGVÜ anzugleichen sowie sie in Einklang mit der neuen kollisionsrechtlichen ordre public-Klausel in Art. 6 EGBGB zu bringen (amtl. Begründung, S. 87 ff.). Die Lösung der Urteilsanerkennung von der materiellen Kollisionsregel wird durch die gleichzeitige Abänderung des § 328 I Nr. 3 ZPO a. F. bestätigt, der die Beachtung bestimmter familienrechtlicher Normen des deutschen IPR zur Anerkennungsvoraussetzung erhoben hatte. Sie wurde gestrichen, „weil sie eine Abweichung von der grundsätzlich ausgeschlossenen sachlichen Nachprüfung der fremden Entscheidung bedeutet und

das Kollisionsrecht bei der Anerkennung fremder Entscheidungen zu sehr in den Vordergrund" gestellt habe (Amtl. Begründung, S. 88). Aus gleichartigen Gründen ist es regelmäßig hinzunehmen, wenn der - international zuständige - ausländische Richter aufgrund des für ihn allgemein geltenden Kollisions- und sonstigen materiellen Rechts entscheidet, ohne eine mögliche Besserstellung deutscher Schädiger durch das deutsche Kollisionsrecht zu beachten (ebenso Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnrn. 1014 a. E., 1045 f., ders., 35 AmJCompL, 721 (746); Palandt-Heldrich, BGB, Art. 38 BGBGB Rdnr. 28 a. E.; Soergel-Lüderitz, BGB, 11. Aufl., Art. 12 Rdnr. 67; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 29 ff., 159 f.; ders., RiW 1990, 302 (303); Zöller-Geimer, ZPO, § 328 Rdnr. 169; v. Bar, IPR, 1. Bd., Rdnr. 638; Linke, Internationales ZivilprozeßR, Rdnr. 422; Stiefel-Stürner, VersR 1987, 829; LG Berlin, RiW 1989, 988 (989); a. A. Kreuzer, in: MünchKomm, Art. 38 EGBGB Rdnr. 318; Schütze, in: Festschr. f. Nagel, S. 400; Schack, Internationales ZivilverfahrensR Rdnr. 869; ders., VersR 1984, 422 (423 f.); wohl auch v. Westphalen, PHI 1988, 18 (21)). Die Spezialität des Art. 38 EGBGB allein im Verhältnis zu Art. 6 EGBGB berührt demgegenüber die Sonderstellung des selbständigen anerkennungsrechtlichen ordre public-Vorbehalts nicht. Der ordre public ist teilbar, je nachdem, ob der deutsche Richter selbst ausländisches Recht anzuwenden oder es als Ergebnis ausländischer Rechtsanwendung hinzunehmen hat (a. M. Schütze, Deutsch-amerikanische Urteilsanerkennung, S. 170).

Sachlich bedarf es nicht einer so starren Festlegung wie der des Art. 38 EGBGB, um im Anerkennungsverfahren die deutsche öffentliche Ordnung vor unerträglichen Auswirkungen ausländischer Urteile zuverlässig zu schützen. § 328 I Nr. 4 ZPO ermöglicht dies in einer Weise, die den Besonderheiten des Anerkennungsverfahrens besser gerecht wird. Das gilt insbesondere für Fälle wie den vorliegenden, in denen beide Parteien mindestens auch Angehörige des Urteilsstaates sind und dessen Gericht die zusätzliche deutsche Staatsangehörigkeit des Bekl. nicht immer



kennt. Zudem können nach der verfahrensrechtlichen Vorbehaltsklausel die Auswirkungen des Umstands angemessen berücksichtigt werden, daß nicht nur der Tatort, sondern auch der Wohnsitz beider Parteien im Zeitpunkt der Klageerhebung im Ausland lag. Andererseits ermöglicht § 328 I Nr. 4 ZPO es hinreichend, auf das - in Art. 38 EGBGB zum Ausdruck gebrachte - Erfordernis einzugehen, daß die Haftpflicht im Inland gemeinverträglich sowie berechenbar bleiben muß. Ein Anreiz für den Geschädigten, vorzugsweise im ausländischen Gerichtsstand zu klagen, kann damit ebenfalls verringert werden (vgl. auch v. Bar, IPR, Rdnrn. 409 f.).

b) § 328 I Nr. 4 ZPO hindert die Urteilsanerkennung wegen des hier fraglichen Schadensersatzanspruchs nicht. Mit dem materiellen ordre public ist ein ausländisches Urteil nicht schon dann unvereinbar, wenn der deutsche Richter, hätte er den Prozeß entschieden, aufgrund zwingenden deutschen Rechts zu einem anderen Ergebnis gekommen wäre als das ausländische Gericht (vgl. Zöller-Geimer, ZPO, § 328 Rdnr. 152 m. w. Nachw.. Maßgebend ist vielmehr, ob das Ergebnis der Anwendung des ausländischen Rechts zu den Grundgedanken der deutschen Regelungen und der in ihnen enthaltenen Gerechtigkeitsvorstellungen in so starkem Widerspruch steht, daß es nach inländischen Vorstellungen untragbar erscheint (sog. ordre public international: BGHZ 50, 370 (375 f.) = NJW 1969, 369 = LM Art. 22 EGBGB Nr. 2 L; BGHZ 75, 32 (43) = NJW 1979, 1776; BGH, NJW 1991, 1418 (1420)). Dementsprechend verstößt es ebensowenig gegen die deutsche öffentliche Ordnung i. S. von Art. 27 Nr. 1 EuGVÜ, wenn das ausländische Recht die Haftung des Kraftfahrzeughalters neben der des Fahrers über die deutschen Höchstgrenzen hinaus und auch auf Schmerzensgeld ausdehnt (BGHZ 88, 17 (25 f.) = NJW 1983, 2139 = LM § 249 BGB Nr. 69), wie wenn es bei feststehender Schadensersatzpflicht eine pauschale Schätzung ihrer Höhe gestattet (BGHZ 75, 167 (171 f.) = NJW 1980, 527 = LM EGÜbk Nr. 10).

Im Rahmen von § 328 I Nr. 4 ZPO nimmt die deutsche Rechtsordnung es hin, wenn der Verletzte Heilungskosten ersetzt verlangen kann, ohne daß er gegenwärtig die bestimmte Absicht hat, sich der Heilbehandlung zu unterziehen. Die abweichende Regelung des deutschen Rechts, das für Personenschäden keine Dispositionsfreiheit kennt, beruht vor allem darauf, daß ein Ersatz für nicht zu behandelnde und damit letztlich hingenommene körperliche oder geistige-seelische Schäden in Wahrheit eine Entschädigung für die fortdauernde Gesundheitsbeeinträchtigung unter Umgehung von § 253 BGB darstellen würde (BGHZ 97, 14 (19) = NJW 1986, 1538 = LM § 249 BGB Nr. 29). Für einen Verstoß gegen die öffentliche Ordnung ist es jedoch unerheblich, ob das ausländische und das inländische Gesetz auf widerstreitenden Prinzipien beruhen; allein entscheidend ist, ob das konkrete Ergebnis der Anwendung des ausländischen Rechts zu mißbilligen ist (BGHZ 39, 172 (177) = NJW 1963, 1200 = LM Art. 7 ff. EGBGB Nr. 20 L).

Daran gemessen, hat hier der Superior Court dem Kl. den Ersatz von Heilungskosten zugesprochen, die auch nach deutschem Recht unter gleichen Voraussetzungen erstattungsfähig sein können. Die Haftung des Bekl. dafür ist im Ergebnis nicht als grob ungerecht zu mißbilligen. Der Grund für die frühzeitige Zuerkennung von Heilungskosten liegt darin, daß nach US-amerikanischen Recht der gesamte mögliche Ersatz für jeden Schadensfall in einer einheitlichen Summe ("lump sum") in einem einzigen Prozeß abschließend zuerkannt werden muß (Fleming, The American Tort Process, S. 231; Kionka, Torts in a Nut-Shell S. 354). Wenn das kalifornische Recht hierzu dem Geschädigten die Dispositionsfreiheit nicht nur bezüglich der Integrität seiner Sachen, sondern auch seines Körpers sowie seiner geistig-seelischen Gesundheit einräumt, wird dadurch keine schutzwürdige Position des Schädigers beeinträchtigt: Für ihn hängt es auch nach deutschen Recht allein vom freien Willen seines Opfers ab, ob die Heilungskosten zu erstatten sind oder nicht. Die deutsche Rechtsordnung insgesamt endlich wird durch die andersartige ausländische Form der Schadensabwicklung nicht unerträglich gestört, zumal eine wesentliche Haftungserweiterung im Inland hierdurch kaum zu besorgen ist.

4. Gegen die Zuerkennung von Schmerzensgeld (damages for anxiety, pain and suffering) aufgrund des ausgeurteilten Sachverhalts sind dem Grunde nach keine selbständigen Rügen erhoben.

5. Endlich hindert es die Anerkennung nicht, daß der Kl. nach dem Urteil des Superior Court 40 % aller eingehenden Gelder als Erfolgshonorar an seinen Rechtsanwalt abzuführen hat.

