Westlaw.



United States Court of Appeals,
Eighth Circuit.
Stanley M. PARISER, M.D., Appellant,
v.
CHRISTIAN HEALTH CARE SYSTEMS, INC.,
Appellee.
**No. 86-1145.**

Submitted Jan. 15, 1987.
Decided April 16, 1987.
Rehearing Denied May 13, 1987.

Physician whose hospital admitting privileges had been suspended brought action against operator of hospital for breach of contract, intentional infliction of emotional distress, antitrust violations, and deprivation of property without due process. The United States District Court for the Eastern District of Missouri, Stephen Nathaniel Limbaugh, J., 627 F.Supp. 39, dismissed due process count for failure to state a claim and, after nonjury trial, rejected remaining claims, and also refused permission to amend complaint, and physician appealed. The Court of Appeals, Arnold, Circuit Judge, held that: (1) member of executive committee which ordered suspension was biased so that his participation was improper under Illinois law, resulting in breach of contract; (2) there was no state action supporting due process claims; (3) there was no clear error in finding that hospital's action had no substantial effect on interstate commerce so as to support Sherman Anti-Trust Act claim; and (4) posttrial motion to amend complaint was properly denied.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Health 273**
198Hk273
(Formerly 204k6 Hospitals)
Fact that physician whose hospital admitting privileges were suspended and member of executive committee which ordered the suspension were the only two internal medicine specialists in two-county area did not establish that the committee member was biased against the physician who was suspended so as to result in the suspension being improper under Illinois law, particularly in light of evidence that the committee member was not in private practice at the time of the decision and that region could support two internal medicine specialists.

**[2] Health 273**
198Hk273
(Formerly 204k6 Hospitals)
Member of hospital executive committee who participated in suspension of physician's hospital admitting privileges was biased so that his participation made the proceedings improper under Illinois law and resulted in breach of contract, where such member had filed the charges which the committee meeting was originally called to consider, even though the committee ultimately based the suspension on other charges.

**[3] Civil Rights 1396**
78k1396
(Formerly 78k236, 78k13.12(8))
Facts that hospital received public funds, enjoyed tax benefits, was subject to pervasive governmental regulation, had a virtual monopoly in its market area, and performed a public function were insufficient to establish state action as required for physician, whose hospital admitting privileges were suspended, to state claim for deprivation of property without due process, where complaint identified no nexus between the various forms of government involvement and the hospital's decision to suspend physician's privileges. 42 U.S.C.A. § 1983; U.S.C.A. Const.Amends. 5, 14.

**[4] Commerce 62.14**
83k62.14
Finding that hospital's suspension of physician's hospital admitting privileges had no substantial effect on interstate commerce, and thus was outside of the jurisdictional reach of the Sherman Anti-Trust Act, was not clearly erroneous, where about 98% of its patients were Illinois residents. Sherman Anti-Trust Act, § § 1, 2, 15 U.S.C.A. § § 1, 2.

**[5] Federal Civil Procedure 837**
170Ak837
In action against operator of hospital arising from suspension of physician's hospital admitting privileges, district court properly denied physician's posttrial motion to amend complaint to include claim for tortious interference with contractual relations, even though physician introduced some evidence which would be relevant to such a claim, where the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

evidence was also relevant to physician's other claims and there was nothing to indicate that hospital operator consented to trial of such a claim. Fed.Rules Civ.Proc.Rule 15(b), 28 U.S.C.A.

***1249** Anthony J. Sestric, St. Louis, Mo., for appellant.

Ed Brzezinski, Jr., Clayton, Mo., for appellee.

Before McMILLIAN, ARNOLD and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

This case involves claims arising from the October 1982 suspension of the medical staff privileges of the plaintiff, Dr. Stanley M. Pariser, at the Southern Medical Center in Cairo, Illinois, a hospital managed by defendant Christian Health Care Systems, Inc., which is a Missouri corporation. Pariser brought suit in the Eastern District of Missouri, seeking damages for breach of contract, for intentional infliction of emotional distress, for violations of § § 1 and 2 of the Sherman Act, and for deprivation of property without due process. The District Court dismissed the due-process count for failure to state a claim, and then, after a nonjury trial, rejected Pariser's remaining claims, 627 F.Supp. 39. The Court also refused Pariser permission to amend his complaint after the trial to add a claim for tortious interference with contractual relations. Pariser appeals, except as to the emotional-distress claim. We reverse as to the breach-of-contract claim, but affirm as to the remaining claims.

I.

