UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Valspar Corporation, Valspar Sourcing, Inc., and Valspar Industries GmbH, Plaintiffs, v. Spraylat Corporation and Spraylat GmbH, Defendants. | Civil Action No. 01CV1605 JNE/JGL<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PORTION OF PLAINTIFFS' ITEMIZED STATEMENT OF DAMAGES** |

## PRELIMINARY STATEMENT

On April 6, 2005, Plaintiffs served Defendants with Plaintiffs' Itemized Statement of Damages (the "Itemized Statement"). Plaintiffs' Itemized Statement included the following statement:

> Valspar intends to seek damages based on all profits unjustly gained by Spraylat, as well as Valspar's lost profits. This amount of damages exceeds $3 million, and is based on Spraylat's sales of mirror solutions since its inception and Valspar's profit margin with respect to mirror solutions.[1]

Heretofore, in this three-and-a-half year litigation, Plaintiffs have relied on the damages theory proffered by their expert witness, Peter Smith. Mr. Smith's multiple expert reports, served between March and June of 2003, disclosed a single theory of damages, comprised of the alleged "enterprise value" of Spraylat GmbH (which he claimed to be anywhere from $8.8 to $14.2 Million depending on which report you look at). Mr. Smith

[1] A copy of the Itemized Statement is attached to the Declaration of Michelle Paninopoulos ("Paninopoulos Decl.") as Exhibit A.

never, in any of his reports, hinted that, as an alternative approach, Valspar would seek a damages measure based on "Valspar's lost profits." Plaintiffs apparently chose their "enterprise value" approach as a litigation scare tactic hoping Defendants would give up, without regard to its validity as a lawful damages measure.

As the Court is aware, Defendants brought a motion in limine to exclude Mr. Smith's opinion at trial. Having now briefed and argued in opposition to this motion, Plaintiffs apparently have recognized that, for a variety of reasons, Mr. Smith's opinion is quite likely to be found by the Court to fit within that category of damages analyses previously found to "insult the intelligence." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 2003 WL 22231544, *2 (D. Minn. Sept. 25, 3003), *aff'd*, 395 F.3d 921 (8th Cir. 2005). Plaintiffs' Itemized Statement is obviously an eleventh-hour decision to attempt to put into play a "fallback" position on damages.

Plaintiffs should not be permitted to ambush Defendants at this late date. The pre-trial "itemized statement of damages" contemplated by Local Rule 16.6(8) is intended to provide a date upon which a party claiming damages updates its damages calculations; it is obviously not intended as a vehicle to spring a new theory of damages one month before the commencement of trial. "The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968).

Moreover, the Itemized Statement provides nothing more than a conclusory alleged lost profits estimate with no effort to provide anything approaching an "itemization." For example, the parties sell multiple solutions products, and not all of Spraylat GmbH's products are alleged to have resulted from misappropriation. The Itemized Statement does

not indicate which products form the basis of the lost profits claim. Further, Valspar GmbH and Spraylat GmbH are not the only solutions suppliers, and the Itemized Statement nowhere indicates what share of Spraylat GmbH's sales Plaintiffs contend they would have otherwise made. Finally, Spraylat GmbH has been open nearly four years, during which time various expenses have changed in the parties' industry. The Itemized Statement does not indicate what alleged "profit margin" Plaintiffs intend to apply to each period or how such "profit margin" was calculated.

In the absence of a proper statement from Plaintiffs, Defendants cannot prepare for trial on this issue and may even need additional discovery. Accordingly, even if the Court does not strike Plaintiffs' lost profits theory from the Itemized Statement, Defendants respectfully request that the Court at a minimum order Plaintiffs to re-serve the Itemized Statement with an appropriate level of detail and to provide all the documents or other evidentiary material on which their calculations of lost profits are based, and grant Defendants leave to take any necessary discovery on an expedited basis.

## STATEMENT OF FACTS

This case was commenced on September 4, 2001. The complaint, and two amended complaints, each asserted claims for misappropriation of trade secrets, tortious interference with contracts, tortious interference with business relations, unfair competition, and conversion.

On January 4, 2002, Plaintiffs served their mandatory disclosure under Fed. R. Civ. P. 26(a)(1)(C), which calls for the disclosure of a party's computation of damages. It reads, in

its entirety:

> Valspar seeks all damages caused, and all profits unjustly gained, by the misappropriation of trade secrets, breach of the Invention and Confidentiality Agreement, tortious interference with business relations, and unfair competition, with interest, as well as enhanced damages under Minn. Stat. 325C.03(b). Valspar's computation of damages that it suffered as a result of the Defendant's misappropriation of the trade secrets at issue cannot be determined at this time.

