UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| The Valspar Corporation,<br>Valspar Sourcing, Inc., and<br>Valspar Industries GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>Spraylat Corporation and Spraylat GmbH,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 01CV1605 JNE/JGL |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE PORTIONS OF MAGISTRATE JUDGE'S APRIL 19 ORDER**

David M. Zensky (DZ 5913)
Mitchell P. Hurley (MH 0740)
Blossom Kan (BK 6617)
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
590 Madison Avenue, 42nd Floor
New York, New York 10022-4616
(212) 872-1000

Kenneth A. Liebman (236731)
John Edward Connelly (237656)
Michelle A. Paninopoulos (312411)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(b)(2), Defendants Spraylat Corporation and Spraylat GmbH ("Spraylat" or "Defendants") respectfully submit this appeal from the Order of the Honorable Magistrate Judge Susan Nelson, dated April 19, 2005 ( "April 19 Order")[1] (1) denying Spraylat's First Omnibus Motion in Limine and (2) denying Part VI of Spraylat's Second Omnibus Motion in Limine.[2]

### A. The Court's 2004 Summary Judgment Ruling Requires the Preclusion of Business Information at Trial.

Defendants sought to preclude in limine evidence relating to, *inter alia*, customer identities and contacts, market share information, and financial data concerning prices, sales, costs, and margins (collectively, "Business Information"). (Doc. No. 330.)[3] Although Plaintiffs raised no procedural objection to this motion, and a complete record on the issue was compiled, Magistrate Nelson declined to address the merits of Defendants' motion in limine on Business Information. Instead, Magistrate Nelson determined that "the ruling Defendants seek is more properly characterized as a judgment as a matter of law" and a motion in limine is "not the proper tool for the job." (April 19 Order at 9.) Magistrate Nelson observed that "arguably, this court could convert the motion in limine into a motion for summary judgment," but declined to do so

---

[1] The April 19 Order was filed under seal and does not yet appear on the docket. A copy is filed conventionally as an exhibit herewith.

[2] Pursuant to this Court's March 17, 2005 Order, Judge Nelson heard the parties' respective motions in limine on April 6 and 11, 2005, and determined a number of those motions in her April 19 Order. Due to space limitations, Spraylat incorporates by reference its memoranda of law and other submissions in support of its First and Second Omnibus Motions in Limine. (Doc. Nos. 329, 332, 335).

[3] Plaintiffs, conversely, sought a ruling that they could pursue such a claim and that Defendants could not even tell the jury about the Court's prior ruling on the Business Information. (Doc No. 314.)

because Defendants had not requested it. (*Id*. at 10 n.3.)[4] Because no decision was rendered on the merits, the Court should review this portion of the April 19 Order *de novo*.[5]

On March 31, 2004 this Court entered an Order ("SJ Order") granting partial summary judgment to Defendants. The Court determined, *inter alia*, that none of the Business Information was a trade secret *because the information is generally known or readily ascertainable* and/or because such information has been disclosed by Plaintiffs themselves. (SJ Order (Doc. No. 286) at 5-9.) Although the Court denied Defendants' summary judgment motion on the tortious interference count, it appeared to do so only with respect to the alleged disclosure of information which was *not* part of the Business Information and had *not yet* been ruled to be generally known or readily ascertainable. (*Id*. at 17.)

Defendants believe that the Summary Judgment Order was intended to, and did, effectively put the Business Information out of the case entirely and pare this case down to a manageable size and relatively simple set of claims. However, earlier this year Plaintiffs indicated they intended to claim that the alleged disclosure of the Business Information, though already ruled to be generally known and readily ascertainable, breached their former employees' alleged confidentiality agreements, and that Defendants tortiously induced such breaches.

The basis for Defendants' motion to preclude the use of Business Information at trial is straightforward. First, DeBlandre and Reipa's contracts only prevent the use or disclosure of matters which are not "public knowledge" (DeBlandre) or which are "secrets" (Reipa). Plaintiffs contend that DeBlandre (following his termination) and Reipa (following his resignation)

---

[4] Given that Plaintiffs did not oppose this portion of Defendants' motion on procedural grounds, Defendants had no reason to ask that it be converted to one seeking partial summary judgment.

disclosed Business Information to Defendants, and that such disclosure breached these agreements. Information which has already been ruled to be generally known or readily ascertainable can not, at the same time, be deemed "secret" or not "public knowledge" and protected from disclosure by these agreements.[6]

Second, even if the DeBlandre and Reipa agreements were not limited to information which is secret, because an employee cannot be prevented by his or her former employer from using information which is generally known or readily ascertainable under a mere confidentiality agreement unaccompanied by a reasonable non-compete agreement, the disclosure of the Business Information (which has already been ruled generally known or readily ascertainable) cannot be a breach of a confidentiality agreement upon which to base a tortious interference claim.