Zwar wäre nach deutschem Rechtsverständnis eine entsprechende Vereinbarung mit einem deutschen Rechtsanwalt in der Regel gem. § 138 I BGB nichtig (vgl. BGHZ 34, 64 (70 ff.) = NJW 1961, 313 = LM § 93 RAGebO Nr. 4 L; BGH, NJW 1992, 681 = LM H. 5/1992, § 134 BGB Nr. 135 = WM 1992, 279 m. w. Nachw.). Dieser Grundsatz ist jedoch für deutsche Gerechtigkeitsvorstellungen nicht so wesentlich, daß er in jedem Falle weltweit unbedingte Geltung beansprucht. Der BGH hat für Vergütungsvereinbarungen zwischen Deutschen und ausländischen Rechtsanwälten nach ausländischem Recht, die aufgrund deutschen materiellen Privatrechts auf ihre Vereinbarkeit mit Art. 30 EGBGB a. F. zu überprüfen waren, entschieden, daß eine Erfolgshonorarvereinbarung nicht am ordre public scheitern muß (BGHZ 22, 162 (166) = NJW 1957, 184 = LM § 30 EGBGB Nr. 3 L; BGHZ 44, 183 (190 f.) = NJW 1966, 296 = LM Art. 30 EGBGB Nr. 18 L). Anders als im Falle BGHZ 51, 290 (293 ff.) = LM Art. 30 EGBGB Nr. 21 L, in dem einem ausländischen Rechtsanwalt - gem. § 183 I BEG - die Befugnisse eines inländischen Rechtsanwalts zugebilligt worden waren, liegt dem Erfolgshonorar hier eine im Ausland geschlossene Vereinbarung einer ausländischen Partei mit ihrem ausländischen Rechtsanwalt für die Führung eines Prozesses im Ausland zugrunde. Wenn das ausländische Gericht nach dem von ihm anzuwendenden Recht eine solche Absprache durchsetzt, berührt das die deutsche öffentliche Ordnung nicht in unerträglicher Weise. Die Vertragsbeziehungen waren vollständig im Ausland abzuwickeln. Es steht grundsätzlich jeder Rechtsordnung frei, welche standesrechtlichen Beschränkungen sie ihrer eigenen Rechtsanwaltschaft auferlegt (vgl. Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnr. 1111).

Der jeweilige Bekl. des Schadensersatzprozesses kann dadurch nur insoweit betroffen werden, als das Erfolgshonorar mittelbar zugleich die Bemessung des zuerkannten Schadensersatzes mitbeeinflußt (ebenso Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 118 f.). Das ist hier weder festgestellt noch ausgeschlossen. Sogar wenn der dem Kl. zugesprochene Schadensersatz zum Ausgleich tatsächlich erlittener Schäden (compensatory damages) mit Rücksicht auf die ihn treffende Kostenlast großzügig geschätzt worden sein sollte, wäre das allein aus deutscher Sicht noch kein unerträgliches Ergebnis. Denn wäre er in Deutschland auf Schadensersatz verklagt worden, so hätte der Bekl. den Kl. gem. § 91 ZPO ebenfalls von Prozeßkosten freistellen müssen. Im Rahmen des inländischen ordre public ist es nicht zu beanstanden, wenn der Geschädigte neben einem vollen Ausgleich für erlittene Beeinträchtigungen eine Freistellung von Prozeßkosten erlangt. Auf die Frage, wie diese Kosten im einzelnen errechnet worden sind, kommt es insoweit nicht entscheidend an.

Die Höhe der dem Anwalt vorliegend zugebilligten Erfolgsquote hindert ebenfalls nicht die Anerkennung. Der Superior Court hat sie ausdrücklich mit der Komplexität und Schwierigkeit der Rechtsverfolgung begründet. Soweit in BGHZ 44, 183 (190 f.) = NJW 1966, 296 = LM Art. 30 EGBGB Nr. 18 L der vereinbarte Anteil am Erstrittenen im Hinblick auf Art. 30 EGBGB a. F. herabgesetzt wurde, kann daraus zur Konkretisierung dessen, was unter Beachtung des ordre public i. S. des § 328 I Nr. 4 ZPO hinzunehmen ist, für einen Fall mit dem hier fraglichen Auslandsbezug nichts hergeleitet werden (a. A. Stiefel-Stürner, VersR 1987, 829 (842)). Die Höhe des zuerkannten Erfolgshonorars entspricht dem nach amerikanischen Verhältnissen Üblichen (vgl. Lange-Black, Der Zivilprozeß in den USA, Rdnr. 117; Fleming, The American Tort Process, S. 199; Stiefel-Stürner, VersR 1987, 829 (831) m. w. Nachw.; Kölnische Rück-Zeller, Zur Produkthaftpflicht aus Exporten nach USA und ihrer

Versicherung, Rdnr. 51; v. Westphalen, RiW/AWD 1981, 141 (147); Völz, VersR 1987, 229 (235 f.); Sabella, VersR 1990, 1186 (1191)), wobei zu berücksichtigen ist, daß bei dieser Art der Vereinbarung der amerikanische Rechtsanwalt die Kosten der Rechtsverfolgung vorschießen muß und das Risiko des rechtlichen wie wirtschaftlichen Mißerfolgs trägt (vgl. Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 121 f.). Im Verhältnis zwischen dem Kl. und seinem Rechtsanwalt ist die Quote im Urteil, dessen Anerkennung verlangt wird, verbindlich festgelegt, ohne daß



daran in dem hier - allein im Streit befindlichen - Verhältnis zum Bekl. etwas zu ändern wäre. Zu seinen Gunsten könnte das Anerkennungshindernis nach § 328 I Nr. 4 ZPO allenfalls eingreifen, wenn er als „compensatory damages" insgesamt einen Betrag zu zahlen hätte, der weit über das hinausging, was zum Ausgleich der vom Kl. tatsächlich erlittenen Schäden einschließlich eines angemessenen Kostenanteils erforderlich war. Hierfür ist um so weniger ersichtlich, als die Rechtsanwälte des Kl. jahrelang einen Prozeß mit hohem Streitwert und schwierigen Auslandsbeziehungen geführt haben, ohne bisher - soweit dargetan - irgendein Honorar empfangen zu haben.

V. Erfolg hat die Revision, soweit im Urteil des Superior Court zugunsten des Kl. ein Anspruch auf „exemplary and punitive damages" in Höhe von 400000 Dollar tituliert ist.

Hierzu hat das BerGer. die Auffassung vertreten, eine Vollstreckbarerklärung könne - nur - in dem Umfang stattfinden, in dem durch diese Summe Anwaltskosten abgedeckt seien, deren Höhe jedoch ebenfalls einer ordre public-Kontrolle unterzogen werden müsse. Dies führe dazu, daß nicht die im Urteil des Superior Court ausgewiesene Höhe von 40 % der jeweiligen Urteilssumme, sondern lediglich eine solche von 25 % anerkannt werden könne. Demnach ergebe sich ein für vollstreckbar zu erklärender Teil der „punitive damages" in Höhe von 55065 Dollar.

Diese Ausführungen halten den Angriffen der Revision des Bekl. nicht stand. Ein ausländisches Urteil auf Strafschadensersatz von nicht unerheblicher Höhe, der über den Ausgleich erlittener materieller und immaterieller Schäden hinaus pauschal zuerkannt wird, kann insoweit in Deutschland regelmäßig insgesamt nicht für vollstreckbar erklärt werden.

1. „Punitive or exemplary damages" werden nach dem Recht der meisten Einzelstaaten der USA - einschließlich Kaliforniens - als weiterer Geldbetrag zum rein ausgleichenden Schadensersatz zuerkannt, wenn dem Täter als erschwerender Umstand zu einem allgemeinen Haftungstatbestand ein absichtliches, bösartiges oder rücksichtsloses Fehlverhalten zur Last fällt (Prosser, Handbook of the Law of Torts, S. 9 f. m. w. Nachw.; Ed. note. in: 70 Harvard Law Review, 517; Kionka, Torts in a Nutshell, S. 372 f.; Stoll, in: Gutachten für den 45. DJT 1964, Bd. I Teil 1 (nachfolgend: Gutachten), S. 100; Großfeld, Die Privatstrafe, S. 59 f.; Siehr, RiW 1991, 705 (706 f.); v. Westphalen, RiW/AWD 1981, 141 (143)). Neuerdings kann schon eine bewußt fahrlässige, offenkundige Mißachtung der Sicherungsinteressen der Allgemeinheit ausreichen (Hoechst, Die US-amerikanische Produzentenhaftung, S. 73; Fleming, The American Tort Process, S. 217 f.; Madden, Products Liability, 2nd ed., S. 317, 319; The American Law Institute, S. 248; Stiefel-Stürner, VersR 1987, 829 (835)). Die Verhängung steht regelmäßig im freien Ermessen des Gerichts (Prosser, Handbook of the Law of Torts, S. 11 m. w. Nachw.; Stoll, in: International Encyclopedia of Comparative Law, Vol. XI, Part. 2 (nachfolgend: Encyclopedia) Anm. 8-107 über Fußn. 803; ders., Gutachten, S. 102; Kionka, Torts in a Nutshell, S. 372; Großfeld, Die Privatstrafe, S. 66; Hoechst, VersR 1983, 13 (14)). Mit ihr werden bis zu vier Hauptzwecke verfolgt (vgl. Prosser, Handbook of the Law of Torts, S. 9, 20; Ed. note in: 70 Harvard Law Review, 517 (520 ff.); Kionka, Torts in a Nutshell, S. 371 i. V. mit S. 364 f.; Stoll, Encyclopedia, Anm. 8-109; ders., Gutachten, S. 101 ff., 113 ff.; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 68, 152; Stiefel-Stürner, VersR 1987, 829 (836); v. Westphalen, RiW/AWD 1981, 141 (143 f., 146 f.); Völz, VersR 1987, 229 (231 f.)): Der Täter soll für sein rohes Verhalten bestraft werden, auch damit mögliche Racheakte des Opfers selbst überflüssig werden. Täter und Allgemeinheit sollen präventiv von künftigem sozialschädlichem Verhalten abgeschreckt werden, soweit das bloße Risiko der Kompensationspflicht keine ausreichende Verhaltenssteuerung gewährleistet. Der Geschädigte soll für die auf seinem Einsatz beruhende Rechtsdurchsetzung - zur Stärkung der Rechtsordnung im allgemeinen - belohnt werden. Schließlich soll das Opfer eine Ergänzung zu einer als unzureichend empfundenen Schadensbeseitigung erhalten, wobei sich unter anderem eine fehlende soziale Absicherung auswirken kann (vgl. Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 40, 158; Sabella, VersR 1990, 1186 (1187 d.)); auf diese Weise kommt auch

ein Ausgleich für die nicht selbständig erstattungsfähigen außergerichtlichen Kosten des Kl. (oben III 4 b) in Betracht.