Dr. Pariser was graduated from medical school in 1949. After a three-year residency, Pariser spent the next 28 years, 1952 to 1980, practicing medicine at three Veterans' Administration Hospitals, at which point he retired from federal service. Pariser is Board-certified in Internal Medicine, and Board-qualified in Cardiology. He is licensed to practice medicine in Missouri, Illinois, and Ohio, but has not practiced outside Illinois since 1965.

***1250** In 1980, Pariser took a position as a probationary staff physician at the Anna Mental Health Center (Anna), a state mental hospital in Anna, Illinois. As staff physician at Anna, Pariser did not have the privilege of admitting his own private patients to the hospital, but he did have the privilege to admit patients to the hospital and treat them there on behalf of the State of Illinois. At the end of Pariser's six-month probationary period, he was denied a permanent position on the hospital's staff; in essence, he was fired.

In or around March 1981, Pariser moved to Cairo, Illinois, where he was employed by Community Health Services, Inc., a non-profit, federally funded health-care provider that services Pulaski and Alexander counties in southern Illinois. As a condition of his employment, in March 1981, Pariser applied for and received medical hospital privileges at the Southern Medical Center. In the spring of 1982, Pariser left Community Health Services and established a private practice of medicine in Cairo. In March 1982, Southern Medical Center renewed Pariser's hospital admitting privileges.

In September 1982, Ben Felton, an employee of Christian Health Care Systems, became hospital administrator of Southern Medical Center. Upon assuming the job, Felton reviewed the hospital's by-laws and staff records, and evaluated the quality of the hospital's personnel. Among other things, Felton discovered that one of the seven or so physicians on the medical staff was not licensed to practice medicine in Illinois; this physician was summarily dismissed from the staff.

In the course of further investigation and evaluation of physician credentials, Felton made the discovery that led to Pariser's suspension. The application for admitting privileges at the Southern Medical Center contains a section concerning disciplinary actions that may have been taken against the applicant in relation to the practice of medicine. *Inter alia,* there are questions that ask whether the applicant has ever (1) been denied membership on a hospital medical staff; (2) had his or her privileges at any hospital suspended, revoked, or not renewed; or (3) been denied membership or renewal of membership or subjected to disciplinary action in any medical organization. On his application, Pariser answered no to each of the questions. A paragraph at the end of the application states that all information provided is true to the best of the applicant's knowledge and belief, and that the applicant understands that significant misstatements or omissions are cause for denial of appointment or summary dismissal from the hospital staff. In reviewing Pariser's credentials, Felton contacted Dr. Wayne Isaacs, the administrator of Anna Mental Health Center during Pariser's employment there. Isaacs informed Felton that at the end of his probationary period at Anna, Pariser had been denied membership on the staff and his privileges had been cancelled.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

On October 22, 1982, the executive committee of the medical staff held a meeting. The meeting had originally been called to discuss several charges made by Dr. Victor Surpris concerning Pariser's competence and his cooperation with other doctors and the nursing staff. See P.Ex. 7. Felton, upon learning from Isaacs the circumstances of Pariser's departure from Anna, added the issue of the accuracy of Pariser's application to the agenda for the meeting. [FN1] The members of the executive committee present at the meeting were Surpris and Drs. Charles Yarbrough and Crisostomo Lozada. Lozada was not a regular member of the executive committee, but appeared as a replacement for Dr. Gemo Wong, the head of the medical staff at Southern Medical Center, who recused himself ***1251** because of past differences with Pariser. Also present at the meeting were Felton and Ms. Pat Burt, Supervisor of Medical Records at the hospital, who took the minutes of the meeting. At the meeting, the committee first reviewed a letter from Surpris containing his charges against Pariser. Felton then presented his charge that Pariser had lied on his application, and asked the committee to decide whether it wished to pursue Surpris's charges or instead wished to suspend Pariser's privileges based on the inaccuracies in Pariser's application. The doctors on the committee chose the latter course, voting to suspend Pariser's privileges summarily pending submission and review of a new application from Pariser.

> FN1. The District Court's opinion, 627 F.Supp. 39, 42 (E.D.Mo.1986), states that the meeting was called not to discuss Surpris's charges, but to discuss Felton's charges concerning Pariser's application. However, all of the evidence about the meeting indicates that the meeting was originally called to discuss Surpris's charges, and that, in fact, these charges were reviewed before Felton's charges were discussed. See P.Ex. 8 (Minutes of October 22, 1982 Executive Committee Meeting); Tr. III:15-17, 19-23 (Testimony of defense witness Ben Felton). Further, defense counsel acknowledged that this was the case in oral argument before this Court.