(Paninopoulos Decl., Ex. B at 3.) As the Court can see, Plaintiffs' 26(a)(1)(C) disclosure makes no mention of "Valspar's lost profits" as a damages measure and provides no calculation. The only profits it refers to are profits "unjustly gained" by the Defendants' alleged wrongful conduct.

On November 19, 2002 Defendants served a Rule 30(b)(6) deposition notice calling for a corporate representative to testify on a variety of topics, including "the factual bases for damages claims." Plaintiffs objected to Defendants' efforts to take this discovery, arguing that it would call for "a legal conclusion, insofar as an understanding of facts relevant to Valspar's damages claim involves an understanding of legal issues, and are [sic] more properly the subject of expert testimony." (*Id.*, Ex. C at 3.) The parties exchanged correspondence on the objection, with Plaintiffs deciding to "stand by our objection," but permitting a corporate representative to testify about "facts relating to Valspar's damage claim." (*Id.*, Exs. D & E.)

The deposition was taken on December 18, 2002, and the witness, Michael Seidler, did provide and testify about a chart he prepared late the day before which suggested how he would calculate alleged lost profits. However, Seidler explicitly described his chart as "preliminary" and a work in progress. (*Id.*, Ex. F at 128-31, 149.) Seidler testified that the

"P&L portion of the chart was not a true P&L, and that it probably contained incorrect cost allocations between Valspar business units." (*Id*. at 149, 162.) In response to questioning, Seidler said he would need to perform calculations, "double-check" or "verify" the data and conclusions on his charts. (*Id*. at 160, 166.) Defendants' counsel requested on the record that Defendants be notified when Seidler had concluded his analysis. (*Id.* at 167.)

On March 12, 2003, Plaintiffs provided Defendants with the damages opinion of Peter Smith, and thereafter various amended reports. As noted above, Smith pursued an entirely different theory of damages and thus abandoned the pursuit of lost profits mentioned but never concluded several months earlier by Seidler. Defendants deposed Smith, and he never suggested that Plaintiffs would still pursue a lost profits damages theory.

No further charts or reports of any kind respecting lost profits were ever provided, whether prepared by Seidler or Smith. Nor did Valspar ever amend its Rule 26(a)(1)(C) disclosure. Plaintiffs' Itemized Statement now states that Plaintiffs intend to seek "Valspar's lost profits" based on Spraylat GmbH's sales and Valspar's profit margin. It was served on April 6, 2005, less than four weeks before trial.

## ARGUMENT

### I. PLAINTIFFS MAY NOT AMBUSH DEFENDANTS WITH A NEVER-BEFORE DISCLOSED DAMAGES THEORY.

Under Rule 37(c)(1), unjustified failure to disclose or supplement the information required by Rule 26(a) results in the *automatic* exclusion of that information, provided that the failure to disclose is not harmless:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a

> trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).

Rule 26(a)(1)(C) requires parties to disclose at the outset of litigation "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying under Rule 34 the documents or other evidentiary material . . . on which such computation is based." Fed. R. Civ. P. 26(a)(1)(C). The Advisory Committee Notes describe the mandatory disclosures of Rule 26(a)(1) as "the functional equivalent of court-ordered interrogatories," and specifically identify the disclosure obligations under Rule 26(a)(1)(C) as "the functional equivalent of a standing Request for Document Production under Rule 34." Fed. R. Civ. P. 26(a)(1) 1993 advisory committee's note. Rule 26(e)(1), of course, imposes an ongoing obligation to supplement all Rule 26(a) disclosures.

As set forth above, Plaintiffs' Rule 26(a)(1)(C) disclosure never mentioned that Plaintiffs would seek as damages Valspar's lost profits, and it has never been amended. Nor does Plaintiffs' Rule 26(a)(1)(C) disclosure contain any sort of "computation" of damages, as explicitly required by the rule.

Accordingly, unless Plaintiffs' failure to disclose a lost profits theory of damages is either "'substantially justified' or . . . 'harmless,'" Plaintiffs are *automatically* barred from presenting the theory at trial. *See, e.g.*, *Transclean Corp. v. Bridgewood Svcs., Inc.*, 77 F. Supp. 2d 1045, 1063 (D. Minn. 1999), *rev'd in part on other grounds*, 290 F.3d 1363 (Fed. Cir. 2002).