Under Minnesota law, readily ascertainable information is not considered "confidential." *E.g. Cherne Indus., Inc. v. Grounds & Assocs., Inc*., 278 N.W.2d 81, 90 (Minn. 1979) ("It is commonly recognized that 'matters of general knowledge within the industry may not be classified as trade secrets *or confidential information* entitled to protection.'") (emphasis added) (citation omitted); *Signergy Sign Group, Inc. v. Adam*, 2004 WL 2711312, at *3 (Minn. Ct. App. Nov. 30, 2004) (same); *Alpine Glass, Inc. v. Adams*, 2002 WL 31819910 at **5-6 (Minn. Ct. App. Dec. 17, 2002) (applying *Cherne* formulation to claim for breach of confidentiality agreements).[7]

(continued from previous page)

5 In order to ensure that this issue is properly raised and decided before the trial begins, Defendants have filed a separate motion to amend the scheduling order to bring a dispositive motion based on the applicable portions of the record already submitted to Magistrate Judge Nelson.

6 In fact, Plaintiffs submitted an affidavit from their German law expert (Doc. No. 353) which conceded that as a matter of German law Reipa's contract could only prevent against the disclosure of trade secrets – which the Business Information has been ruled not to be.

7 *See also Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 697 n. 19 (D. Minn. 1986) (holding that, to the extent information "constitutes a trade secret, it may be protected by a valid contractual

(continued on next page)

As explained in *Signergy*, "the tort of breach of confidentiality is basically the common law version of misappropriation of trade secrets"; thus, information that does not satisfy the statutory definition of a trade secret also cannot be considered "confidential" for purposes of a claim for breach of a confidentiality agreement. *Signergy*, 2004 WL 2711312, at *3. In *Signergy*, plaintiff claimed that because its former employee

> signed a confidentiality agreement covering, among other things, customer lists, customer contact information, price lists, pricing information and product and service information, then any use of this information by [the former employee] was a breach of his confidential[ity] agreement.

*Id*. at *2. Though the plaintiff prevailed at trial, the appeals court granted judgment as a matter of law and overturned a jury verdict. It held that none of this information falls within the ambit of "confidential" information, since all of it could be readily ascertained through legitimate sources. *Id*. at *3.

This Court clearly has the power to interpret its own summary judgment ruling and apply its effects to the remaining claims in the case in connection with the summary judgment ruling itself, in the context of a motion in limine and/or at a final pre-trial conference. *See* Fed. R. Civ. 56(d).[8] The whole point of the federal rules is to narrow the issues for trial at appropriate junctures along the way. Even if the motion was mis-styled as a motion in limine, the parties were accorded all the process that would apply to a summary judgment motion, and the motion should have been treated as such. *See* Fed. R.Civ. P. 1 ("[t]hese rules govern the procedure in the United States district courts in all suits of a civil nature …[t]hey shall be construed and

---

(continued from previous page)

covenant, *and conversely, to the extent the information is not a trade secret, a contractual covenant which purports to restrict its use is to that extent invalid.*") (emphasis added).

[8] *See* Manual For Complex Litigation (Fourth) at 129 (at the time of the final pre-trial conference, counsel are encouraged to submit briefs regarding open legal issues, as additional issues may be ready for summary judgment).

administered to secure the just, speedy and inexpensive determination of every action"). To rule on the motion would have caused no prejudice to Plaintiffs, and Magistrate Nelson found none. If the Court agrees that the summary judgment ruling on Business Information affects the tortious interference claims, it would surely elevate form over substance to conclude that Defendants must wait until two or three weeks into trial, when Plaintiffs rest, to ask for judgment on this basis.

For the foregoing reasons, Magistrate Nelson's decision should be reversed and the motion *in limine* granted.

**B. The Court Incorrectly Ruled that Plaintiffs Properly Pleaded a Claim for Tortious Interference With the Employment Agreement of Willi Luettgens.**

In the course of briefing on the parties' motions in limine, Plaintiffs claimed they had properly alleged, and were also pursuing, claims for tortious interference with the confidentiality agreement of Willi Luettgens. Defendants objected, noting that the Second Amended Complaint pleads no such claim. None of the parties' motions actually sought relief respecting this issue, as it came up in the briefing of other motions. The April 19 Order concludes that "Defendants had fair notice that Plaintiffs claimed Luettgens was subject to a confidentiality agreement and that liability could result if Defendants were found to have interfered with this contract." (April 19 Order at 8.) Because no party asked for a ruling on this issue, and no party specifically briefed it, Magistrate Nelson's statement is more an observation than a ruling on a motion, and a *de novo* scope of review should apply to this portion of the April 10 Order as well.