Die Höhe der zuerkannten Beträge richtet sich nach dem Ermessen des Gerichts, das üblicherweise den Charakter der Verletzungshandlung, Art und Ausmaß der Beeinträchtigung für den Kläger (Großfeld, Die Privatstrafe, S. 63; Stiefel-Stürner, VersR 1987, 829 (835)), aber auch die Vermögensverhältnisse des Schädigers berücksichtigt (Prosser, Handbook of the Law of Torts, S. 11 f.; Ed. note: in 70 Harvard Law Review, 517 (528) jeweils m. w. Nachw.; Kionka, Torts in a Nutshell, S. 374; The American Law Institute, S. 253; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 68). Teilweise wird ein Vielfaches der auszugleichenden sonstigen Schäden festgesetzt (Hoechst, Die US-amerikanische Produzentenhaftung, S. 73 f.; ders., VersR 1983, 13 (14); so auch im Ausgangsfall bei Drolshammer-Schärer, SJZ 1986, 309 (310)). Zuweilen werden zugesprochene Schmerzensgeldbeträge (damages for pain and suffering) und Strafschadensersatz - anders als im vorliegenden Falle - nicht getrennt ausgewiesen, so daß eine einheitliche Summe zur Abgeltung anderer als materieller Schäden zugleich einen Schmerzensgeldanteil enthält (Großfeld, Die Privatstrafe, S. 62; Hoechst, VersR 1983, 13 (15); vgl. aber auch Stoll, Encyclopedia, Anm. 8-107 über Fußn. 801 und 802). Nicht einmal Verdienstausfallschäden werden - bei Jury-Entscheidungen - stets ausgesondert (Heidenberger, RiW 1990, 804 (807)).

Werden mehrere durch eine einzige Handlung geschädigt, so kann im allgemeinen jedem Opfer selbständig Strafschadensersatz in voller Höhe zuerkannt werden (Fleming, The American Tort Process, S. 220 f.; The American Law Institute, S. 260 f.).

2. Auf dieser Grundlage ist das BerGer. zutreffend und unangefochten davon ausgegangen, daß es sich bei der Verurteilung des Bekl. zur Zahlung von „punitive damages" nicht um eine Kriminalstrafe handelt, die der Vollstreckbarerklärung gem. § 722 , 723 ZPO von vornherein entzogen wäre, sondern daß sie einen zivilrechtlichen Zahlungsanspruch zum Gegenstand hat. Hierfür bedarf es keiner Entscheidung darüber, ob diese Frage allein nach ausländischem Recht, allein nach deutschem Recht oder im Wege einer Doppelqualifikation nach beiden Rechtsordnungen übereinstimmend zu beantworten ist (vgl. hierzu Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnr. 500; ders., 35 AmJCompL 721 (730 f.); Schütze, Deutsches Internationales ZivilprozeßR, S. 138; ders., in: Festschr. f. Nagel, S. 394; Schack, Internationales ZivilverfahrensR, Rdnr. 820, jeweils m. w. Nachw.). Sowohl aus US-amerikanischer wie aus deutscher Sicht ist eine Zivilsache anzunehmen.

Nach amerikanischem Rechtsverständnis werden „punitive damages" ungeachtet ihrer Bestrafungs- und Abschreckungsfunktion allgemein dem Zivilrecht zugeordnet (Junker, Discovery im deutsch-amerikanischen Rechtsverkehr, S. 255; Kionka, Torts in a Nutshell, S. 373; Großfeld, Die Privatstrafe, S. 61 f.; Stürner-Stadler, IPRax 1990, 157 (158) jeweils m. w. Nachw.). Mit dieser Begründung hat der US Supreme Court einen Verstoß des Strafschadensersatzes unter anderem gegen das Verbot der Doppelbestrafung ausgeschlossen (vgl. Peterson, IPRax 1990, 187; Ebke, RiW 1990, 145).

Aus deutscher Sicht gilt nichts anderes. Danach sind Urteile in Zivilsachen (§ 13 GVG), also jedenfalls Entscheidungen über das Bestehen oder Nichtbestehen privater Rechte und Rechtsverhältnisse gleichgeordneter Parteien (vgl. zu dieser Abgrenzung GmS-OGB, BGHZ 97, 312, 313 f. = NJW 1986, 2359 = LM § 9 BBauG Nr. 6; GmS-OGB, BGHZ 102, 280 (283 f.) = NJW 1988, 2295 = LM § 13 GVG Nr. 178; GmS-OGB, BGHZ 108, 284 (286 f.) = NJW 1990, 1527 = LM § 13 GVG Nr. 183; BGH, NJW 1991, 1686 (1687)), anerkennungsfähig. In diesem Sinne stellen „punitive damages" grundsätzlich eine besondere Art des Schadensersatzes zwischen Privatpersonen dar, unabhängig von den rechtspolitischen Erwägungen, aus denen dieser eingeführt worden ist. Er wird auf Veranlassung eines einzelnen beigetrieben. Jedenfalls dann, wenn - wie vorliegend - der Strafschadensersatz an den Geschädigten selbst zu entrichten ist, handelt es sich um den Gegenstand einer Zivilsache (OLG München, NJW 1989, 3102 mit insoweit zust. Anm. v. Greger, NJW 1989, 3103; Zöller-Geimer, ZPO, § 328 Rdnr. 77; Linke, Internationales ZivilprozeßR, Rdnr. 374 a. E.; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 151; ders., 37 AmJCompL 301 (324 f.); Schack, Internationales ZivilprozeßR, Rdnrn. 605, 818 und Einf., S. 35; Stiefel-Stürner, VersR 1987, 829 (837); Stürner-Stadler, IPRax 1990, 157 (158); Siehr, RiW 1991, 705 (708); v. Westphalen, RiW/AWD 1981, 141 (143); Böhmer, NJW 1990, 3049 (3051); für das Schweizer Recht: Zivilgericht Basel, Basler JurMitt 1991, 31 (32 f.); Bezirksgerichtspräsidium Sargans, bei Drolshammer-Schärer, SJZ 1986, 309 (310); a. A. Schütze, in: Festschr. f. Nagel, S. 397; ders., WM 1986, 633 (635); Wölki, RiW 1985, 530 (533); wohl auch Stiefel, RiW/AWD 1979, 509 (512); Hollman, RiW 1982, 784 (786); für das Schweizer Recht: Stojan, Die Anerkennung und Vollstreckung ausländischer Zivilurteile in Handelssachen, Anm. 4.5.3 i. V. mit Anm. 4.5.2; Kaufmann=Kohler, WiuR, Jahrgang 35, 211 (244 i. V. mit 243)). Ob etwas anderes anzunehmen ist, wenn die „punitive damages" an den Staat oder eine sonstige Institution

fließen (vgl. hierzu Stiefel-Stürner, VersR 1987, 829 (837); Schubert, PHI 1988, 38 (39)), kann offenbleiben.

3. Die Vollstreckbarerklärung des US-amerikanischen Urteils, das die Verpflichtung zur Zahlung von „punitive damages" ausspricht, scheitert jedoch regelmäßig am materiellen ordre public gem. § 723 II 2, 328 I Nr. 4 ZPO (ebenso Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 152 ff.; Schack, Internationales ZivilvertragsR, Rdnr. 869; Hoechst, Die US-amerikanische Produzentenhaftung S. 122; ders., VersR 1983, 13 (16 f.); Schütze, Deutsch-amerikanische Urteilsanerkennung, S. 163, 169 ff.; ders., in: Festschr. f. Nagel, S. 399 f.; Greger, NJW 1989, 3103 (3104); für Schweizer Recht: Drolshammer-Schärer, SJZ 1986, 309 (315 ff.); a. A. wohl v. Westphalen, RiW/AWD 1981, 141 (148 f.)).

a) Die moderne deutsche Zivilrechtsordnung sieht als Rechtsfolge einer unerlaubten Handlung nur den Schadensausgleich (§§ 249 ff. BGB), nicht aber eine Bereicherung des Geschädigten vor (Mot., Bd. II, S. 17 ff.). Frühere Privatstrafklagen, insbesondere wegen Beleidigung, sollten ausgeschlossen sein (Bericht der Reichstags-Kommission über den Entwurf eines BGB und EinführungsG, S. 98). Das gilt unabhängig davon, ob der Ersatzanspruch vor dem Zivilgericht oder im Anhangsverfahren vor dem Strafgericht (§§ 403 ff. StPO) geltend gemacht wird. Die Bestrafung und - im Rahmen des Schuldangemessenen - Abschreckung sind mögliche Ziele der Kriminalstrafe (§§ 46 ff. StGB), die als Geldstrafe an den Staat fließt, nicht des Zivilrechts.