Pariser was informed of the executive committee's decision later that day. In response, Pariser wrote the committee a letter in which he acknowledged that he had been "fired" from Anna, but contended that his application was nonetheless accurate, and requested reinstatement. P.Ex. 10. While the hospital's by-laws provided that Pariser was entitled to a hearing before the executive committee, he did not request a hearing. He also did not submit the new application the committee requested. Pariser's privileges were never reinstated. Though he attempted for some time to continue his private practice without hospital admitting privileges, he eventually ceased practice.

Pariser filed this action in February 1984. In July 1984, the District Court dismissed Pariser's claim that the termination of his privileges violated his procedural due-process rights on the ground that no state action was involved. After a three-day bench trial, the District Court rejected each of his remaining claims. The Court concluded that there had been no breach of contract because the executive committee's actions were consistent with the hospital by-laws and Pariser's contract; that Pariser's Sherman Act claims failed because the defendant's activities were not in and did not substantially affect interstate commerce; and that Pariser's intentional-infliction-of-emotional-distress claim failed because the defendant's actions were not extreme or outrageous. The Court also denied Pariser's post-trial motion to amend his complaint to add a claim for tortious interference with contractual relations.

II.

One of the bases for Pariser's contract claim was his argument that the decision to suspend his privileges was rendered by a biased tribunal. The District Court correctly stated the Illinois law governing this question. First, a hospital's by-laws are an enforceable part of the contract between the hospital and a physician with privileges at the hospital, and Illinois courts will annul a suspension or revocation of a physician's privileges that is not accomplished in accordance with the by-laws. *Nagib v. St. Therese Hospital, Inc.*, 41 Ill.App.3d 970, 355 N.E.2d 211, 213 (1976); *Maimon v. Sisters of the Third Order of St. Francis*, 120 Ill.App.3d 1090, 76 Ill.Dec. 517, 519, 458 N.E.2d 1317, 1319 (1983). But adherence to the by-laws is not all that is required; partiality or bias by members of the body that expels the physician, even where the by-laws are followed, renders the expulsion invalid. *Maimon*, 458 N.E.2d at 1319-20, 76 Ill.Dec. at 519-20; *Jain v. Northwest Community Hospital*, 67 Ill.App.3d 420, 24 Ill.Dec. 341, 346-47, 385 N.E.2d 108, 113-14 (1978). See also *Van Daele v. Vinci*, 51 Ill.2d 389, 282 N.E.2d 728, 731-32, *cert. denied*, 409 U.S. 1007, 93 S.Ct. 438, 34 L.Ed.2d 300 (1972).

[1] Pariser argues that Drs. Lozada and Surpris were biased against him. Pariser maintains that Lozada was biased because he was the only other internal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

medicine specialist in the Pulaski County/Alexander County area. However, this simple fact, without more, does not compel the conclusion that there was sufficient economic competition between Lozada and Pariser to render Lozada biased. Instead, we think there was ample evidence in the record from which the District Court could have concluded that their economic interests were not particularly adverse. For example, Lozada was a salaried employee of Community Health Services and was not ***1252** in private practice at the time of the decision, though he entered it later; further, there was also testimony that the region could support two internal-medicine specialists, and that, with only Lozada in practice, the region was understaffed in internal medicine. Tr. I:38 (Testimony of plaintiff's witness Jack Tallman).

[2] On the other hand, we think it clear that Surpris was biased and should not have participated in the suspension decision. Surpris, as we have noted above, filed the charges concerning Pariser's competence and his relations with co-workers which the executive committee meeting was originally called to consider, and which were, in fact, the first matter discussed at the meeting. While the committee did not ultimately act upon Surpris's charges, by accepting Felton's charges it simply accomplished the same result--taking away Pariser's hospital privileges--through a different means. In short, we think Surpris's prosecutorial role in the executive committee proceedings rendered him biased, and therefore made his participation as a judge in those same proceedings improper under Illinois law.

Pariser also makes a number of arguments on appeal concerning other breach-of-contract theories rejected by the District Court. We find none of these arguments substantial; for the most part they consist of attacks upon factual findings that are not clearly erroneous. We therefore hold only that Pariser has established a breach of contract under the bias theory discussed above.

III.

While we thus reverse as to Pariser's contract claim, we affirm the District Court's rejection of each of Pariser's remaining claims.

A.