Where a party fails to comply with its disclosure obligations under Rule 26, in deciding whether to excuse that failure from the application of the automatic exclusion rule,

the Court considers four factors in "assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure." *Id.*

1) the importance of the excluded material;

2) the explanation of the party for its failure to comply with the required disclosure;

3) the potential prejudice that would arise from allowing the material to be used; and,

4) the availability of a continuance to cure such prejudice.

*Id.*

First, the "excluded material" is very important, certainly to Defendants. Plaintiffs' Itemized Statement reveals that Plaintiffs seek in excess of $3 million in alleged lost profits from the sale of mirror solutions. Spraylat GmbH has earned approximately $439,000 in aggregate operating profits from the sale of mirror solutions, not deducting the costs of this litigation. (*See* Paninopoulos Decl. at ¶ 8.) Notice and an opportunity to prepare a defense against a $3 plus million damages claim clearly is no small matter to Spraylat GmbH. Plaintiffs' failure to disclose therefore is extremely important.

Second, it is difficult to imagine any adequate explanation for Plaintiffs' failure to amend their Rule 26(a)(1)(C) disclosure to provide notice that they would pursue their alleged lost profits. It can hardly be said that Plaintiffs have not long been in possession of the information required to at least provide notice of a lost profits claim and – at a minimum – a calculation of such damages.

Third, Plaintiffs' failure to provide timely and adequate disclosure significantly prejudices Defendants because Defendants have been effectively foreclosed from completing discovery on Plaintiffs' alleged lost profits and consequently from preparing an effective

defense. Had Plaintiffs indicated that they still intended to pursue lost profits, notwithstanding Smith's "enterprise value" theory, either through Smith or by amending their Rule 26(a)(1)(C) disclosure, Defendants would have taken steps to challenge the accuracy and appropriateness of the factual and methodological assumptions underlying any such calculation. For example, Defendants would have sought further discovery and deposed witnesses on topics including: which sales Plaintiffs contend were lost to Defendants and Plaintiffs' basis for asserting that such sales would have been made by Plaintiffs if not by Defendants; the profit margin claimed by Plaintiffs each year for each product of which Plaintiffs contend a sale was lost to Defendants; Plaintiffs' calculation of their margins, including all expenses they contend are and are not deductible, proof of the amount of any such deductions, whether overhead deductions are appropriate under the circumstances; how the Plaintiffs' calculations take into account variable costs; the limitations on Valspar GmbH's operational capacity for growth.

Now, one month before trial, having been given no reason to complete their inquiry into these and similar topics, Defendants can hardly be expected to properly prepare a defense to whatever facts and assumptions Plaintiffs may make in arriving at their measure of lost profits. In fact, given that Plaintiffs have nowhere provided a "computation," or disclosed their methodology, Defendants *cannot tell* whether Plaintiffs have made "available for inspection and copying under Rule 34 the documents or other evidentiary material . . . on which such computation is based," as explicitly required by Fed. R. Civ. P. 26(a)(1)(C), and *cannot select* from the documents that were produced those that should be submitted as trial exhibits in order to rebut the missing computation. Defendants cannot even ascertain if

Plaintiffs' lost profits claim at trial would be based on the preliminary views expressed by Michael Seidler in 2002 or on yet a different approach.

Nor can Plaintiffs point to the fact that they have grudgingly provided some of their financials in discovery as a basis to argue that Defendants somehow were provided sufficient information or notice that they would be required to defend against a lost profits theory at trial. Even assuming that a documentary basis for Plaintiffs' lost profits calculations could be found somewhere in the ocean of papers produced in this case, that fact would not impose upon Defendants an obligation to have divined that Plaintiffs might continue to claim lost profits – much less an obligation to have guessed at how Plaintiffs would calculate them – following the service of the Smith expert damages reports, which omitted to present any sort of lost profits analysis.[2] This is all the more the case where, as here, the Rules impose an explicit, ongoing obligation on Plaintiffs to provide a computation of their claimed damages *without any request from Defendants*. Courts do not take kindly to this version of "gotcha."

> The court notes that the documents filed in this case are voluminous, to say the least. For the plaintiffs to argue that the defendants should have put two and two together and guessed that the plaintiffs would make such a claim and guessed at what the damage calculation would be is absurd.

*American Realty Trust, Inc. v. Matisse Partners, L.L.C.*, 2002 WL 1489543, *6 (N.D. Tex. July 10, 2002).