Plaintiffs' Second Amended Complaint[9] contains a count specifically entitled "Tortious Interference With Contracts." (*See* Second Amended Complaint (Doc. No. 189), ¶¶ 23-35.) That

[9] Plaintiffs filed their Complaint on September 4, 2001, filed an Amended Complaint on April 29, 2002 and a Second Amended Complaint on April 11, 2003. None of these pleads tortious interference with Willi Luettgens' contract or with any contracts other than Alain DeBlandre's and Gunther Reipa's.

count specifically alleges that Spraylat induced DeBlandre and Reipa — and only DeBlandre and Reipa — to breach their alleged confidentiality agreements. Plaintiffs *attached* the DeBlandre and Reipa contracts — and only the DeBlandre and Reipa contracts — to the Complaint.

Magistrate Nelson reasoned that Defendants had notice of a claim for tortious interference with the contract with Willi Luettgens for two reasons. First, she noted that Paragraph 15 of the Complaint – part of the *general factual statements, not a claim for relief* – mentions by name five former employees of Plaintiffs, including Luettgens, and alleges that "some of them" violated the confidentiality provisions of their employment agreements, and that each count of the Complaint thereafter incorporated by reference that paragraph. (April 19 Order at 7.) However, Paragraph 15 in no way suggests that there is a connection to Defendants as responsible for those alleged breaches; it simply alleges that "some" former employees breached contracts. Only Count I (Tortious Interference) pleads anything having to do with Defendants' alleged culpability for any alleged breaches, and that count is *explicitly* limited to Reipa and DeBlandre.

Paragraph 15, and its general incorporation into the other five counts of the Complaint in no way provides notice of a claim for interference with Luettgens' contract, and would not satisfy the requirements of Rules 8 and 12 under even the most minimal construction. If it did, defendants would be obligated to search each of the basic factual allegations, which are always incorporated into the substantive counts as a matter of basic pleading practice, and guess the claims a plaintiff is actually pleading. The fact that Luettgens' contract was disclosed later during discovery does not without more put Defendants on notice of Plaintiffs' alleged intent to pursue a claim for tortious interference where the existence of the contract was relevant for other purposes, for example, whether Plaintiffs took proper precautions to protect their alleged trade secrets.

Magistrate Nelson also pointed to a request for admission in which Defendants asked Plaintiffs to admit that Luettgens was not subject to any non-competition agreement. (April 19

Order at 7-8.) Plaintiffs have long claimed that Defendants acted unlawfully *merely by hiring* their former employees. Defendants thus sought admissions that none of those employees — including Luettgens — has a valid non-compete in order to deflect Plaintiffs' accusation of "corporate raiding." The request to admit in no way suggests that Defendants were on notice of a claim that Spraylat is responsible for alleged breaches of a confidentiality agreement by Luettgens. Moreover, Plaintiffs' response was served two months after the close of discovery.

Simply put, Defendants had no notice of this claim. To permit this eleventh hour expansion of Plaintiffs' tortious interference claim to include any employee mentioned anywhere in the Complaint without regard to how the claim was actually pleaded inflicts enormous prejudice on Defendants. Defendants certainly would have sought further discovery and admissions had they been on notice. Given the complete absence of a connection between Defendants and Luettgens at the time of the relevant events (March/April, 2001), Defendants would have sought summary judgment on the claim..

For the foregoing reasons Defendants request that the Court set aside this portion of the April 19 Order and rule that the alleged claim for tortious interference with Luettgens contract is not in the case.[10]

---

[10] Further, in the briefing Plaintiffs identified for the first time a separate theory regarding Luettgens, also not pled in the Complaint, that in May or June 2001, Spraylat induced Luettgens to breach a separate provision of his employment agreement allegedly preventing him from making plans to join a new competitor. If Magistrate Nelson's "finding" applies to this theory, Defendants appeal on that issue as well, for the reasons cited above. Spraylat opposes any attempt by Plaintiffs to pursue other tortious interference with contract claims not pled in the complaint on all available grounds.

**C. The Parties Should Not Be Permitted to Rely on Designations Under the Protective Order as Substantive Evidence.**

Spraylat also seeks reversal of Magistrate Nelson's unprecedented ruling that confidentiality designations made under the Stipulated Protective Order (the "Stipulation") (Doc. No. 11) constitute "party admissions" that can be used as substantive evidence at the trial. (April 19 Order at 25-29.)