Auch die Erwägung, dem Opfer als Kl. eine Vergünstigung zukommen zu lassen, findet ihre Erklärung in einem Verständnis des Privatrechts als Lebensordnung mit generalpräventiver Wirkung (Stürner, in: Festschr. f. Stiefel, S. 763, 783): Anstelle des Staates tritt der einzelne als „privater Staatsanwalt" auf (The American Law Institute, S. 238; Junker, Discovery im deutsch-amerikanischen Rechtsverkehr, S. 96). Das ist nach deutscher Rechtsauffassung mit dem Bestrafungsmonopol des Staates und den dafür eingeführten besonderen Verfahrensgarantien unvereinbar. Zwar läßt das deutsche Recht mit dem Rechtsinstitut der Vertragsstrafe (§§ 339 ff. BGB) in gewissem Umfang Bestrafungsfunktionen im Privatrecht zu. Dies setzt jedoch eine entsprechende rechtsgeschäftliche Vereinbarung zwischen den Parteien voraus und ist deshalb für die Umschreibung der deutschen Grundsätze für die Deliktshaftung bedeutungslos.

Die nach US-amerikanischem Verständnis im Interesse der Allgemeinheit gerechtfertigte Bestrafungs- und Abschreckungsfunktion der „punitive damages" kann insbesondere nicht mit der Genugtuungsfunktion verglichen werden, die nach inländischen Grundsätzen im Bereich der Zumessung von Schmerzensgeld nach § 847 BGB und bei Verletzungen des allgemeinen Persönlichkeitsrechts zu berücksichtigen ist (vgl. dazu BGHZ 18, 149 (154 ff.) = NJW 1955, 1675 = LM § 847 BGB Nr. 8 L; BGHZ 26, 349 (353 ff.) = NJW 1958, 827 = LM § 847 BGB Nr. 12 L; BGHZ 39, 124 (133) = NJW 1963, 902 = LM § 847 BGB Nr. 23 L; BGH, NJW 1976, 1147 = LM § 847 BGB Nr. 55 = JZ 1976, 599; BGH, NJW 1982, 2123). Zum einen steht bei der Bemessung des Schmerzensgeldes nicht sie, sondern die Rücksicht auf Höhe und Maß der Lebensbeeinträchtigung (Grad und Dauer der Schmerzen, Leiden und Entstellungen) im Vordergrund, während das Rangverhältnis der übrigen Umstände den Besonderheiten des Einzelfalles zu entnehmen ist (vgl. BGH, VersR 1960, 252 (253)). Zum anderen begründet die Genugtuungsfunktion keinen unmittelbaren Strafcharakter des Schmerzensgeldes (BGHZ 18, 149 (155) = NJW 1955, 1675 = LM § 847 BGB Nr. 8 L). Sie ist vielmehr untrennbar mit der dem Schmerzensgeldanspruch zugleich innewohnenden Ausgleichsfunktion verknüpft (BGH, VersR 1961, 164) und bringt immer eine gewisse, durch den Schadensfall hervorgerufene persönliche Beziehung zwischen Schädiger und Geschädigtem zum Ausdruck (BGHZ 18, 149 (157) = NJW 1955, 1675 = LM § 847 BGB Nr. 8 L). Dies ändert sich auch nicht dann, wenn die Genugtuungsfunktion im Einzelfall in den Vordergrund der Schmerzensgeldbemessung tritt, weil angesichts der Unmöglichkeit eines Ausgleichs immaterieller Schäden nur eine zeichenhafte Wiedergutmachung stattfinden kann (vgl. hierzu BGHZ 18, 149 (156 f.) = NJW 1955, 1675 = LM § 847 Nr. 8 L; BGH, NJW 1976, 1147 = LM § 847 BGB Nr. 55; BGH, NJW 1982, 2123). Das verkennt Kern (AcP 191, 247 (253 ff., 268, 272)).

Für die Bestimmung des nach § 328 I Nr. 4 ZPO zu beachtenden ordre public kann die Genugtuungsfunktion eines Schmerzensgeldanspruchs nach deutschem Recht mithin nur herangezogen werden, soweit die „punitive damages" auch immaterielle Schäden ausgleichen sollen (Stiefel-Stürner, VersR 1987, 829 (841); Siehr, RiW 1990, 705 (707); a. A. wohl v. Westphalen, RiW/AWD 1981, 141 (147 ff.)). Im Streitfall ist dies aber bereits durch gesondertes Zuerkennen einer

Entschädigung für „pain and suffering" uneingeschränkt geschehen. Für ein darüber hinausgehendes Genugtuungsbedürfnis des Kl. ist sogar unter voller Berücksichtigung der hohen Bedeutung, die nach dessen Darstellung die körperliche Unversehrtheit in den USA genießt, nichts ersichtlich.

b) Anders kann es sich möglicherweise verhalten, soweit mit der Verhängung von Strafschadensersatz restliche, nicht besonders abgegoltene oder schlecht nachweisbare wirtschaftliche Nachteile pauschal ausgeglichen oder vom Schädiger durch die unerlaubte Handlung erzielte Gewinne abgeschöpft werden sollen (so Zivilgericht Basel, Basler JurMitt 1991, 31 (36 f.); vgl. auch Assmann, BB 1985, 15 (23)). In diesem Zusammenhang kommt allgemein auch die Abwälzung der Prozeßkosten oder anderer nicht selbständig ersatzfähiger Verzugsschäden auf den Bekl. in Betracht (vgl. Martiny, Hdb. des internationalen ZivilverfahrensR, Rdnr. 507).

Jedoch enthalten hier weder das Urteil noch die Verhandlungsniederschrift des Superior Court zuverlässige Hinweise darauf, daß mit der Zubilligung von „punitive damages" die Gesamtprozeßkostenlast des Kl. erfaßt werden sollte. Der Anteil von 40 %, welcher seinem Rechtsanwalt als Vergütung zuerkannt wurde, fällt auf sämtliche tatsächlich entrichteten Schadensersatzbeträge unabhängig von ihrer rechtlichen Einordnung an. Die zum Ausgleich für Heilungskosten sowie als Schmerzensgeld (damages for pain and suffering) ausgewiesenen Summen sind auch nicht etwa so genau und knapp kalkuliert, daß sie nicht ihrerseits schon einen Kostenateil umfassen könnten. Die Erwägung des Gerichts - vor allem einer Jury -, einen Kostenausgleich zu schaffen, kann in den USA allgemein schon zu erhöhten „compensatory damages" führen (Fleming, The American Tort Process S. 226; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 153 f.; v. Hülsen, RiW/AWD 1982, 1 (9)).

Das BerGer. hat nicht etwa in tatsächlicher Hinsicht festgestellt, welche Erwägungen den Superior Court bei seiner Entscheidung hinsichtlich der „punitive damages" im vorliegenden Einzelfalle geleitet haben. Es ist statt dessen einem Vorschlag von Stiefel und Stürner (VersR 1987, 829 (831); vgl. dagegen Schütze, in: Festschr. f. Nagel, S. 397; Böhmer, NJW 1990, 3049 (3051)) gefolgt, die für den Regelfall einem auf Strafschadensersatz lautenden US-amerikanischen Urteil eine solche Ausgleichsfunktion unterlegen und es in Deutschland begrenzt anerkennen wollen.

c) Eine solche Verallgemeinerung wird aber weder von den tatsächlichen Feststellungen des BerGer. noch von den Behauptungen des Kl. getragen.

Erhebungen darüber, wie oft US-amerikanische Gerichte mit der Verhängung von Strafschadensersatz unter anderem bezwecken, Kl. von ihrer gesamten Last an außergerichtlichen Kosten freizustellen, fehlen (vgl. im Gegenteil Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 117). In älteren Veröffentlichungen wird ein solcher Beweggrund überhaupt noch nicht genannt (vgl. die Nachw. bei Großfeld, Die Privatstrafe, S. 50, 52 f.). Sogar neuere Entscheidungen erwähnen ein derartiges Motiv nur ausnahmsweise (vgl. die Zusammenstellung bei v. Westphalen, RiW/AWD 1981, 141 (144 ff.)). Im Staate New York werden beispielsweise bei der Jury-Belehrung allein Bestrafung und Abschreckung als Zwecke der „punitive damages" genannt (vgl. Madden, Products Liability, S. 317 Fußn. 6).

Ohne eindeutig nachvollziehbare Hinweise des ausländischen Gerichts selbst ist das um die Vollstreckbarerklärung angegangene deutsche Gericht gehindert, die tatsächlichen Beweggründe im Einzelfall zu erforschen. Wie ausgeführt (o. 1), kann ein solcher US-amerikanischer Spruch regelmäßig auf mehreren verschiedenen Motiven jeweils allein oder in Verbindung mit anderen beruhen, sofern er überhaupt den anerkannten ausländischen Rechtsgrundsätzen entspricht (insoweit zutr. Stiefel-Stürner, VersR 1987, 829 (838)). Um den Urteilsinhalt über dessen amtliche Begründung hinaus zu konkretisieren, müßte sich der inländische Richter notwendigerweise an die Stelle des ausländischen



setzen. Dazu ist er, wie § 723 I ZPO erkennen läßt, nicht befugt. Darüber hinaus müßte eine solche Urteilsergänzung weitgehend auf Mutmaßungen beruhen, also die Rechtssicherheit gefährden.