[3] First, we concur with the District Court's conclusion that Pariser failed to state a claim for deprivation of property without due process under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 because the suspension of his privileges did not involve state action. Pariser's complaint alleged that this requirement was met because the hospital receives public funds, enjoys tax benefits, is subject to pervasive governmental regulation, has a virtual monopoly in its market area, and performs a public function. However, these factors are insufficient to establish state action, which exists "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (emphasis in original). "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* Here, Pariser's complaint identified no nexus between the various forms of government involvement with the hospital that it catalogued and the hospital's decision to suspend Pariser's privileges, and therefore its allegations, even when taken to be true, did not establish state action. See *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Lubin v. Crittenden Hospital Association,* 713 F.2d 414, 415 (8th Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

B.

[4] Next, we also affirm the District Court's conclusion that the hospital's action in dismissing Pariser was outside the jurisdictional reach of the Sherman Act. To establish jurisdiction under the Sherman Act, a plaintiff must show that the activity in question either occurred in interstate commerce or, though local in nature, substantially affected interstate commerce. *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 241-42, 100 S.Ct. 502, 508-09, 62 L.Ed.2d 441 (1980); *Hayden v. Bracy,* 744 F.2d 1338, 1342 (8th Cir.1984).

The hospital's suspension of Pariser's privileges was not in interstate commerce, ***1253** so the question to be answered here was whether, "as a matter of practical economics," *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 745, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976) (footnote omitted), the action had a substantial effect on interstate commerce. In this regard, the District Court found, *inter alia,* that Southern Medical Center provides no services outside Illinois, that approximately 95 per cent. of the hospital's patients are from Alexander or Pulaski County in Illinois, that about 98 per cent. of the patients are Illinois residents, and that other hospitals served patients in the nearby states of Missouri and Kentucky. In these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

circumstances, we cannot say the District Court clearly erred in finding that the hospital's action had no substantial effect on interstate commerce. See Hayden, 744 F.2d at 1342-43; Heille v. City of St. Paul, 671 F.2d 1134 (8th Cir.1982).

C.

[5] Finally, we conclude that the District Court properly denied Pariser's post-trial motion to amend his complaint to include a claim for tortious interference with contractual relations. Under Fed.R.Civ.P. 15(b), such an amendment is proper where "issues not raised by the pleadings are tried by express or implied consent of the parties...." Here we find nothing in the transcript to indicate that Pariser intended to try a tortious-interference claim or that the defendant in any way consented to trial of such a claim. While Pariser did introduce some evidence that would be relevant to a tortious-interference claim, this evidence was also relevant to Pariser's other claims, so its introduction did not provide the defendant any notice that a claim for tortious interference with contractual relations was being tried. See Gallon v. Lloyd-Thomas Co., 264 F.2d 821, 825 n. 3 (8th Cir.1959) ("Evidence going to other issues, even if incidentally touching some elements of [the unpleaded claim], may not be used to support the proposed amendment."). We therefore conclude that the District Court did not abuse its discretion in denying leave to amend. See id. at 823; Corsica Livestock Sales, Inc. v. Sumitomo Bank of California, 726 F.2d 374, 377 (8th Cir.1983) (trial court's decision under Fed.R.Civ.P. 15(b) is reviewed under abuse-of-discretion standard).

IV.

In conclusion, we reverse the rejection of Pariser's contract claim but affirm the denial of his remaining claims. The effect of this holding in practical terms will have to be determined on remand. Pariser is certainly entitled to a judgment declaring that defendant is in breach of contract. [FN2] This may be the only relief that is appropriate. Much of the parties' arguments on this appeal has been directed to the question whether Pariser in fact falsified his application. The District Court found that he did, and we agree. Thus, it seems clear that the executive committee would have taken the action it did even if it had had three unbiased members, instead of only two. In this situation, there is a substantial question in our minds whether Pariser is entitled to the lost earnings he seeks. (Reinstatement is not in question: Southern Medical Center is no longer in operation.) The contract has been broken, all right, but if the same thing would have happened to Pariser anyway, the breach may not be a legal cause of any monetary damages. This question of relief should be decided under Illinois law. It has not been briefed in this Court, and we leave it to the District Court to decide on remand.

FN2. The defendant Christian Health Care Systems, as we have noted, ran Southern Medical Center under a management contract. It had no direct contractual relationship with the plaintiff. But the parties have uniformly conducted this case as though there were such a direct relationship, and we accept this predicate as a basis for our decision.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

816 F.2d 1248, 1987-1 Trade Cases P 67,531, 7 Fed.R.Serv.3d 915

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.