Finally, Defendants note that the Itemized Statement was served on April 6, 2005, long after the close of discovery and virtually on the eve of trial. The Court has set a date

certain for trial (May 3, 2005), and witnesses are already scheduled to travel from Germany to appear. Plainly, no continuance is feasible and insufficient time remains to conduct adequate discovery on Plaintiffs' newly-disclosed lost profits theory. In short, this is the type of classic "trial by ambush" that Rules 26 and 37 are designed to prevent. Plaintiffs' inclusion of this new theory in its Itemized Statement is improper and should be struck.

## II. THE ITEMIZED STATEMENT FAILS TO ITEMIZE THE CLAIMED LOST PROFITS.

To itemize means "to set down in detail or by particulars." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). Plaintiffs so-called "Itemized Statement" makes no effort to actually "itemize" the lost profits element of their claimed damages or to establish a causal connection between a finding of liability on any of Plaintiffs' theories and Plaintiffs' claimed lost profits. Instead, Plaintiffs conclusorily allege that they are entitled to a lump sum in excess of $3 million in "lost profits" based on the sales of all of Defendants' mirror solutions at Plaintiffs' claimed profit margin for mirror solutions.

Because Plaintiffs have not itemized their lost profits claim, Defendants have no way to know how much of the $3 plus million Plaintiffs claim is attributable to the alleged trade secret misappropriation, how much of Plaintiffs' claim is attributable to the alleged interference with contracts, how much of Plaintiffs' claim is attributable to lost sales of each asserted formula, how much of Plaintiffs' claim is attributable to sales of products that do not use any of the asserted formulas, etc. Defendants also have no idea what Plaintiffs claim as

---

(continued from previous page)

[2] Moreover, because Plaintiffs stamped all of their sales documents and P&Ls "Attorneys Eyes Only," Defendants would not have been able to review these documents with their

(continued on next page)

the profit margin – for each year for which they allege lost sales – relative to each mirror solution of which they claim lost sales, or how Plaintiffs arrived at those margins.

Accordingly, Plaintiffs should at a minimum be ordered to provide a true itemization of their damages under a lost profits theory. Specifically, Plaintiffs should be required to itemize:

- how much of their lost profits claim is attributable to each cause of action;
- by year and separately for each, the quantity of sales they claim were lost to Defendants of each of the allegedly misappropriated mirror solutions and which customers those sales relate to;
- by year and separately for each, the quantity of sales they claim were lost to Defendants for each product that is not alleged to misappropriate, but which Plaintiffs nonetheless claim as an element of their lost profits and which customers those sales relate to;
- the percentage of Defendants' sales Plaintiffs claim they would have made had Defendants not made those sales, and the basis therefore;
- by year and separately for each, their claimed profit margin for each product category for which they allege lost sales, and the methods used and assumptions made in calculating those margins.

Defendants do not concede that Plaintiffs can offer any or all of the above without a proper expert witness and report, but to the extent the Court does not strike this portion of the Itemized Statement, Defendants are at a minimum entitled to such disclosure to prepare for trial, at which point evidentiary issues would be addressed. Further, to the extent Defendants are prejudiced as a result of the late disclosure of a lost profits theory, Defendants must be permitted to take any necessary discovery.

---

(continued from previous page)
business people in any event.

## CONCLUSION

Plaintiffs must not be permitted to conduct "trial by ambush." Having failed for three-and-a-half years to properly apprise Defendants of an intention to claim "lost profits," Plaintiffs should not be permitted to raise this theory on the eve of trial and, accordingly, the entire paragraph referring to Plaintiffs' newly-disclosed lost profits theory should be struck. In the alternate, should the Court choose not to strike the lost profits portion of Plaintiffs' Itemized Statement, Defendants respectfully request that the Court order Plaintiffs to re-serve their Itemized Statement with an appropriate level of detail, as set forth in the preceding paragraphs, *and* to produce (or, if already produced, to identify specifically) all of the "documents or other evidentiary material . . . on which such computation is based," as Rule 26(a) required them to do several years ago.

Dated: April 14, 2005

**FAEGRE & BENSON LLP**

By: /s Michelle A. Paninopoulos

Kenneth A. Liebman, #90438
John Edward Connelly, #237656
Michelle A. Paninopoulos, #312411
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

-and-

David M. Zensky (DZ 5913)
Mitchell P. Hurley (MH 0740)
Blossom Kan (BK 6617)
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
590 Madison Avenue, 42nd Floor
New York, New York 10022-4616

***Attorneys for Defendants Spraylat Corporation and Spraylat GmbH***

M2:20705868.01