First, it would be unfair to use designations under the Stipulation in a manner not contemplated by the Stipulation itself. The sole purpose of the Stipulation is to facilitate the orderly exchange of documents in the lawsuit, not to create substantive evidence long after the key events at issue transpired. Nothing in the Stipulation suggests that it can be used in the manner now advanced by Plaintiffs, and Spraylat is aware of no case where a party has even tried to use designations made under a confidentiality stipulation as Plaintiffs urge here. In fact, Judge Montgomery of this District expressly instructed the jury in *Children's Broadcasting Corp. v. Walt Disney Co.*, Civ. No. 3-96-907 to disregard the parties' confidentiality designations. When Plaintiffs sent the Stipulation to Spraylat, neither Plaintiffs nor the draft stipulation gave any hint that markings made thereunder would be used as substantive evidence in this case.

Second, the standards for designation as "confidential" under the Stipulation are not the same as the standards which the jury must apply in deciding whether Plaintiffs' formulas are trade secrets, and are therefore irrelevant. As just one illustration, Plaintiffs refused to remove attorneys' eyes only designations from documents containing only information that this Court has ruled to be generally known or readily ascertainable *as a matter of law*. Plaintiffs' refusal demonstrates that Plaintiffs also consider the standard for designations under the Stipulation to be different from the legal determination of trade secrecy that must be made by the jury.

Magistrate Nelson ruled that the parties' designations are "admissions" under Fed. R. Evid. 801(d)(2), but in fact it is not possible to know precisely what a party purportedly

"admitted" as the result of any given designation. Parties can designate documents as "confidential" or "highly confidential," if they "contain" "trade secrets *or* other confidential research, development or commercial information." (Doc. No. 11, ¶ 2(a)) (emphasis added). The way the Stipulation is drafted, it is impossible to determine whether a document has been designated based on a belief that it contains a "trade secret," or an item of confidential "research information," "development information" or "commercial information." None of those terms is defined anywhere in the Stipulation, and it would be speculation to guess at what the parties believed constituted, for example, "confidential commercial information" at the time (generally in 2001 or 2002) a particular designation was made, or whether the undefined and therefore necessarily subjective standard applied by the parties had anything to do with any of the *legal* standards relevant to this case. Moreover, the Stipulation permits an entire page of discovery material to be stamped confidential even if the designating party considers only one of many discrete items of information "contain[ed]" on the page to be confidential. *Id*. There will be no way for the jury to determine from the face of a given designated document what particular piece of information a party purportedly "admitted" was confidential or trade secret. For these reasons, Magistrate Nelson was clearly mistaken when she ruled that the problems involved in deciphering the "admission" made by any given designation merely go to weight and not to admissibility.

Even if it were possible to establish through witnesses what was the basis for the designation, what the designating party understood that basis meant at the time of the designation, or what portion of the document was subject to the designation, such testimony would be a distracting and time-consuming exercise that cannot be justified by whatever marginal probative value these so-called "admissions" might otherwise have. *See* Fed. R. Evid. 403. Indeed, after the hearing on this motion below, Plaintiffs produced a trial witness list that includes an associate and a paralegal from Plaintiffs' current and former outside law firms representing them in this

case, apparently to testify about the alleged meaning of the designations. Spraylat reserves its right to object on all grounds to any such testimony; however, if Plaintiffs are permitted to parade such evidence before the jury, Spraylat will have no choice but to offer its own witnesses and evidence in rebuttal. This is exactly the kind of time-consuming sideshow that Rule 403 was intended to avert.

Finally, Magistrate Nelson erroneously concluded that Spraylat is attempting to use its designations as both a sword and a shield. (April 19 Order at 29.) In fact, the Stipulation — which was drafted by Valspar — affects Spraylat's ability to share documents with its in-house experts in precisely the same way that it affects Valspar's ability to do so; therefore Spraylat is not using the Stipulation as a "sword." Moreover, Spraylat is also not using the Stipulation as a "shield" to keep Valspar from explaining to the jury why Valspar's in-house experts could not review certain materials in question. If the Court concludes during the trial that the jury should know why the parties in-house experts could not review one another's formulas or other documents marked attorneys' eyes only, it can simply instruct the jury at an appropriate juncture, and Spraylat has no objection to such an instruction. Certainly there is no need for the confusing use Plaintiffs propose to make of the Stipulation at trial merely to explain to the jury why certain witnesses did not provide certain testimony.

**CONCLUSION**

Spraylat respectfully requests that the Court grant the relief requested herein.

Dated: April 22, 2005

**FAEGRE & BENSON LLP**

By: /s Michelle Paninopoulos

Kenneth A. Liebman, #236731
John Edward Connelly, #237656
Michelle A. Paninopoulos, #312411
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

-and-

David M. Zensky (DZ 5913)
Mitchell P. Hurley (MH 0740)
Blossom Kan (BK 6617)
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
590 Madison Avenue, 42nd Floor
New York, New York 10022-4616

***Attorneys for Defendants Spraylat Corporation and Spraylat GmbH***