Der Senat hält es auch nicht für zulässig, insoweit für das ausländische Urteil stets den für eine Anerkennung „günstigsten" denkbaren Fall einer möglichst vollständigen Wahrung der Ausgleichsfunktion zu unterstellen (so aber im Ergebnis Stiefel-Stürner, VersR 1987, 829 (837, 840

f.)). Das entspräche nicht der Rechtswirklichkeit, weil diese Sichtweise für den erkennenden Richter im Ausland belanglos war. Zudem liefe ein solcher Ansatz auf eine einseitige Besserstellung des Gläubigers im Verhältnis zum Schuldner ohne Rücksicht auf den tatsächlichen Inhalt des ausländischen Urteils, also möglicherweise auf eine Haftungserweiterung hinaus. Eine solche Betrachtungsweise wird nicht einmal durch die Rücksichtnahme auf den konkreten ausländischen Hoheitsakt geboten.

Unerheblich ist hierfür die Frage nach der Teilbarkeit einer Anerkennung des ausländischen Urteils, die auch der Senat grundsätzlich bejaht. Sie kann immer erst in Betracht kommen, wenn das ausländische Urteil, das eine einheitliche Rechtsfolge mit mindestens teilweise, möglicherweise aber vollständig ordre public-widrigem Inhalt ausspricht, selbst genügend Anhaltspunkte für eine sichere Aufspaltung in hinzunehmende oder für die deutsche Rechtsordnung schlechthin unverträgliche Rechtsfolgen enthält. Eine Aufteilung nach dem freien Ermessen des deutschen Anerkennungsrichters ist insoweit ausgeschlossen.

d) Statt dessen ist in derartigen Fällen auf den Schwerpunkt der nicht im einzelnen aufteilbaren Rechtsfolge abzustellen, die das ausländische Urteil als Einheit ausspricht. Vorrangig sind dabei die nach dem Urteil im jeweiligen Einzelfalle maßgeblichen Umstände auszuwerten. Legt das Urteil sie, wie hier, nicht offen, so ist das zugrundeliegende ausländische Rechtsinstitut als Ganzes zu erfassen. Entscheidend ist sodann, welche Anspruchsvoraussetzungen und/oder Besonderheiten der Rechtsfolge bei wertender Betrachtungsweise im Hinblick auf den deutschen ordre public das Rechtsinstitut im Regelfalle typischerweise bestimmen.

Bei dieser Sicht wird der US-amerikanische Strafschadensersatz geprägt durch die Momente der Bestrafung und Abschreckung (ebenso The American Law Institute, S. 231, 236, 247; Madden, Products Liability, S. 316; Kionka, Torts in a Nutshell, S. 374; Fleming, The American Tort Process, S. 214; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 152 f., 156; ders., 37 AmJCompL, 301 (325 ff.)). Aus ihnen ist er geschichtlich hervorgegangen (Großfeld, Die Privatstrafe, S. 49 ff.; Ed. note, in: 70 Harvard Law Reviews, 517 (518 ff.); Siehr, RiW 1990, 705), sie wirken auch heute noch regelmäßig mit auf die Festsetzung ein (Großfeld, Die Privatstrafe, S. 69 f.; Schütze, in: Festschr. f. Nagel, S. 397; vgl. auch die Einzelnachw. bei v. Westphalen, RiW/AWD 1981, 141 (144 ff.)). Maßgebliche Voraussetzung ist allein der gesteigerte Schuldvorwurf. Das Fehlen eines Rechtsanspruchs des Geschädigten zeigt das untergeordnete Gewicht seiner privaten Interessen. Da zudem keine meßbare allgemeine Beziehung der festzusetzenden Beträge zu den erlittenen Schäden besteht, tritt der Ausgleichsgedanke im Regelfalle zurück (ebenso Großfeld, Die Privatstrafe, S. 63; Siehr, RiW 1991, 705 (707)).

e) Davon ausgehend, ist es mit wesentlichen Grundsätzen des deutschen Rechts offensichtlich unvereinbar, pauschal zuerkannten Strafschadensersatz von nicht unerheblicher Höhe im Inland zu vollstrecken.

aa) Zu den wesentlichen Grundsätzen des deutschen Rechts gehört der aus dem Rechtsstaatsprinzip folgende Grundsatz der Verhältnismäßigkeit, der auch in der Zivilrechtsordnung Geltung beansprucht (Stiefel-Stürner, VersR 1987, 829 (840 f.); Stürner-Stadler, IPRax 1990, 157 (159); v. Westphalen, PHI 1988, 18 (21 f.); LG Heilbronn, RiW 1991, 343 (344); vgl. auch BVerfGE 34, 269 (285 f.) = NJW 1973, 1221 und § 251 II BGB). Ihm trägt im Zivilrecht unter anderem der Kompensationsgedanke beim Schadensersatz Rechnung: Regelmäßig ist allein der Ausgleich der durch den rechtswidrigen Eingriff gestörten Vermögensverhältnisse der unmittelbar Beteiligten das angemessene Ziel des über den Eingriff geführten Zivilprozesses. Darauf sind dessen Verfahrens- und Beweisregeln zugeschnitten, die den Parteien einen vielfältig bestimmenden Einfluß auf das Ergebnis einräumen. Ähnliche Regeln bestimmen den US-amerikanischen Zivilprozeß, bis hin zur Festlegung des maßgeblichen Sachverhalts durch die Parteien und zur Möglichkeit von Säumnisentscheidungen.

Hingegen fallen Sanktionen, die der Bestrafung und Abschreckung - also dem Schutz der Rechtsordnung im allgemeinen - dienen, nach deutscher Auffassung grundsätzlich unter das Strafmonopol des Staates. Er übt es im öffentlichen Interesse in einer besonderen Verfahrensart aus, in dem einerseits die Amtsermittlung eine höhere Gewähr für die Richtigkeit der Sachentscheidung bieten soll und andererseits die Rechte des Beschuldigten stärker geschützt sind. Aus hiesiger Sicht erscheint es unerträglich, in einem Zivilurteil eine erhebliche Geldzahlung aufzuerlegen, die nicht dem Schadensausgleich dient, sondern wesentlich nach dem Interesse der Allgemeinheit bemessen wird und möglicherweise neben eine Kriminalstrafe für dasselbe Vergehen treten kann (ebenso Greger, NJW 1989, 3103).

So verhält es sich im Ergebnis mit dem vorliegenden Fall. Der verhängte Strafschadensersatz ist höher als die Summe aller zugesprochenen Ausgleichsbeträge. Sogar das hierauf anfallende Anwaltshonorar zusammen könnte nur gut ein Drittel der „punitive damages" ausmachen. Für einen sonstigen auszugleichenden Schaden ist nichts ersichtlich. Dann würde eine Vollstreckung den Bekl. übermäßig treffen.

bb) Die ohne festes Verhältnis zum eingetretenen Schaden nach dem Ermessen des Gerichts verhängten, teilweise außerordentlich hohen „punitive damages" haben in den USA im Ergebnis mit zu einem raschen Anstieg der gesamtwirtschaftlichen Schadensersatzlast bis an die Grenze des kalkulierbaren und versicherbaren Risikos geführt (vgl. Zekoll, US-amerkanisches ProdukthaftpflichtR, S. 84 ff., 155 f.; Hoechst, VersR 1983, 13 (15); Stiefel-Stürner, VersR 1987, 829 (835); Völz, VersR 1987, 229 (233 f.); Sabella, VersR 1990, 1186 (1188, 1190 f.)).

Aus deutscher Sicht wären die zivilrechtsfremden Beweggründe sowie das Fehlen hinreichend bestimmter und zuverlässiger Begrenzungen im Falle der Anerkennung derartiger Urteile geeignet, die gesamten inländischen Haftungsmaßstäbe zu sprengen. Ausländische Gläubiger könnten aufgrund eines solchen Titels in vielfach weiterem Ausmaße auf inländisches Schuldnervermögen zugreifen als inländische Gläubiger, die unter Umständen wesentlich größere Beeinträchtigungen erlitten haben. Eine solche Besserstellung von Gläubigern allein aus den wenigen Staaten in der Welt, die Strafschadensersatz verhängen (vgl. dazu Stoll, Encyclopedia, Rdnrn. 8-104 ff.), gegenüber allen anderen ist nicht durch Gründe gerechtfertigt, die nach der deutschen Rechtsordnung Schutz verdienen. Deshalb wäre schon allein die Vollstreckung eines Anspruchs auf pauschalen Strafschadensersatz - über den Ersatz vollen materiellen wie immateriellen Schadens hinaus - in Deutschland ein untragbares Ergebnis, so daß bereits diese verhältnismäßig geringe Inlandsbeziehung des Streitfalles dem Klageantrag entgegensteht.

cc) Damit ist eine Vollstreckung in Deutschland insoweit ausgeschlossen. Es braucht nicht mehr entschieden zu werden, ob die Vollstreckung von Strafschadensersatz die deutsche öffentliche Ordnung noch aus weiteren Gründen verletzte. Insbesondere kann es offenbleiben, ob die wenig bestimmbaren Voraussetzungen für den Erlaß eines Urteils auf „punitive damages" und für deren Höhe an Art. 103 II GG zu messen sind, sowie ob die Verurteilung zu Strafschadensersatz neben einer Kriminalstrafe aus deutscher Sicht unter das Verbot der Mehrfachbestrafung (Art. 103 III GG) fiele (vgl. dazu Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 152 f.; Hoechst, VersR 1983, 13 (17)).

VI. Der Umstand, daß das Urteil des Superior Court wegen des darin verhängten Strafschadensersatzes in Deutschland nicht für vollstreckbar erklärt werden kann, hindert die Anerkennung im übrigen nicht. Entgegen der Meinung der Revision zwingt die Tatsache, daß der Streitgegenstand des Vollstreckungsurteils nicht in dem materiell-rechtlichen Anspruch besteht, der dem ausländischen Titel zugrunde liegt, sondern durch das Begehren des Gläubigers bestimmt wird, diesem Titel im Inland Vollstreckbarkeit zu verleihen, nicht dazu, über die Vollstreckbarerklärung eines ausländischen Zahlungsurteils hinsichtlich der gesamten Urteilssumme immer einheitlich zu entscheiden. Wenn ein ausländisches Urteil mehrere, rechtlich selbständige Ansprü-



che zuerkennt, können diese auch jeweils einzeln auf ihre Anerkennungsvoraussetzungen geprüft werden. Sofern diese nicht für alle Ansprüche vorliegen, ist eine Teilanerkennung als ein Weniger möglich, ohne daß der Kläger dem mit seinem Klageantrag Rechnung tragen muß (Geimer, Internationales ZivilprozeßR, Rdnr. 2294; Zöller-Geimer, ZPO, § 328 Rdnr. 285; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 37; ders., 37 AmJCompL, 301 (330); Schack, Internationales ZivilverfahrensR, Rdnr. 1022; Martiny, Hdb. des Internationalen ZivilverfahrensR, Rdnr. 323; Schütze, in: Festschr. f. Nagel, S. 400; Böhmer, NJW 1990, 3049 (3051); für das österreichische Recht: Matscher, in: Festschr. f. Reimer, S. 33, 35 f.). Demnach bestehen keine Bedenken, daß das BerGer. die im Urteil des Superior Court ausgewiesenen Beträge für bereits entstandene und zukünftig entstehende Behandlungs- beziehungsweise Unterbringungskosten, Nichtvermögensschäden und „punitive damages" einer getrennten ordre public-Kontrolle unterzogen hat.

Ob eine Teilanerkennung auch hinsichtlich eines einheitlichen materiellen Anspruchs zulässig ist (bejahend Schack, Internationales ZivilverfahrensR, Rdnrn. 869 a. E., 1026; Stiefel-Stürner, VersR 1987, 829 (842 f.); Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 123, 156; ders., 37 AmJCompL

301 (330); Siehr, RiW 1991, 705 (709); vgl. auch Stürner-Stadler, IPRax 1990, 157 (159); Geimer-Schütze, Internationale Urteilsanerkennung Bd. I/2, § 214 , 4 ; Zöller-Geimer, ZPO, § 328 Rdnr. 169; verneinend LG Berlin, RiW 1989, 988 (990); für das österreichische Recht: Matscher, in: Festschr. f. Reimer, S. 38; für das Schweizer Recht: Kaufmann=Kohler, WiuR, Jahrgang 35, 211), braucht nach dem vom Senat gefundenen Ergebnis nicht entschieden zu werden.

B. Zur Revision des Kl.

I. Der Superior Court hat dem Kl. für Nichtvermögensschäden in Form erlittener Ängste, Schmerzen und Leiden einen Betrag in Höhe von 200000 US-Dollar zuerkannt. Nach den unangefochtenen Feststellungen des BerGer. beruht das kalifornische Urteil insoweit auf der Überzeugung, der Kl. sei durch das Verhalten des Bekl. in seiner seelisch-sexuellen und sozialen Entwicklung gestört, was letztlich dazu geführt habe, daß er von zu Hause zu entfliehen versuchte und ein Auto gestohlen habe, weshalb er inhaftiert worden sei.

Das BerGer. ist der Ansicht, nach deutschen Verhältnissen sei angesichts der vorliegenden Umstände äußerstenfalls ein Schmerzensgeld von 30000 DM gerechtfertigt. Die oberste Grenze dessen, was nach inländischen Verhältnissen für ein ausländisches Urteil noch erträglich erscheine, liege unter Berücksichtigung der daneben zuerkannten Kosten künftiger Heilbehandlung und Unterbringung bei 120000 DM (70000 US-Dollar). Nur in dieser Höhe könne wegen der Nichtvermögensschäden dem Urteil des Superior Court die Vollstreckbarkeit verliehen werden. Hinsichtlich des übersteigenden Betrages sei das Urteil nicht mit dem ordre public zu vereinbaren; denn es sprenge jeden vernünftigen Rahmen und lasse unberücksichtigt, daß der Bekl. wegen seiner Taten auch strafrechtlich zur Verantwortung gezogen worden sei.

Diese Ausführungen halten einer rechtlichen Überprüfung nicht stand. Mit der vom Superior Court ausgesprochenen Verurteilung des Bekl. zur Zahlung von 200000 US-Dollar soll ein von den getrennt zuerkannten „punitive damages" zu unterscheidender Ausgleich immaterieller Schäden erfolgen (vgl. hierzu The American Law Institute, S. 199 f.; Madden, Products Liability, S. 313 f., 324 f., 328 f.; Kionka, Torts in a Nutshell, S. 357 f.; Stiefel-Stürner, VersR 1987, 829 (843); Schütze, in: Festschr. f. Nagel, S. 396; Siehr, RiW 1991, 705 (707)). Dem kann im deutschen Schadensersatzrecht mit einem Schmerzensgeldanspruch gem. § 847 BGB annähernd Rechnung getragen werden. Sogar wenn der dem Superior Court zur Abgeltung der Nichtvermögensschäden in Ansatz gebrachte Betrag um ein Vielfaches über der Höhe desjenigen liegt, was nach deutschen Vorstellungen bei den zugrunde gelegten tatsächlichen Umständen als Schmerzensgeld in Betracht gekommen wäre, ist der Teil des Urteils, mit dem der Bekl. zur Zahlung von 200000 US-Dollar für immaterielle Schäden des Kl. verurteilt wurde, hier dennoch anzuerkennen.

1. Wie ausgeführt (o. A IV 3 b), liegt ein Verstoß gegen §§ 723 II , 328 I Nr. 4 ZPO nur vor, wenn das Ergebnis der Anwendung ausländischen Rechts den Grundgedanken deutscher Regelungen und der in ihnen enthaltenen Gerechtigkeitsvorstellungen so sehr widerspricht, daß es nach inländischen Vorstellungen untragbar erscheint. Der materielle ordre public im Sinne dieser Vorschriften unterliegt insoweit einem abgestuften Prüfungsmaßstab, als es auch entscheidend auf Ausmaß und Bedeutung der Inlandsbeziehung des Sachverhalts ankommt, den das in der Bundesrepublik zu vollstreckende Urteil regelt sowie möglicherweise im Ergebnis umgestalten würde (Martiny, Hdb. des Internationalen ZivilverfahrensR, Rdnrn. 181, 1014, 1028 f.; Schack, Internationales ZivilverfahrensR, Rdnr. 867; Geimer, Internationales ZivilprozeßR, Rdnr. 2265; vgl. auch BGHZ 98, 70 (74) = NJW 1986, 3027; OLG Bamberg, RiW 1991, 541 (542); OLG Frankfurt, RiW 1991, 417 (418); Zöller-Geimer, ZPO, § 328 Rdnr. 167; für das Schweizer Recht: Drolshammer-Schärer, SJZ 1986, 309 (312); Zivilgericht Basel, Basler JurMitt 1991, 31 (34)). Das gilt nicht nur für das Eingreifen des inländischen kollisionsrechtlichen ordre public-Vorbehalts nach Art. 6 public-Vorbehaltsinreichend starke Inlandsbeziehung voraussetzt (Amtl. Begründung der Bundesregierung, S. 43; Beschlußempfehlung und Bericht des Rechtsausschusses des Deutschen Bundestages, BT-Dr 10/5632, S. 40; vgl. auch BVerfGE 31, 58 (77)), sondern erst recht für die Frage, ob ein vom zuständigen ausländischen Gericht ergangenes Urteil in Deutschland zu vollstrecken ist. In diesem Falle hat der inländische Richter keine eigene Entscheidung über die materiellrechtliche Grundlage des ausländischen Spruchs oder die Höhe einer zuerkannten Entschädigung mehr zu fällen. Für ihn ist im Hinblick auf den ordre public allein maßgeblich, ob das Ergebnis der Anerkennung und Vollstreckung des ausländischen Urteilsspruchs für das Inland noch tragbar erscheint. Das kann auch dann zutreffen, wenn das ausländische Erkenntnis mit wesentlichen deutschen Wertungen oder sogar zwingenden inländischen Rechtsnormen (beispielsweise Art. 38 EGBGB, s. o. A IV 3a bb) nicht vereinbar ist, sofern der Haftungsfall - bis auf in Deutschland belegenes Schuldnervermögen - vollständig in die ausländische Rechtsordnung eingebettet ist.

Im vorliegenden Falle hat das Urteil des Superior Court den Schadensersatzanspruch eines US-amerikanischen Staatsangehörigen gegen einen anderen zum Gegenstand. Der Anspruch findet seine Begründung in unerlaubten Handlungen, die der Bekl. an seinem zur Tatzeit allein in den USA gelegenen Wohnsitz gegenüber dem Kl. begangen hat. Ein Inlandsbezug besteht lediglich insoweit, als der Bekl. auch über die deutsche Staatsangehörigkeit verfügt und nach seiner strafrechtlichen Verurteilung sowie nach Rechtshängigkeit der Schadensersatzklage des Kl. seinen Aufenthalt in die Bundesrepublik Deutschland verlegte.

2. In jedem Falle einer Vollstreckung in inländisches Vermögen sind allerdings die Grundrechte zu wahren (vgl. § 328 I Nr. 4 ZPO und BVerfGE 52, 214 (219) = NJW 1979, 2607). Die Überprüfung, ob durch ein ausländisches Urteil, das nach deutschen Maßstäben weit überhöhte Schadensersatzbeträge zuerkennt, der materielle ordre public verletzt ist, muß sich am Grundsatz der Verhältnismäßigkeit ausrichten (oben A V 3 e aa). Die Grenze, bei deren Überschreiten demnach ein im Ausland gewährter Schadensersatzanspruch nicht mehr anerkannt werden kann, ist in jedem Einzelfalle gesondert zu bestimmen. Soweit in der Literatur für die Vollstreckbarerklärung US-amerikanischer Urteile aufgrund Produzentenhaftung gegen deutsche Firmen eine formelhafte Typisierung der Verhältnismäßigkeitsprüfung vorgeschlagen wird (Stiefel-Stürner, VersR 1987, 829 (840, 844); vgl. dagegen Martiny, Hdb. des Internationalen ZivilverfahrensR, Rdnr. 1046; Zekoll, US-amerikanisches ProdukthaftpflichtR, S. 40; ders., RiW 1990, 302 (305)), kann sie jedenfalls für den hier zu entscheidenden Sachverhalt nicht gelten. Jene Fälle unterscheiden sich im allgemeinen schon durch ihren weitaus stärkeren Inlandsbezug (dazu o. 1) maßgeblich vom vorliegenden Streit-fall.

Umfang und Gewicht des Inlandsbezuges prägen zugleich die für die Verhältnismäßigkeit maßgebenden Wertungen mit. Die deutsche Rechtsordnung nimmt in gewissen Grenzen auch abweichende fremde Wertmaßstäbe hin, die einen ausländischen Richterspruch bestimmt haben. Jedenfalls dann, wenn beide Parteien US-amerikanische Staatsbürger sind, der Tatort in den USA gelegen ist und zudem der Verurteilte zur Zeit der Tat und des Beginns der Rechtshängigkeit des amerikanischen Schadensersatzprozesses dauernden Wohnsitz in Amerika hatte, liegt sogar unter Berücksichtigung der gleichzeitig vorhandenen deutschen



Staatsangehörigkeit des Verurteilten ein dermaßen geringer Bezug zum Inland vor, daß die im Rahmen des § 328 I Nr. 4 ZPO vorzunehmende Verhältnismäßigkeitsprüfung die nach amerikanischem Recht geltenden Maßstäbe weitestgehend zu respektieren hat. Unter diesen Voraussetzungen überwiegt das Interesse des Opfers, volle Wiedergutmachung für die erlittene Lebensbeeinträchtigung sowie Genugtuung nach den für seine Heimat maßgeblichen Anschauungen und Lebensumständen zu erlangen. Der Schädiger muß diese Maßstäbe gegen sich gelten lassen.

Das trifft um so mehr zu, wenn - wie im Streitfall - die zuerkannte Schadensersatzforderung die Sanktion für ein vorsätzliches, eine Straftat darstellendes Verhalten des Schädigers darstellt, dessen Konsequenzen nach US-amerikanischen Recht für ihn bei der Tatbegehung absehbar gewesen sein müssen. Gewichtige inländische allgemeine Interessen werden dann nicht berührt.

Anhaltspunkte dafür, daß der dem Kl. für seinen immateriellen Schaden zugesprochene Betrag sich nicht mehr im Rahmen dessen bewegt, was nach US-amerikanischem, insbesondere kalifornischem Recht, zur Abgeltung sogenannter „noneconomic damages" üblich ist, liegen nicht vor (vgl. hierzu The American Law Institute, S. 202 f., 220, 223; Stiefel-Stürner, VersR 1987, 229 (843 f.); Schubert, PHI 1988, 38 (39); Sabella, VersR 1990, 1186 (1190) jeweils m. w. Nachw.).

3. Ob anderes gelten müßte, wenn die dem Kl. zuerkannten Schadensersatzbeträge zu der finanziellen Leistungskraft des Bekl. außer jedem Verhältnis stünden, kann offenbleiben. Dazu behauptet der Bekl. selbst nichts. Aus den Feststellungen zu seiner Vermögenssituation, die im Protokoll des Superior Court vom 23. 4. 1985 enthalten sind, ergeben sich dafür keine Anhaltspunkte.

N.

**Anm. d. Schriftltg.:**

Zur Problematik von „punitive damages" - Klagen s. den Betrag von Koch, NJW 1992, 3073; OLG Düsseldorf, NJW 1992, 3110 sowie OLG München, NJW 1992, 3113 (sämtlich in diesem Heft).

---

*NJW 1992, 3096*

*NJW-RR 1993, 152(Ls.)*

*EuZW 1992, 705*

*VersR 1992, 1281*

*LM H.2/1993, §328ZPONr.38/390Kronke*

*EuZW 1992, 705Deutsch*

*JZ 1993, 266*

*JZ 1993, 266Deutsch*

†

# Translation

..........

**8. An American judgment for punitive damages of a not insignificant amount, which, in addition to being awarded for the compensation of actual damage and intangible damage, is awarded as a lump sum, can generally not be declared enforceable in Germany.**

...........

V. The appeal is successful to the extent that the Superior Court's judgment in favor of the Plaintiff determined it to be entitled to a claim for exemplary and punitive damages in the amount of $400,000.

In this context, the appellate court was of the opinion that the judgment could only be enforceable to the extent that this sum covered attorneys' fees; however, the amount of the attorney's fees also had to be evaluated to see whether or not it violated public policy. In the appellate court's view, this meant that not the figure of 40 % of the judgment amount stated in the Superior Court's judgment, but rather only 25 % of the judgment amount could be recognized. As a result, a part of the punitive damages in the amount of $ 55,065 should be declared enforceable.

These comments do not stand up to the attack by the Defendant in his appeal. An American judgment for punitive damages of a not insignificant amount, which, in addition to being awarded for the compensation of actual damage and intangible damage, is awarded as a lump sum, can generally not be declared enforceable in Germany.

1. Under the laws of most states in the United States including California, punitive or exemplary damages are monies awarded in addition to damages which are purely compensatory in nature, if the offender's general liability is aggravated by deliberate, malicious or reckless misconduct **(citations omitted)**. As of late, a consciously negligent and blatant disregard of the security interests of the general public is regarded as sufficient **(citations omitted)**. Generally, the imposition of a penalty is a matter for the court's discretion **(citations omitted)**. The imposition has four main purposes **(citations omitted)**: The offender should be punished for his callous behavior; at the same time it is intended to make possible acts of revenge by the victim superfluous. The offender and

the general public should be deterred preventatively from future socially-detrimental behavior where the simple risk of having to pay compensatory damages is not sufficient to influence behavior. In order to strengthen the legal system in general, an injured person should be rewarded if his efforts lead to the enforcement of the law. After all, the victim should receive something in addition where the removal of the damage is felt to be inadequate; in this connection, among other things, a lack of social security can have an effect **(citations omitted)**; in this way, compensation for the plaintiff's non-recoverable, extra-judicial costs can be considered (see above III 4 b).

The amount of the sums awarded is a matter for the court's discretion. It usually takes into account the nature of the injurious act, type and extent of the plaintiff's impairment **(citations omitted)**, as well as the financial situation of the tortfeasor **(citations omitted)**. In some cases, the amount fixed is many times more than the other damage to be compensated **(citations omitted)**. Now and then, no differentiation is made between damages awarded for pain and suffering and punitive damages (unlike in this case) so that a single sum for the compensation of damage other than actual damage also contains a component for pain and suffering **(citations omitted)**. Even damages for loss of earnings are not always separately itemized in jury decisions. **(citations omitted)**.

Where several persons are injured by a single act, generally each victim can be awarded punitive damages in full on his own **(citations omitted)**.

2. On this basis, the appellate court correctly assumed that the order that the Defendant should pay punitive damages was not a criminal punishment, which § 722 and § 723 of the German Code of Civil Procedure (*Zivilprozessordnung*) would straightaway prevent from being enforceable, but rather an order relating to a civil claim. In this case, it is not necessary to decide whether the question should be determined according to foreign law alone or according to German law alone or in the same way according to both legal systems **(citations omitted)**. The matter can be assumed to be civil both from the US point of view and from the German point of view.

The American legal system treats punitive damages as belonging to civil law irrespective of their punitive function and their function as a deterrent **(citations omitted)**. The US Supreme Court used this to justify its finding that punitive damages do not violate the prohibition on double punishment **(citations omitted)**.

The German view on this is no different. Accordingly, judgments in civil law matters, in any case judgments concerning the existence or non-existence of private law rights and legal relationships of (§ 13 of the Judicature Act [*Gerichtsverfassungsgesetz*]), two private parties [co-equal parties] **(citations omitted)**, are capable of being recognized. In this sense, punitive damages are in principle a special kind of damages between private persons irrespective of the policy considerations which led to their introduction. They are awarded at the request of one party. In any event, as in the present case, when the punitive damages have to be paid to the injured person himself, the matter will be a civil law matter **(citations omitted)**. The question of whether the situation would be different if the punitive damages were paid to the state or another institution can be left open

3. The enforceability of an order to pay punitive damages will, however, as a rule be prevented by public policy considerations pursuant to § 723 II 2 and § 328 I No. 4 of the German Code of Civil Procedure **(citations omitted)**

a) The modern German civil law system provides for the compensation of damage as the legal consequence of a tort **(citation omitted)**, but does not provide for an enrichment of the injured person **(citation omitted)**. It was intended to preclude private criminal charges which had previously been allowed, in particular those for libel **(citations omitted)**. This applies irrespective of whether the compensation claim is brought before the civil courts or in supplementary proceedings before a criminal court **(citation omitted)**. Punishment and – within the context of what is appropriate for the guilt – and deterrence are possible goals of a criminal penalty **(citation omitted)**, which flows to the state as a pecuniary penalty; they are not, however, the goals of civil law.

The concept that the plaintiff as a victim should receive a benefit is explicable if private law is understood as a system of life with a general preventative effect **(citation omitted)**: In the place of the state, an individual acts as a "private public prosecutor" **(citation omitted)**. German legal opinion regards this as incompatible with the state's monopoly to inflict punishment and the special procedural guarantees introduced in relation thereto. It is true that German law permits punishment to a certain extent in private law in that it recognizes contractual penalties as a legal institution **(citations omitted)**. However, this presupposes that the parties have entered into a legal transaction whereby they agree to the same and is thus of no significance for a description of the German principles in relation to tortious liability.

It is not possible to compare the punitive and deterrent function of punitive damages, which American law sees as justified in the interests of the general public, in particular with the "satisfaction function" ("*Genugtuungsfunktion*"), which according to German principles has to be taken into account in the measure of damages for pain and suffering pursuant to § 847 of the German Civil Code (*Bürgerliches Gesetzbuch*) and in the measure of damages for violations of the basic right to the free development of one's personality **(citations omitted)**. On the one hand, when measuring damages for pain and suffering not this function, but a consideration of the scope and extent of the impairment (degree and duration of pain, suffering and disfigurement) is in the foreground; the order of priority of the other circumstances depend on the peculiarities of the specific case **(citations omitted)**. On the other hand, its "satisfaction function" does not give damages for pain and suffering a direct penal character **(citations omitted)**. Moreover, the "satisfaction function" cannot be separated from the compensatory function ("*Ausgleichsfunktion*") that exists simultaneously in relation to a claim for pain and suffering **(citation omitted)** and which always expresses a certain personal relationship between the tortfeasor and the injured person that is a result of the event causing the damage **(citations omitted)**. This also does not change if the "satisfaction function" assumes greater importance in the measurement of damages for pain and suffering in a specific case because, due to the impossibility of compensating intangible damage, only symbolic compensation can be made **(citations omitted)**.

Consequently, the "satisfaction function" of a claim for damages for pain and suffering under German law can only be used to ascertain public policy (which must be taken into account pursuant to § 328 I No. 4 of the German Code of Civil Procedure) if the punitive damages are also intended to compensate intangible damage **(citations omitted)**. In the case in dispute here, this has already occurred without restriction through the special award of compensation for pain and suffering. There is no evidence that the Plaintiff requires satisfaction beyond this even if one fully considers the great importance which he alleges is attached to physical integrity in the United States.

b) The situation could possibly be different where the imposition of punitive damages is intended to provide lump sum compensation for the remaining economic disadvantages, which have not been compensated separately or which are difficult to prove, or intended to recover profits derived by the tortfeasor from his wrongdoing **(citations omitted)**. In

this connection, the shifting of litigation costs or other non-recoverable damages for delay to the Defendant can be considered **(citations omitted)**.

However, in this case neither the judgment nor the court transcript from the Superior Court contain reliable indications that the award of punitive damages was intended to cover the whole burden of the litigation costs for the Plaintiff. The percentage of 40 %, which was awarded to his attorney as remuneration, relates to all of the damages actually paid irrespective of how the law classifies them. The itemized amounts for the compensation of healing costs as well as damages for pain and suffering are also not so closely and carefully calculated that it is not possible that they might already include a share of costs. The decision of a court – above all a jury – to give compensation for costs, can lead in the United States generally to increased compensatory damages **(citations omitted)**.

The appellate court did not in actual fact determine what the considerations were which influenced the Superior Court in its decision in respect of punitive damages. Instead it followed a suggestion from Stiefel and Stürner **(citations omitted)** who want to attribute this kind of compensatory function as a rule to American judgments for punitive damages and give them limited recognition in Germany.

c) This kind of generalization cannot be supported by either the actual findings of the appellate court or the Plaintiff's allegations.

There are no statistics which show how often American courts in awarding punitive damages intend to, among other things, release the Plaintiff from his entire burden of extra-judicial costs **(citations omitted)**. Considerations of this kind are not mentioned at all in older publications **(citations omitted)**. Only as an exception do even more recent decisions mention a motive of such a kind **(citations omitted)**. In the State of New York only punishment and deterrence are mentioned, for example, as the purposes of punitive damages **(citations omitted)**.

Without clear and comprehensible indications from the foreign court itself, the German court which is being requested to enforce a judgment will be prevented from exploring the actual motives in a specific case. As stated, this kind of American judgment can as a rule be based on several different motives alone or in connection with others, if it actually complies with recognized foreign legal principles. In order to be able to look beyond the

official reasoning for a judgment to ascertain its content, a domestic judge would have to place himself in the position of the foreign judge. As is apparent from § 723 I of the German Code of Civil Procedure, he has no authority to do this. In addition, this kind of expansion of a judgment would have to be based on presumptions and thus jeopardize legal certainty.

Nor does the Senate consider it permissible to always make the assumption most "beneficial" to the foreign judgment, i.e. that it fulfilled the compensatory function as completely as possible **(citations omitted)**. This would not correspond with judicial reality since this approach was irrelevant for the presiding judge in the foreign country. In addition, such an approach would lead to a one-sided betterment of the creditor in relation to the debtor without taking into account the actual content of the foreign judgment and thus to a possible extension of liability. This kind of approach is not even required due to consideration for the specific foreign sovereign act.

The issue of the divisibility of the recognition of a foreign judgment, which the Senate also approved of in principle, is irrelevant for this. Divisibility can only then be considered if the foreign judgment, which provides for a single legal consequence and whose content violates public policy at least partially and perhaps even fully, itself contains sufficient indications for a safe division into legal consequences which are acceptable for the German legal system and those that are irreconcilable with it. To this extent the presiding German judge is not permitted to make a division using his discretion.

d) Instead, in those cases a decision should be made on the basis of the focus on the non-divisible legal consequences of the foreign judgment as a single entity. In this connection, priority in assessment must be given to the circumstances which are according to the judgment relevant in a specific case. If the judgment does not reveal what they are (as is here the case), the underlying foreign legal institution must be considered. Then what is decisive are the requirements and/or special legal consequences that as a rule typically define a legal institution which is viewed critically taking into account German public policy.

Looked at in this way, the elements which define American punitive damages are punishment and deterrence **(citations omitted)**. Punitive damages derive historically from these elements **(citations omitted)**. The relevant prerequisite is only the increase in

culpability. The fact that the injured person has no legal claim indicates that his private interests are of secondary importance. Since in addition there is no measurable general relationship between the amounts to be assessed and the damage suffered, the compensation concept recedes **(citations omitted)**.

e) If one proceeds on this assumption, the enforcement of a lump sum punitive damages award of a not insignificant amount is obviously irreconcilable with the essential principles of German law.

aa) One of the essential principles of German law is the proportionality principle which follows from the principle of a state governed by the rule of law. The proportionality principle also applies in the civil law system. In civil law the proportionality principle is taken into account inter alia by the compensation concept in the case of damages. As a rule, the proper goal of civil proceedings relating to an illegal interference is to compensate the persons directly involved financially for the interference. The procedural and evidentiary rules of the proceedings are designed to allow the parties a decisive influence on the result. Similar rules govern American civil proceedings including the parties' ability to determine the relevant facts and the possibility of an award of a default judgment.

On the other hand, the German view is that sanctions which help punish and deter – thus help protect the legal system in general – fall in principle within the state's monopoly to punish. The state exercises this monopoly in the public interest in a special kind of proceedings in which on the one hand official investigations are supposed to provide a greater guarantee that a decision on the merits is correct and on the other hand provide stronger protection for the rights of the accused. From the local [German] perspective it appears intolerable to impose a significant financial payment which does not serve to compensate damage, but which is essentially measured according to the interests of the general public and which can possibly co-exist with a criminal penalty for the same offence.

This is the result in the current case. The amount of the punitive damages awarded is higher than the sum of all compensatory amounts awarded. Even the attorneys' fees in relation hereto could only make up a third of the punitive damages. There is nothing which indicates that there is other damage to be compensated. Then enforcement would affect the Defendant excessively.

bb) Punitive damages awards made at the discretion of the courts where the punitive damages did not have a fixed relationship to the damage and where the damage was in part extremely high, have resulted in a sharp increase in the United States in the overall economic burden of damages, which now borders on the limits of a calculable and insurable risk.

From the German perspective, the existence of motives foreign to civil law and the lack of sufficiently certain and reliable limits if such judgments were recognized would suffice to disrupt all of the national criteria for liability. Foreign creditors could use such a title to gain far greater access to a debtor's domestic assets than domestic creditors who may have suffered considerably greater impairment. This kind of betterment of only those creditors from the few countries in the world which award punitive damages vis-à-vis all the others is not justified for reasons which deserve the protection of the German legal system. Thus, alone the enforcement of a claim to lump sum punitive damages – that goes beyond the compensation of actual damage and intangible damage – would be an intolerable result so that even this relatively slight German connection to the dispute would conflict with awarding the relief sought.

cc) Thus, enforcement in Germany is precluded to this extent. There is no need to decide whether the enforcement of damages would violate the German public order for other reasons. In particular, it is not necessary to decide whether the few determinable requirements that there are for an award of punitive damages and the amount of the punitive damages must be measured according to Art. 103 II of the Basic Law (*Grundgesetz*). Nor is it necessary to decide whether an award of punitive damages in addition to a criminal sentence falls under the prohibition of multiple punishments from the German point of view.

I, Dr. Donna Goessler, LL.M., of Im Vogelsang 12, 53179 Bonn, Germany, confirm that this English translation is a true and correct translation of the original German judgment.